## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

HUBERT ARTURO ACEVEDO,

                                                        Case No.: 22-CV-20224-DLG

      Plaintiff,

v.

 CITY OF MIAMI;
 JOE CAROLLO, individually;
 ALEX DIAZ DE LA PORTILLA,
 individually; ARTHUR NORIEGA,
 individually; and MANOLO REYES,
 individually,

      Defendants.

_____/

## CITY OF MIAMI'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

VICTORIA MÉNDEZ, City Attorney
KEVIN R. JONES,
Chief of Labor and Employment Division
KERRI L. McNULTY, Senior Assistant City Attorney
STEPHANIE K. PANOFF, Assistant City Attorney
Attorneys for City of Miami
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Primary Email:  klmcnulty@miamigov.com
Secondary Email:  CSantos@miamigov.com

Under Federal Rule of Civil Procedure 12(b)(6), the City of Miami files this Motion to Dismiss Plaintiff's Complaint [D.E. 1] ("Complaint"), for failure to state a claim upon which relief can be granted. As will be explained more fully below, Count I of the Complaint should be dismissed because Plaintiff failed to exhaust available administrative remedies, which is a statutory prerequisite to filing suit under the Florida Whistle-blower Act. Further, Count II of the Complaint should be dismissed because the speech Plaintiff pleads as the basis for his First Amendment retaliation claim was made in his capacity as chief of police and does not constitute a matter of public concern under controlling precedent.

## FACTUAL BACKGROUND

### *The Police Chief's Authority Under the City Charter & Code*

Section 24 of the City of Miami Charter addresses the City's Division of Police, and specifically states with respect to that department:

> *Division of police.* The police force shall be composed of a chief and such officers and other employees as the city manager may determine. The chief of police shall have the immediate direction and control of the police force, subject to the supervision of the director of public safety, and to such rules, regulations and orders as the said director may prescribe, and through the chief of police, the director of public safety shall promulgate all orders, rules and regulations for the government of the police force. The chief of police shall devote his or her entire time to the discharge of his or her official duties and shall not be absent from the city except in the performance of his or her official duties, unless granted a written leave of absence by the city manager. His or her office shall be kept open at all hours, day or night, and either the chief of police or a subordinate shall be in constant attendance.

§ 24(a), City of Miami Charter. The City Code describes the authority of the Police Chief in further detail, as follows:

> Subject to the supervision and control of the city manager in all matters, the director of the police department shall administer the affairs of the department which shall include the immediate direction and control of the police force, *and he/she is charged with responsibilities for the prevention, control and suppression of crime in the city.* The responsibilities of the police department shall include, but not be limited to, the activities of police administration, traffic control, police patrols, training, *criminal investigation*, vehicle inspection, police property, police records and the complaint center.

§ 42-3, City of Miami Code (emphasis supplied). Plaintiff did not believe the Charter gave him the power to discipline members of the Commission. [D.E. 1, ¶ 22]. On February 13, 2020, the City Commission passed a resolution that directed the "City Manager to develop a Memorandum of Understanding with the Florida Department of Law Enforcement ("FDLE") or the Federal Bureau of Investigations ("FBI") to direct all criminal investigations, excluding those relating to misdemeanors or traffic offenses, of City elected officials and their present and former personnel to the FDLE and/or the FBI." [D.E. 1, ¶ 29].

The chief of police, as a department director, is appointed by the city manager pursuant to the Charter, as follows:

> The city manager shall appoint a director for each department and, in the city manager's discretion, may consolidate two departments under one director. Each such director shall serve until removed by the city manager or until a successor has been appointed and qualified, shall conduct the affairs of his or her department in accordance with rules and regulations made by the city manager, shall be responsible for the conduct of the officers and employees of his or her department, for the performance of its business, and for the custody and preservation of the books, records, papers and property under its control, and, subject to the supervision and control of the city manager in all matters, shall manage the department.

§ 20, City of Miami Charter. The Charter goes on to specifically address the suspension and removal of the chief of police and the fire chief, as follows:

> The city manager shall have the exclusive right to suspend the chief of police and fire chief for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just and reasonable cause. If either of such chiefs be so suspended the city manager shall forthwith certify the fact, together with the cause of suspension, to the commission who within five (5) days from the date of receipt of such notice, shall proceed to hear such charges and render judgment thereon, which judgment shall be final.

§ 26, City of Miami Charter.

### *The Civil Service Board*

The City of Miami Charter creates the City's Civil Service Board ("the Board"). § 36(a), City of Miami Charter. ("A civil service board of the city is hereby created and established."). The City of Miami Code details the processes by which a City employee can bring an issue before the Board. Under section 40-128, which addresses "grievances and abuses generally,"

> Any employee who is aggrieved by reason of what he/she considers a violation of this article to his/her detriment, or who has a grievance concerning his/her

> employment under this article, and who desires redress, shall notify the executive
> secretary in writing, stating the nature of his/her grievance and requesting a hearing
> by the board.

§ 40-128(b), City of Miami Code of Ordinances.  That section goes on to describe the process of

any such grievance hearing before the Board, as follows:

> (1)  Upon receipt of such notice, the executive secretary shall promptly inform
> the board, and the board shall schedule the matter for a hearing within 30
> days of the date of receipt of the notice by the executive secretary, who shall
> notify the employee of the time, date, and place of hearing.
>
> (2)  If the board so desires, it may make a preliminary investigation of the matter
> before the hearing.
>
> (3)  The employee shall appear before the board at the scheduled time and place,
> and shall present pertinent information to the board concerning his/her
> grievance.
>
> (4)  The board shall consider the matter, and promptly present its findings and
> recommendations to the city manager for his/her consideration of a proper
> remedy, if a remedy is necessary.

*Id.*

In a proceeding under 40-128—also known as a "Rule 16" proceeding, because that is the

rule within the Civil Service Rules and Regulations where the proceeding is addressed, "any

employee" may initiate the proceeding. § 40-128(b), City of Miami Code of Ordinances. And with

a Rule 16 proceeding, the power of the City Manager is broad. The Board is directed to "present

its findings and recommendations to the city manager for his/her consideration of a proper remedy,

if a remedy is necessary." § 40-128(b)(4), City of Miami Code of Ordinances. With respect to the

authority of the City Manager, the City of Miami Charter includes among the manager's powers

the power to "[r]ecommend to the mayor and city commission for adoption such measures as the

city manager may deem necessary or expedient." § 16(e), City of Miami Charter.

### Plaintiff's Tenure As Police Chief

Plaintiff, Hubert Arturo Acevedo, (hereinafter "Plaintiff") was appointed to the position of

Police Chief for the City of Miami on April 5, 2021. [D.E. 1, ¶ 2]. Plaintiff alleges that he was

appointed because "there was a need to reform the MPD and to change the culture of the agency."

[D.E. 1, ¶ 2].

On *September 13, 2021*, during a public meeting of the City Commission, the City Commission passed a resolution scheduling a special City Commission meeting for two weeks later, on *September 27, 2021*, "for the purposes of a discussion regarding the City of Miami's Chief of Police and the adoption of any pertinent resolutions." *See* City of Miami Resolution R-21-0380 (attached hereto as "Exhibit A"); *see also* Public Notice of September 27, 2021 Special City Commission Meeting (attached hereto as "Exhibit B").[1] On September 27, 2021, The City of Miami Commission held that previously noticed special city commission meeting to discuss the Plaintiff. [D.E. 1, ¶ 188]; On October 1, 2021, the City of Miami Commission held an additional special city commission meeting to discuss Plaintiff, which was similarly noticed ahead of time. [D.E. 1, ¶ 201].

Following these special meetings, on October 11, 2021, the City Manager suspended the Plaintiff. [D.E. 1, ¶ 212]. On October 14, 2021, the City Commission held the required hearing pursuant to Section 26 of the City Charter and voted to terminate the Plaintiff. [D.E. 1, ¶¶ 219, 226].

***Plaintiff's September 24, 2021 Memorandum***

Prior to the September 27, 2021, Special City Commission Meeting, but after that meeting had been scheduled and noticed, Plaintiff sent a memorandum to Mayor Francis Suarez (hereinafter "Mayor Suarez"), the City Manager Arthur Noriega (hereinafter "Noriega"), as well as the State Attorney's Office and the FBI, containing Plaintiff's reporting that City Commissioners Carollo, Diaz de la Portilla, and Reyes (hereinafter "the Commissioners") were corrupt and abused their power. [D.E. 1, ¶¶ 5, 177, 187]; *See* September 24, 2021, Memorandum ("the Memorandum") (attached hereto as "Exhibit C").[2] The Memorandum is addressed to Noriega and Mayor Suarez. Ex. C. The Memorandum is signed by the Plaintiff as the "Chief of Police" for the "Miami Police Department." Ex. C.

---

[1] *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.") (citation omitted).

[2] *See* Fed. R. Civ. P. 10(c); *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (permitting the court to consider a document attached to a motion to dismiss when that document is (1) central to the plaintiff's claim and (2) undisputed).

The Memorandum contains a number of instances, that Plaintiff alleges violated the City Charter and "governing law," as follows:

a.      The Commissioners interfered with an Internal Affairs investigation into Sergeant at Arms Luis Camacho by asking questions about the investigation at a commission meeting. Ex. C.

b.      The Commissioners eliminated the positions of Deputy Police Chief and Director of Constitutional Policing (a newly created civilian legal position) from the Police budget during the budget meeting but kept the Plaintiff's newly created position of Assistant Chief. The Commission shifted the budget for the civilian/legal position to the City's legal office. Ex. C.

c.      The Commissioners directed the City Manager to cease any issuance of discipline within the Department until after a Special City Commission meeting, which was called for on September 27, 2021, three (3) days after the Plaintiff's memorandum was written. Ex. C.

d.      Commissioner Carollo was upset about a transfer of an officer into Internal Affairs and allegedly threatened to "blow up" the Police Department's budget. The Plaintiff provides no further information on this allegation. Ex. C.

e.      Commissioner Carollo told the Plaintiff there were agitators in a crowd at an event and asked the Plaintiff to dispatch a detective. There is no further information on this allegation. Ex. A.

f.      Commissioner Carollo complained of corruption within the City Code Enforcement Department and asked for an investigation into it. Ex. C.

g.      Commissioners Carollo and Diaz de la Portilla provided a list of establishments in their respective districts that they believed were engaged in criminal activity and asked the Plaintiff to investigate such. Ex. C.

h.      Commissioner Carollo informed the Plaintiff there were agitators at an event and told the Plaintiff to arrest the agitators. Neither the Plaintiff, nor his department, made any arrests. Ex. C.

### The Florida Whistle-blower's Act's Exhaustion Requirement

Under the Florida Whistle-blower's Act, a prerequisite to filing suit is that a claimant has exhausted any available administrative remedies. The Act states

> Within 60 days after the action prohibited by this section, any local public employee protected by this section may file a complaint with the appropriate local governmental authority, if that authority has established by ordinance an administrative procedure for handling such complaints or has contracted with the Division of Administrative Hearings under s. 120.65 to conduct hearings under this section. The administrative procedure created by ordinance must provide for the complaint to be heard by a panel of impartial persons appointed by the appropriate local governmental authority. Upon hearing the complaint, the panel must make findings of fact and conclusions of law for a final decision by the local governmental authority. Within 180 days after entry of a final decision by the local governmental authority, the public employee who filed the complaint may bring a civil action in any court of competent jurisdiction.

§ 112.3187, Fla. Stat.

**The Complaint**

On January 19, 2022, Plaintiff filed the Complaint against the City, Noriega, and Commissioners Carollo, Diaz de la Portilla, and Reyes, alleging two counts—a state law claim against the City under the Florida Whistle-blower Act and a federal claim against all defendants under section 1983 for First Amendment retaliation. [D.E. 1].

With respect to the Florida Whistle-Blower Act's pre-suit exhaustion requirement, the Complaint does not allege that Plaintiff exhausted administrative remedies by filing a grievance with the Board. Rather, the Complaint asserts that:

> Chief Acevedo did not file a written grievance with the executive secretary of the City of Miami stating the nature of his grievance or requesting a hearing with the City of Miami's civil service board.

> Filing such a grievance or requesting such a hearing would have been futile for numerous reasons, including:

> a. The civil service board presents its findings and recommendations to the City of Miami's City Manager, who is Noriega.

> b. Noriega is biased against Chief Acevedo because Chief Acevedo reported misconduct of the City Commissioners that he (Noriega) helped carry out and refused to act against.

> c. At an October 14, 2021 hearing to decide whether to terminate Chief Acevedo, Noriega falsely testified that the City of Miami's suspension of Chief Acevedo—and the reasons for his ultimate termination—had nothing to do with Chief Acevedo sending the September 24, 2021 Memorandum.

d.   Ultimately, under the City of Miami's Charter, the City Manager recommends courses of action to the City Commissioners.

e.   Commissioners Carollo, Diaz de la Portilla, and Reyes are biased against Chief Acevedo and have demonstrated this bias on numerous occasions.   Among other things:

i.   At the September 27 and October 1, 2021 Commission Meetings, Commissioners Carollo, Diaz de la Portilla, and Reyes demonstrated their biases against Chief Acevedo, launching personal attacks on him that were irrelevant to his performance as police chief.

ii.   At the October 14, 2021 termination hearing, Commissioner Russell expressly noted that, during the termination hearing itself, multiple City Commissioners, including Commissioners Carollo and Diaz de le Portilla, had demonstrated bias against Chief Acevedo.

f.   The decision to terminate Chief Acevedo was informally made by Commissioners Carollo, Diaz de la Portilla, and Reyes before Chief Acevedo's October 14, 2021 hearing.   Among other things:

i.   The paperwork necessary to make Assistant Chief Morales the Interim Chief of Police was prepared before the October 14, 2021 hearing.

ii.   On October 14, 2021, directly after the Commission voted to terminate Chief Acevedo, Assistant Chief Morales was sworn in as interim police chief.

iii.   The swearing-in ceremony was attended by City Manager Noriega and the City Commissioners.

iv.   During the event, Commissioner Carollo played the theme song from the movie The Godfather and no City Commissioners intervened.

[D.E. 1, ¶¶ 247-48].

**ARGUMENT**

I.     **THE COURT SHOULD DISMISS COUNT I (VIOLATION OF FLORIDA WHISTLEBLOWER ACT – AGAINST CITY OF MIAMI) WITH PREJUDICE FOR FAILURE TO SATISFY THE STATUTORY PRE-SUIT REQUIREMENT OF EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES**

Plaintiff brings a claim under the Florida Whistle-blower Act, alleging that his suspension and ultimate termination were motivated by his September 24, 2021, memorandum, rather than the justifications given by the City Manager in his suspension letter. [D.E. 1, ¶¶ 230-250]. The Complaint concedes that Plaintiff failed to avail himself of the available administrative remedies provided by the City to grieve his suspension and termination, prior to filing his claim, but asserts that he chose not to utilize those remedies because to do so in his circumstances would have been futile. [D.E. 1, ¶¶ 247-48]. Because, under the unrefuted facts as pled, Plaintiff's circumstances do not satisfy the accepted definition of futility in the precedent that would excuse a plaintiff from having to satisfy this statutory pre-suit requirement, Count I must be dismissed for failure to exhaust administrative remedies.

***Plaintiff Was Required to Exhaust Administrative Remedies Prior to Filing His Whistleblower Claim***

A party is required to exhaust administrative remedies prior to turning to the circuit court for relief. *See DeCarlo v. Town of W. Miami,* 49 So. 2d 596, 596–97 (Fla. 1950); *State Dep't of Envtl. Prot. v. PZ Constr. Co., Inc.,* 633 So. 2d 76, 78–79 (Fla. 3d DCA 1994). This requirement applies to the Whistle-blower's statute. *McGregor v. Palm Beach County,* 674 F.Supp. 858 (S.D. Fla. 1987). Specifically, section 112.3187, Florida Statutes, requires that an employee exhaust any administrative remedies provided by the local government prior to filing an action under the Act. § 112.3187, Fla. Stat. ("Within 60 days after the action prohibited by this section, any local public employee protected by this section may file a complaint with the appropriate local governmental authority . . . Within 180 days after entry of a final decision by the local governmental authority, the public employee who filed the complaint may bring a civil action in any court of competent jurisdiction.").

Many cases that address the issue of the Act's exhaustion requirements focus on whether the administrative remedy provided by the local government satisfy the Act's requirements for such a process. The Act states:

> The administrative procedure created by ordinance must provide for the complaint to be heard by a panel of impartial persons appointed by the appropriate local governmental authority. Upon hearing the complaint, the panel must make findings of fact and conclusions of law for a final decision by the local governmental authority.

§ 112.3187, Fla. Stat. But the Civil Service Board has already been determined to satisfy these statutory requirements. *See Igwe v. City of Miami*, 300 So. 3d 279, 282 (Fla. 3d DCA 2019) ("This Court has repeatedly held that the Board satisfies the procedural requirements in the Act for impartial administrative review."); *Williams v. City of Miami*, 87 So. 3d 91, 92 (Fla. 3d DCA 2012) (Court found that the Civil Service Board meets the requirement of section 112.3187(8)(b) as the panel before which the administrative hearing must be conducted); *Browne v. City of Miami,* 948 So. 2d 792, 793 (Fla. 3d DCA 2006); *City of Miami v. Del Rio*, 723 So. 2d 299, 300–01 (Fla. 3d DCA 1998) (Court agreed with the City that its Civil Service Board [the Board], as set forth in section 36(a), Miami, Fla., Charter, meets the requirements of section 112.3187(8)(b), as the Board (1) was established by ordinance; (2) is authorized by section 40–128, Miami, Fla. Code (formerly section 40–103), to handle whistle-blower complaints; (3) is composed of a panel of impartial persons appointed by the appropriate local governmental authority; and (4) makes, upon hearing the employee's complaint, findings of fact and conclusions of law so that a final decision may be made by the local governmental authority.).

Plaintiff does not dispute that he failed to avail himself of the administrative remedy afforded by the Civil Service Board. [D.E. 1, ¶¶ 247-48]. Instead, Plaintiff asserts that he was not required under the Act to pursue remedies before the Board because pursuit of any administrative remedy before the Board would have been futile because: (1) the Board presents its findings and recommendations to the City Manager, who is biased against him; and (2) ultimately, under the City Charter, the City Manager recommends a course of action to the City Commission, which is biased against him. *Id*. None of these factual scenarios constitutes futility under the law, such that it would excuse Plaintiff from the requirement under the Act that employees must exhaust administrative remedies prior to bringing a claim.

***Plaintiff's Administrative Remedy Was Not Futile***

Plaintiff asserts that exhaustion of administrative remedies before the Board would have been futile because the Board makes recommendations to the City Manager and the City Manager then has the *ability* to make recommended courses of action to the Commission but, here, the City

Manager and the three City Commissioners named as defendants in this lawsuit are biased against Plaintiff. The Third District Court of Appeal recently affirmed in a similar context that "[a] mere allegation from an employee that participation in the administrative process would be futile does not relieve the employee of their obligation to exhaust the remedies provided." *Igwe v. City of Miami*, 300 So. 3d 279, 282 (Fla. 3d DCA 2019) (citing *City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 25 (Fla. 3d DCA 1979)). As one Florida Court noted:

> It would be a strange doctrine indeed under which an employee could relieve himself of engaging in the grievance process merely by supinely accepting an adverse decision of his employer as unchallengeable until the filing of an action in court. Such a rule would render the exhaustion principle itself entirely meaningless.

*City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 25 (Fla. 3d DCA 1979).

Instead, the "futility exception is limited to those situations where resort to administrative remedies would be 'clearly useless.'" *S. Florida Blood Bank, Inc. v. Futch*, 764 So. 2d 724, 726 (Fla. 4th DCA 2000) (quoting *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1264 (10th Cir. 1998)). Further, arguments similar to Plaintiff's argument that pursuing the available administrative remedies would be futile because the ultimate decision makers under those remedies are aligned with the initial adverse decision from which review is sought have been rejected. *See Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990) ("If futility were established by the mere fact that the plan administrator who makes initial benefits decisions and the trustees who review appeals share common interests or affiliations, the exhaustion of internal administrative remedies would be excused in virtually every case."). Futility has been established, on the other hand, where a party was denied meaningful access to the administrative review process. *See S. Florida Blood Bank, Inc.*, 764 So. 2d at 726 (Fla. 4th DCA 2000) (citation omitted) ("The eleventh circuit pointed to an instance where the defendant "'controlled the plan's administrative review procedures and exercised its control to deny [plaintiff] meaningful access to those procedures,'" as an example of evidence establishing futility.").

Here, Plaintiff alleges two adverse personnel actions under the Florida Whistle-blower statute—his October 11, 2021 suspension by the City Manager and his October 14, 2021

termination by the City Commission. Both of these actions could be brought before the Civil Service Board. Under the City Code, "any employee who is aggrieved by reason of what he/she considers a violation of this article to his/her detriment, or who has a grievance concerning his/her employment under this article, and who desires redress" may bring a grievance before the Board. § 40-128(b), City of Miami Code of Ordinances. The Code requires that the Board set the matter for a hearing, after which it "shall . . . promptly present its findings and recommendations to the city manager for his/her consideration of a proper remedy, if a remedy is necessary." § 40-128(b)(4), City of Miami Code of Ordinances. The Manager then has broad authority to "consider . . . a proper remedy," given the circumstances presented by the matter. *Id.* Importantly, under the City Charter, the City Manager has the sole authority to appoint department directors, such that, if the Manager was inclined upon presentation of the Board's findings and recommendations, it would have been within his authority to reappoint the Plaintiff to his position as chief of police. § 20, City of Miami Charter. Notably, Plaintiff chose to present no evidence and not to testify during his termination hearing before the City Commission, so the claims in his alleged whistle-blower memorandum were never presented before the full Commission prior to his termination. And those claims certainly were never presented before the Civil Service Board, a neutral administrative board of the City that Plaintiff makes no allegations is biased against him, such that the Board's findings of fact and recommendations would be useless here. As such, pursuit of a grievance hearing before the Board would have provided an avenue for the issues raised in the Complaint to be vetted before a neutral body for fact findings and ultimately brought before the City Manager for consideration of further action, prior to the filing of this lawsuit. *See Diaz v. United Agr. Employee Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1486 (9th Cir. 1995) ("the record contains nothing but speculation to suggest that the administrators would have reached a preconceived result"). This is exactly what is contemplated by the statutory exhaustion requirement. Therefore, any such remedy was not futile, and the City respectfully requests that this Court dismiss Count I, with prejudice, for failure to satisfy the statutory pre-suit requirement of exhaustion of available administrative remedies.

**II.      THE COURT SHOULD DISMISS COUNT II (VIOLATION OF SEC. 1983 FOR ALLEGED FIRST AMENDMENT RETALIATION) BECAUSE THE PLAINTIFF FAILED TO CITE TO CONSTITUTIONALLY PROTECTED SPEECH AS HIS SPEECH WAS MADE IN HIS CAPACITY OF POLICE CHIEF AND WAS NOT REGARDING A MATTER OF PUBLIC CONCERN**

The Plaintiff has failed to prove a cause of action in Count II because the Plaintiff's cited to "speech," the private memorandum written to his supervisors in his capacity as Police Chief and his reporting of the memorandum's contents to the FBI and State Attorney's Office are not afforded protection under the First Amendment. Public or government employees have less First Amendment protection than private citizens. *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006) ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."). Police officers have even less protection under the First Amendment than other government employees. *Lawrenz v. James*, 852 F. Supp. 986, 991 (M.D. Fla. 1994), *aff'd*, 46 F.3d 70 (11th Cir. 1995); *McMullen v. Carson*, 754 F.2d 936, 938 (11th Cir. 1985).

For a government employee's speech to receive First Amendment protection, the employee must (1) be speaking as a citizen <u>and</u> (2) the speech must be regarding a matter of public concern. *Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); *Boyce v. Andrew,* 510 F.3d 1333, 1342-43 (11th Cir. 2007); *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) ("When a public employee speaks as an employee on matters of personal interest and not as a citizen upon matters of public concern, the First Amendment is not implicated.").[3] Both prongs must first be present to potentially obtain protection under the First Amendment. *Id.* The determination of both prongs is a legal question for the court to decide. *Anderson vs. Burke County,* 239 F.3d 1216, 1219 (11th Cir. 2001).

The Plaintiff's cited to speech is not protected for two reasons. First, the speech was made as the Chief of Police, and not as a private citizen. Second, the speech was not regarding a matter of public concern because the memorandum raises issues that are directly related to the Plaintiff's employment as the Police Chief.

---

[3] There is a second part to the inquiry under the *Pickering* analysis, but this motion focuses solely on part one. *Mills v. City of Evansville, Ind.,* 452 F.3d 646, 647–48 (7th Cir. 2006).

### A. The Plaintiff's Speech is not First Amendment Protected Because it was Made as the Police Chief, and Not as a Private Citizen

To determine whether the Plaintiff's speech is protected by the First Amendment, the Court must first determine whether the Plaintiff spoke as a citizen or as the police chief. *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006). In making that determination, courts have examined whether the speech "was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir. 1993). The Court may look at a variety of factors to make this determination, such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of an employee's job. *Garcetti,* 547 U.S. at 420-21. The central inquiry is whether the "speech at issue 'owes its existence' to the employer's professional responsibilities." *Moss v. City of Pembroke Pines,* 782 F.3d 613, 618 (11th Cir. 2015) (*citing Garcetti,* 547 U.S. at 420).

The United States Supreme Court discussed this analysis thoroughly in *Garcetti v. Ceballos.* In *Garcetti,* a Deputy District Attorney wrote a memorandum documenting serious discrepancies in a search warrant. 547 U.S. 410, 414 126 S. Ct. 1951, 164 L.Ed. 2d 689 (2006). Despite such, the plaintiff's office decided to proceed with prosecution. *Id.* The defense attorney later called the plaintiff as a witness in a motion to suppress hearing, where the plaintiff testified to his concerns. *Id.* As a result, the plaintiff's office reassigned, transferred, and failed to promote the plaintiff. *Id.* at 415. The plaintiff thereafter sued for First Amendment retaliation. *Id.* The United States Supreme Court dismissed the case, finding the plaintiff's speech in both his memorandum and in court did not enjoy First Amendment protection because "his expressions were made pursuant" to his employment. *Id.* at 1960. As such, the court found, the plaintiff was speaking as a government employee, not as a private citizen regarding a matter of public concern. *Id.*

Similarly, the Eleventh Judicial Circuit found an Assistant Fire Chief's speech was not protected by the First Amendment when that chief criticized the Fire Chief and various other community members at numerous pension board meetings. *Moss vs. City of Pembroke Pines,* 782 F.3d 613, 616 (11th Cir. 2015). In those meetings, the Assistant Chief stated that the city had "manufactured" fiscal urgency and was "negotiating with employees in bad faith." *Id.* at 616-17. The City of Pembroke Pines fired the Assistant Chief merely a month after his last statement and

the Assistant Chief sued for First Amendment retaliation. *Id.* at 617. In its finding, the court found that the plaintiff's speech was made in furtherance of his responsibilities as an assistant fire chief and not as a private citizen. *Id.* at 619. The Court found that the plaintiff attended pension board meetings as a representative of the fire department and in his capacity of assistant chief. *Id.* 619. The Court also found it was part of the plaintiff's duties to ensure the pension was administered in accordance with the city's ordinance. *Id.* The Court further found that the plaintiff's comments about the City's actions fell within his purview as an assistant chief since he was responsible for the day-to-day operation of the Fire Department. *Id.* 619-20

Lastly, the Eleventh Circuit found that a school principal's efforts to convert his school to a charter school, including an e-mail discussing why he was undertaking such efforts, were not protected under the First Amendment because the actions and statements were done in the plaintiff's capacity as the school principal. *D'Angelo vs. School Board of Polk County* 497 F.3d 1203, 1206, 1210 (11th Cir. 2007). This finding was made even though the conversion of the school was not part of the plaintiff's enumerated job duties. *Id.*

In this case, the Plaintiff wrote a private memorandum as the Chief of Police to his immediate boss, the City Manager. In that memo, the Plaintiff lists a series of concerns that he believed prevented him from operating his Police Department. Among those concerns, the Plaintiff cites to concerns regarding his budget, discusses concerns over being questioned about an open Internal Affairs investigation, and discussed what he perceived to be the Commission's directing him to conduct certain investigations and/or otherwise limiting his ability to do his job. Each of the concerns, however, are directly related to the Police Chief's job duties. As the Police Chief, the Plaintiff's job was to manage the day-to-day operations of the Police Department, much like the Assistant Chief in *Moss*, and bringing up issues -or perceived issues- within the Department is why the City hired the Plaintiff. In fact, the Plaintiff even cites to such in his Complaint wherein he states he was appointed because "there was a need to reform the MPD and to change the culture of the agency." Thus, the memorandum in this case is like the memorandum written by the prosecutor in *Garcetti* and is not afforded First Amendment protection.

The fact that the memorandum states that the Plaintiff believed the Commissioners violated the City Charter and "governing law" and felt the need to contact "proper authorities" does not change his speech from one made as the Police Chief to one made as a citizen. In fact, it bolsters the fact that the Plaintiff wrote the memorandum as part of his job duties. Section 42-3 of the City's

Charter tasks the Police Chief "with responsibilities for the prevention, control and suppression of crime in the city." Sec. 42-3, City of Miami Charter. Even further, the Plaintiff's direction from the Commission, according to the Plaintiff's pleadings, was to report all criminal investigations of City officials to the FDLE and/or the FBI. The Plaintiff's memorandum, therefore, is an example of a Police Chief enforcing his authority pursuant to the Charter and following the City Commission's directive to forward criminal investigations elsewhere.

Likewise, the Plaintiff's reporting of the alleged criminal activity of the Commission to the FBI and State Attorney's Office is also not protected under the First Amendment because the Plaintiff's reporting of such was done pursuant to his job duties as Chief of Police. *Gibson vs. Kilpatrick,* 773 F.3d 661 (5th Cir. 2014) (Police Chief's reporting of crime allegedly committed by mayor to outside investigatory agencies not First Amendment protected speech because chief's report was done pursuant to his duties as police chief).

Because the Plaintiff's speech was made pursuant to his duties as Police Chief, and not as a private citizen, the Plaintiff's speech is not protected under the First Amendment and Count II must be dismissed accordingly.

**B. The Plaintiff's Speech is not First Amendment Protected Because it was Not Regarding a Matter of Public Concern**

Even if, however, this Court found that the Plaintiff was speaking as a private citizen, Count II still fails because the Plaintiff's private memorandum and private communications to the FBI and State Attorney's Office fail to raise matters of public concern. For the Plaintiff's speech to be considered a matter of public concern, the employee's speech must "relate to any matter of political, social, or other concern to the community." *Id.* The inquiry is not whether the public is interested in the topic but whether the *purpose* of the speech was to raise issues of public concern. *Boyce v. Andrew,* 510 F.3d 1333 (11th Cir. 2007); *Maggio v. Sipple,* 211 F.3d 1346, 1353 (11th Cir. 2000). ("[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the speech was to raise issues of public concern."); *Connick v. Myers,* 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case.")

In determining whether speech is public or private in nature, courts will look at whether the speech "was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." *Mitchell v. Hillsborough County,* 468 F.3d 1276, 1283 (11th Cir. 2006). Some courts refer to this as a "content, form and context" analysis wherein the court will consider "the content of the speech, the employee's motivation in speaking, the forum of the speech, and the employee's efforts to communicate his concerns to the public." *Henry v. City of Tallahassee*, 149 F. Supp. 2d 1324, 1328 (N.D. Fla. 2001) (citing to *Connick vs. Myers*, 461 U.S. 138, 147-148 (1983)). Generally, "[c]omplaints to official bodies do not constitute communication to the general public or an attempt to involve the general public." *Wilbourne v. Forsyth County Sch. Dist.*, 306 Fed. Appx. 473, 477 (11th Cir. 2009)

This content, form and context analysis was done in *Boyce vs. Andrew*. In *Boyce*, two employees of the Georgia Division of Family and Children Services complained verbally and via email about their large caseloads, mismanagement of numerous cases and concern for child safety. *Boyce v. Andrew*, 510 F.3d 1333, 1337-1340 (11th Cir. 2007). The Eleventh Circuit found that the *purpose* of the plaintiffs' speech was not to raise public awareness, but to file work-related grievances expressing their frustrations with their jobs as case managers to reduce their caseloads. *Boyce,* 510 F.3d at 1345-1346. As such, the court found the plaintiffs did not speak as citizens regarding a matter of public concern and dismissed the plaintiffs' First Amendment claim. *Boyce* 510 F.3d at 1347.

In *Morgan vs. Ford*, the Eleventh Judicial Circuit found that an employee's complaint of sexual harassment to a supervisor, Internal Affairs, and Office of Fair Employment Practices was private speech that was not afforded First Amendment protection. *Morgan vs. Ford*, 6 F.3d 750, 754-755 (11th Cir. 2007). The court considered the content, form and context of the speech and found that the speech was made privately, and not to the public, was concerning her own working conditions, and was therefore more akin to an employee grievance. *Id.*

Likewise, the Eleventh Judicial Circuit found an employee's email regarding a fellow teacher's abuse of her disabled son was private speech that was not afforded First Amendment protection. *Wilbourne vs. Forsyth County School District*, 306 Fed. Appx. 473, 477 (11th Cir. 2009). This was because the complaint was done privately, via email, and was regarding her own son. *Id.*

In *Alves vs. Board of Regents of University System of Georgia*, a group of university psychologists wrote a memorandum to their employer university expressing their concern over their new supervisor's "incompetence" and criticizing the way the mental health center was operating under his leadership. *Alves vs. Board of Regents of the University System of Georgia,* 804 F.3d 1149, 1163 (11th Cir. 2015.) The memorandum discussed the supervisor's mismanagement, interference in their counseling efforts and inability to do their job under the new leadership. *Id.* at 1164. The doctors raised an issue of concern for the students and faculty who required their services by alleging that the mismanagement would directly affect their services to them. *Id.* at 1166-67. Despite such concern, the Eleventh Circuit found the doctors were not speaking on matters of public concern but were complaining of poor management which adversely affected them and other employees. *Id.* at 1166. The court, therefore, dismissed the psychologists' First Amendment Retaliation claims. *Id.*

In this case, the Plaintiff's speech in Exhibit C is akin to an employee grievance, like the plaintiffs in *Boyce*. It was also made privately, like the plaintiffs in *Morgan* and *Wilborne,* and was regarding the Plaintiff's employment as Police Chief and his inability to manage the Police Department, much like the plaintiffs in *Alves*. In reading the memorandum in Exhibit C, the Plaintiff privately complained about the Commissioners alleged interference with his ability to do his job. He complained of being told whom to investigate, whom to transfer, budget cuts, and his inability to discipline without approval. These statements directly relate to his job as the Police Chief. Although the topics may be of an interest to the public, the content, form and context show that the Police Chief wrote the memorandum as a private complaint to his supervisor. Thus, the Plaintiff's speech is not a matter of public concern and is not protected by the First Amendment.

Likewise, the Plaintiff's act of reporting the Commission's "misconduct" to the FBI and State Attorney's Office was not a matter of public concern because the Plaintiff merely reported his own frustrations with the Commission's interference with his department and/or reported an allegation of a crime, which is part of his job duties. His reporting was done in a private setting, presumably discussing the same issues he raised in his memorandum to his boss. The purpose of the speech, therefore, was not to raise public awareness or communicate his concerns to the public. Rather, the purpose was to discuss the Commission's interference with his job duties in what the Plaintiff believed could possibly be criminal. This discussion, however, is part of the Plaintiff's

job duties as the Police Chief. The Plaintiff's speech, therefore, was not regarding a matter of public

It is also important to note the Plaintiff's motivation in writing the memorandum and making his report to the authorities. An employee's motivation for his speech is a factor the Court may look at to determine whether the speech was a matter of public concern. In this case, it is undisputed that the Plaintiff's memorandum and allegations came *after* the City Commission scheduled a special commission meeting to discuss the Plaintiff's job performance. The Plaintiff's curious timing and left-field allegations is something the Court should consider when determining whether the "speech" at issue was regarding a matter of public concern. In this case, the Plaintiff's "speech", came *after* the Commission set a special meeting to discuss the Plaintiff. In addition, it came merely three days before the Commission held the meeting. The Plaintiff's curious timing further shows that the memorandum and reporting was not done for the public but was a last-ditch effort to save his own job. It is for that reason, in addition to the others cited above, that the Plaintiff's speech was not regarding a matter of public concern.

Because the Plaintiff's speech was made as a public official and because the speech at issue did not regard a matter of public concern, the Plaintiff's speech is not afforded First Amendment protection and Count II must be dismissed, with prejudice.

## CONCLUSION

Based on the foregoing, the City respectfully requests that this Court dismiss Counts I and II of the Complaint, with prejudice.

Respectfully submitted,

VICTORIA MÉNDEZ, City Attorney
KEVIN R. JONES, Chief of Labor and Employment Division
KERRI L. McNULTY, Senior Assistant City Attorney
STEPHANIE K. PANOFF, Assistant City Attorney
Attorneys for City of Miami
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 416-1801
Primary Email:  klmcnulty@miamigov.com
Secondary Email:  CSantos@miamigov.com

By: */s/Kevin R. Jones*
    Kevin R. Jones,
    Chief of Labor and Employment Division
    Florida Bar No. 119067

By: */s/Kerri L. McNulty*
    Kerri L. McNulty, Senior Assistant City Attorney
    Florida Bar No. 16171

By: */s/Stephanie K. Panoff*
    Stephanie K. Panoff, Assistant City Attorney
    Florida Bar No. 69214

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/Kerri L. McNulty*
    Kerri L. McNulty, Senior Assistant City Attorney
    Florida Bar No. 16171

## SERVICE LIST

Marcos Daniel Jiménez
MARCOS D. JIMÉNEZ, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel.: (305) 740-1975
Email: mdj@mdjlegal.com
*Counsel for the Plaintiff*

John R. Byrne
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel.: (305) 740-1975
Email: jbyrne@leoncosgrove.com
*Counsel for the Plaintiff*

Frank Quintero, Jr.
QUINTERO BROCHE, P.A.
75 Valencia Ave, Ste. #800
Coral Gables, FL 33134
Tel.: (305) 446-0303
Email: fquintero@quinterolaw.net
*Counsel for Commissioner Manolo Reyes*

Mason A. Pertnoy
KRINSMAN, HUSS, LUBETSKY,
FELDMAN & HOTTE
Alfred I Dupont Building
169 E. Flagler Street, Suite 500
Miami, FL 33131
Tel.: (305) 854-9700
Email: mp@khllaw.com
*Counsel for City Manager Arthur Noriega, V*

Jose M. Quinon
JOSE M. QUIÑON, P.A.
2333 Brickell Ave., Ste. A1
Miami, FL 33129-2497
Tel: 305-858-5700
Email: jquinon@quinonlaw.com
*Counsel for Commissioner Manolo Reyes*

Benedict P. Kuehne
KUEHNE DAVIS LAW, P.A.
Miami Tower, Suite 3550
100 S.E. 2 St.
Miami, FL 33131-2154
Tel.: (305) 789-5989
e-mail: ben.kuehne@kuehnelaw.com;
efiling@kuehnelaw.com
*Counsel for Commissioner Joe Carollo*

Thomas A. Tucker Ronzetti
TUCKER RONZETTI, P.A.
5760 NW 46th Terrance
Miami, FL 33155
Tel.: (305) 546-4638
Email: tr@tuckrlaw.com
*Counsel for Commissioner Alex Diaz de la Portilla*