<div style="text-align:center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.: 1:22-CV-20224-KMW**

</div>

HUBERT ARTURO ACEVEDO,

     Plaintiff,

v.

CITY OF MIAMI;
JOE CAROLLO, individually;
ALEX DIAZ DE LA PORTILLA, individually;
ARTHUR NORIEGA, individually; and
MANOLO REYES, individually,

     Defendants.

_____/

<div style="text-align:center">

**<u>DEFENDANT, ARTHUR NORIEGA'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>**

</div>

Defendant, Arthur Noriega ("City Manager Noriega"), by and through his undersigned counsel, and pursuant to Rule 12(b)(6), Fed. R. Civ. P., and applicable law, hereby files his Motion to Dismiss Plaintiff, former Chief of Police of the City of Miami (the "City") Police Department ("MPD"), Hubert Arturo Acevedo's ("Chief Acevedo") Complaint dated January 19, 2022 [ECF 1] ("Complaint" and "Comp."), and Incorporated Memorandum of Law, and states:

**I.**     **<u>Introduction</u>**

Chief Acevedo sued the City, three of the five City Commissioners, and the City Manager for Civil Rights violations under 42 U.S.C. § 1983 ("§ 1983"). Chief Acevedo alleges he was terminated in retaliation for his protected speech, which is set forth in his September 24, 2021 Memorandum to his superiors. *See* Comp. ¶¶ 280, 282, 292, 301.

There are two threshold issues which Chief Acevedo's Complaint cannot overcome, and as such it must be dismissed with prejudice.

First, it is axiomatic that a § 1983 action against an individual may only be maintained against the final decisionmaker of the alleged § 1983 violation. As alleged, and in accordance with Section 26 of the City of Miami Charter, the Commission was the final decisionmaker, not City Manager Noriega, when the Commission voted unanimously to terminate Chief Acevedo. Applicable case law is clear, only the final decisionmaker may be held liable for First Amendment retaliation under § 1983. *Kamensky v. Dean*, 148 Fed. Appx. 878, 879 (11th Cir. 2005); *Kopp v. City of Greensboro*, No. 3:15-CV-17 (CAR), 2016 U.S. Dist. LEXIS 109679, 2016 WL 4435085, at *7 n. 82 (M.D. Ga. Aug. 18, 2016); *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004). As City Manager Noriega was not the final decisionmaker for the alleged § 1983 retaliatory action, Chief Acevedo's Complaint cannot state a cause of action against City Manager Noriega.

Secondly, the speech at issue was not protected speech. The U.S. Supreme Court and Courts of this Circuit have made it clear that non-protected speech cannot serve as the basis for a § 1983 action. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); *Lane v. Franks*, 573 U.S. 228, 236-239, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014). Here, the speech at issue was non-protected speech made by Chief Acevedo in his official capacity, not as a citizen. Chief Acevedo's speech at issue was sent from his City email, to his superiors (chain of command), and the speech was made pursuant to his professional responsibilities and official job duties. Further, Chief Acevedo's speech concerned administrative matters such as staffing, hiring, and MPD operations and investigations and therefore was not a matter of public concern. Accordingly, Chief Acevedo's speech is non-protected speech and the § 1983 retaliation action fails.

Based on the allegations of the Complaint, City Manager Noriega's actions are protected by the doctrine of qualified immunity and therefore dismissal is warranted.

Chief Acevedo's Complaint fails to overcome the threshold requirements of stating a cause of action for which relief may be granted against City Manager Noriega, because City Manager Noriega was not the final decision maker, and the speech at issue was not protected speech.  As set forth herein, Chief Acevedo's Complaint must be dismissed with prejudice.

## II.     Legal standard in determination of motion to dismiss

When ruling on a 12(b)(6) motion to dismiss, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Determining the plausibility of a claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The court determines whether the complaint describes "factual content" that supports "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "If the complaint does not contain such factual content, the Plaintiff has failed to state a claim upon which relief may be granted, and the Court must dismiss the Complaint." *Davis v. Fresh Mkt., Inc.*, No. 1:19-CV-24245-PCH, 2020 U.S. Dist. LEXIS 112833, *6-7, 2020 WL 3489369 (S.D. Fla. June 26, 2020) (citing *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570)).

"A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted). Legal conclusions must be supported by factual allegations. *Id.* Courts are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

III. **City Manager Noriega is not the final decisionmaker and cannot be held individually liable for Chief Acevedo's § 1983 retaliatory action**

Only a final decisionmaker can be individually liable under § 1983 for a First Amendment retaliation claim. *See, e.g.*, *Kopp*, 2016 U.S. Dist. LEXIS 109679, at *7 n. 82 (quoting *Johnson*, 369 F.3d at 831). The Eleventh Circuit has consistently held that a city or county employee with merely the power to suspend or to recommend termination cannot be individually liable for a plaintiff's termination because the employee is not the ultimate decisionmaker for said termination. *Kamensky*, 148 Fed. Appx. at 879 (quoting *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003)) ("A 'decisionmaker' is someone 'who has the power to make official decisions and, thus, be held individually liable.' A 'decisionmaker' may often be identified by a rule or by examining the statutory authority of the official alleged to have made the decision. In the termination context, a 'decisionmaker' has the power to terminate an employee, not merely the power to recommend termination.").

Further, a final decisionmaker must possess "the ability to terminate an employee without further review". *See Gilroy v. City of Fort Pierce*, No. 16-cv-14521-Martinez/Brannon, 2020 U.S. Dist. LEXIS 34533, at *20, 2020 WL 12880937 (S.D. Fla. Feb. 27, 2020), *aff'd*, *Gilroy v. Baldwin*, 843 Fed. Appx. 194, 196 (11th Cir. 2021) (quoting *Quinn*, 330 F.3d at 1328) ("We've explained that a defendant is a decisionmaker subject to individual liability when he has the authority 'not merely to recommend' the plaintiff's termination, 'but to immediately effectuate' it.").[1]

---

[1] This Motion does not address whether City Manager Noriega was the "final policymaker". As set forth in *Gilroy*, 2020 U.S. Dist. LEXIS 34533, at *20 (citations omitted), "[t]he question of final policymaker is separate from the question of final decisionmaker. The final policymaker may cause the municipality to be held liable for a custom or policy. The decisionmaker, on the other hand, may be held individually liable for his or her decisions." Regardless, City Manager Noriega is also not the final policymaker.

Here, City Manager Noriega does not have the power to terminate the Police Chief without further review by the Commission pursuant to Section 26 of the City Charter. Therefore, City Manager Noriega cannot be individually liable for the retaliatory actions alleged by Chief Acevedo.

**a.   The Complaint concedes that City Manager Noriega is not the final decisionmaker**

The Complaint concedes that, pursuant to Section 26 of the City Charter, City Manager Noriega is not the final decisionmaker regarding the termination of Chief Acevedo.  *See* Comp. ¶ 327 ("Pursuant to Section 26 of the City of Miami Charter the Commission was the final decision maker as to policy determinations regarding the termination of the Chief of the MPD, including Chief Acevedo.").

The Complaint also concedes that pursuant to the City Charter, the City Manager merely "recommends courses of action to the City Commissioners" and he is not the final decisionmaker. *See* Comp. ¶ 248 ("Ultimately, under the City of Miami's Charter, the City Manager recommends courses of action to the City Commissioners.").

**b.   Pursuant to the City Charter, City Manager Noriega is not the final decisionmaker**

The City of Miami Charter, Section 26, pertaining to the suspension and removal of the chief of police and fire, provides:

> The city manager shall have the exclusive right to suspend the chief of police and fire chief for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just and reasonable cause. If either of such chiefs be so suspended the city manager shall forthwith certify the fact, together with the cause of suspension, to the commission who within five (5) days from the date of receipt of such notice, shall proceed to hear such charges and render judgment thereon, which judgment shall be final.

By the Charter's plain language, City Manager Noriega did not have final decision-making authority to terminate Chief Acevedo. Rather, the Commission is vested with the final decision-

making power. Based on the City Charter, City Manager Noriega solely has authority to initially suspend the Chief of Police. Whether initial suspension shall lead to termination or reinstatement rests solely with the Commission's final decision. As explained by the Florida Supreme Court:

> The chief of police may be suspended by the city manager only for one or more of the causes enumerated in this section, and when such suspension has been certified to the city commission and the cause thereof examined by them and found after a full hearing to be well grounded, then the commission enters its affirmative judgment which is final. When the affirmative judgment of the commission is entered, the suspension of the chief of police *eo instante* becomes a removal, but, if the judgment of the commission is in the negative, the suspension ceases, and he is *eo instante* reinstated. *Bryan v. Landis*, 106 Fla. 19, 142 So. 650, 653.

Section 26 Case Law Reference, City of Miami Charter.

In *Bryan*, the Florida Supreme Court concluded that Section 26 of the City Charter empowers the Commission with final decision-making authority with respect to the termination or retention of the Chief of Police. In doing do, the Florida Supreme Court reasoned that to conclude otherwise would place the police department "at the whim and caprice of the city manager." *Bryan*, 142 So. at 653. Thus, at all times since at least 1932, the Commission, not the City Manager, had the final decision-making authority to suspend or terminate the Chief of Police.

The language of the Charter and the Florida Supreme Court make clear that City Manager Noriega was not the final decisionmaker of the alleged retaliatory actions in the Complaint.

**c. Pursuant to well-established law, City Manager Noriega is not the final decisionmaker**

Cases in this Circuit have regularly held that a government employee who is not the final decisionmaker cannot be individually liable under § 1983.  In *Gilroy v. Baldwin*, 843 Fed. Appx. 194, 196 (11th Cir. 2021) (quoting *Quinn*, 330 F.3d at 1328), the Eleventh Circuit explained that,

"defendant is a decisionmaker subject to individual liability when he has the authority 'not merely to recommend' the plaintiff's termination, 'but to immediately effectuate' it."[2]

Based on the allegations of the Complaint, the plain language of the City Charter, and the case law, City Manager Noriega was not the final decisionmaker as to Chief Acevedo's suspension or termination and cannot be held individually liable for same. Accordingly, Chief Acevedo fails to state a claim and the Complaint must be dismissed with prejudice as to City Manager Noriega.[3]

IV.   **Chief Acevedo did not engage in "protected speech" and therefore the Complaint must be dismissed**

   a.   **The speech at issue in the Complaint is not protected speech because it was not made as a citizen and it did not implicate a matter of public concern**

In *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), and *Lane v. Franks*, 573 U.S. 228, 236-239, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014), the U.S. Supreme Court held that a public employee's speech pursuant to his or her official duties is not protected speech and cannot serve as a basis for a First Amendment retaliation claim under 42 U.S.C. § 1983. *See Garcetti*, 547 U.S. at 426 ("We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties."); *Lane*, 573

---

[2] *See also, Edom v. Chronister*, No: 8:20-cv-1624-KK1VI-AEP, 2021 U.S. Dist. LEXIS 177732, at *21, 2021 WL 4244845 (M.D. Fla. Sept. 17, 2021) (dismissing individual claim against sheriff); *Watkins v. City of Adamsville*, No.: 2:17-cv-00402-RDP, 2019 U.S. Dist. LEXIS 126612, at *70-71, 2019 WL 3429499 (N.D. Ala. July 30, 2019) ("the court cannot find that Phillips, who recommended termination but was not the final decisionmaker, is individually liable under Section 1983."); *Kopp*, 2016 U.S. Dist. LEXIS 109679, at *7 n. 82 (quoting *Johnson*, 369 F.3d at 831) (dismissing claim against mayor because he is not the final decisionmaker, holding "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983"); *Sinclair v. Town of Yankeetown*, No.: 1:07-CV-035-SPM, 2008 U.S. Dist. LEXIS 17722, at *5, 2008 WL 660089 (N.D. Fla. March 7, 2008) ("The mayor was not the final 'decisionmaker' and therefore, not able to be held individually liable."); *Sanders v. City of Selma*, No.: 04-753-BH-B, 2005 U.S. Dist. LEXIS 34240, at *12 (S.D. Ala. Dec. 13, 2005).

[3] Dismissal with prejudice of a § 1983 claim is proper when the court finds that granting leave to amend the complaint would be futile. *See Broberg v. Gerrard*, No. 09-CV-82279-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 73044, 2010 WL 2869539 (S.D. Fla. July 21, 2010).

U.S. at 240 ("The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.").

In *Moss v. City of Pembroke Pines*, 782 F.3d 613, 616 (11th Cir. 2015), the district court granted judgment as a matter of law and held the plaintiff's First Amendment retaliation claim under § 1983 failed because the speech at issue was not protected speech as it was made by the assistant fire chief in furtherance of his official responsibility to ensure that the pension was administered in accordance with its governing ordinance. *Id.* at 619-620.

The Eleventh Circuit affirmed the district court's judgment, *Moss*, 782 F.3d at 617-618 (citations omitted), and explained the applicable analysis:

> Plaintiff's First Amendment claim is governed by a four-stage analysis. First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated "a matter of public concern." If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote "the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)) (internal quotation marks omitted). The above two issues are questions of law that are decided by the court. The court's resolution determines whether Plaintiff's speech is protected by the First Amendment.

### i.   The speech at issue in the Complaint is not protected speech because it was not made as a citizen

The Complaint does not satisfy the "first threshold requirement" that "Plaintiff's speech was made as a citizen," and therefore it is not "protected speech" and the Court need proceed no further.  *Moss*, 782 F.3d at 618. In order to "meet the threshold for proving a First Amendment violation" a public employee must show "that he spoke in his capacity as a citizen, rather than as an employee." *Id.* The Eleventh Circuit emphasized that "[t]he central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Id.* (quoting *Garcetti*, 547 U.S. at 421). Factors such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's

job may be relevant, but are not dispositive. *Id.* (citing *Garcetti*, 547 U.S. at 420-421, 424). "The proper inquiry is a practical one." *Id.* (quoting *Garcetti*, 547 U.S. at 424).

Chief Acevedo's alleged "protected speech" is set forth in his September 24, 2021 Memorandum addressed to his superiors, City Manager Noriega and Mayor Suarez (the "Memorandum" and "Mem."), and is prominently featured in the Complaint. *See, e.g.,* Comp. ¶¶ 174-188, 199, 214, 216, 265-271, 280, 282, 292, 301, 330. While Chief Acevedo fails to attach the Memorandum to his Complaint, he refers to it thirty-six (36) times and it is central to his claim in that it constitutes the protected speech at issue. Therefore, Chief Acevedo's Memorandum and his transmittal email is attached hereto as *Exhibit 1*, and Defendant requests the Court to consider it in connection with determining this Motion.[4]

The "starting point" of Chief Acevedo's speech is his official duties. *Batz v. City of Sebring*, 794 Fed. Appx. 889, 899 (11th Cir. 2019) ("The fact that 'the starting point' of Batz's speech was his 'official duties' suggests he was not speaking as a private citizen."). Here, Chief Acevedo's Memorandum to his superiors sets forth his concerns regarding interference with his official job duties including interference with MPD operations, staffing, hiring, reassigning, investigations, deployment, enforcement, and resources. *See* Comp. ¶¶ 124-125, 167-168, 180; Mem. at 1, 4, 6, 7. All of these statements "were made pursuant to his duties". *Garcetti*, 547 U.S. at 421.

The "controlling factor" is whether the speech was made pursuant to the employee's official job duties and professional responsibilities. *Garcetti*, 547 U.S. at 421 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. … Ceballos wrote his disposition memo because that is part of what he, as a calendar

---

[4] *Kreyer v. Carnival Corp.*, No. 19-20398-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 218666, *11 (S.D. Fla. December 18, 2019).

deputy, was employed to do.").[5] Similarly here, Chief Acevedo's Memorandum and conversations with the City Manager "were made pursuant to his duties" because that is part of what he, as the Chief of Police, was employed to do.

Here, analysis of the factors identified by the U.S. Supreme Court and the Eleventh Circuit leads to dismissal of Count II, based on the allegations of the Complaint and the Memorandum. The proper inquiry is a practical one. *Batz*, 794 Fed. Appx. at 898 (citing *Moss*, 782 F.3d at 618 (quoting *Garcetti*, 547 U.S. at 421, 424)).

### ii. Chief Acevedo's speech owes its existence to his professional responsibilities and official job duties

The "central inquiry" is whether the speech "owes its existence" to the employee's professional responsibilities. *Moss*, 782 F.3d at 618 (quoting *Garcetti*, 547 U.S. at 421). As alleged, based on the City Charter, Chief Acevedo's official job duties include the "immediate direction and control of the police force", promulgation of "all orders, rules and regulations for the

---

[5] In accordance with *Garcetti* and *Lane*, the Eleventh Circuit has regularly rejected public employees' claims in cases similar to Chief Acevedo's Complaint where the speech was made pursuant to their official job duties. *See, e.g.*, *Batz*, 794 Fed. Appx. at 897 ("the district court granted the City's motion for summary judgment as to Batz's First Amendment claim because it concluded he did not speak 'as a citizen' because the speech at issue 'owes its existence to [Batz's] professional responsibilities to enforce the Fire Safety Code.' We agree."); *Carollo v. Boria*, 833 F.3d 1322, 1332 (11th Cir. 2016) (affirming and denying in part district court's order denying 12(b)(6) motion to dismiss, finding plaintiff "has not pled a plausible claim that the First Amendment protects his public disclosures at City Council meetings" and remanding to allow plaintiff "an opportunity to file an amended complaint that resurrects those portions of his complaint that we dismiss by pleading facts that support the claim - if true - that he spoke as a citizen and not pursuant to his ordinary job responsibilities."). *See also*, *King v. Bd. of Cty. Comm'rs*, 916 F.3d 1339 (11th Cir. 2019); *Fernandez v. Sch. Bd.*, 898 F.3d 1324, 1327 (11th Cir. 2018); *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1153 (11th Cir. 2015); *Slay v. Hess*, 621 Fed. Appx. 573, 574-576 (11th Cir. 2015) (affirming district court's grant of 12(b)(6) motion to dismiss concluding "Slay's amended complaint fails to state a First Amendment retaliation claim" in that "[w]hen Slay complained to her superiors that she was being required to falsely allot her time on her time sheets, she was performing her official duties as an employee and was speaking as an employee and not as a citizen"); *Williams v. City of Atlanta*, 618 Fed. Appx. 957, 958-959 (11th Cir. 2015); *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1279, 1284 (11th Cir. 2009); *D'Angelo v. Sch. Bd.*, 497 F.3d 1203, 1205, 1210 (11th Cir. 2007).

government of the police force", and "the right and power to suspend any of the officers and employees". *See* Comp. ¶¶ 20-21, 275-276. Based on the Memorandum (*see* Mem. at 8), Chief Acevedo additionally describes his official duties as follows:

> [M]y sworn duty is to uphold the rule of law and follow the evidence wherever it may lead, and to work for the well being of the men and women of the MPD, the lawful independence of MPD, and the people of the City of Miami.

The speech at issue in Chief Acevedo's Complaint clearly and unequivocally "owes its existence" to his professional responsibilities. Chief Acevedo's speech centers on his complaints of interference with his official job duties including interference with MPD operations, investigations, staffing, deployment, enforcement, and resources. *See* Comp. ¶¶ 99, 124, 180, 238; Mem. at 1, 4, 6, 7.

In determining that a public employee's speech was not protected speech, the Eleventh Circuit in *Batz*, *King*, and *Alves* held that speech expressing frustration related to interference with the employee's official duties was not protected speech. *See Batz*, 794 Fed. Appx. at 899-900 (quoting *King*, 916 F.3d at 1347) ("As in *King*, Batz's complaints all expressed 'frustration related to interference with [his] job duties.' Both Batz and King expressed frustration that third parties were unusually and inappropriately interfering with their abilities to do their respective jobs."); *King*, 916 F.3d at 1347 ("The main thrust of King's speech was frustration related to interference with her job duties."); *Alves*, 804 F.3d at 1165 ("we do not agree that speech regarding conduct that interferes with an employee's job responsibilities is not itself ordinarily within the scope of the employee's duties."). Similarly, Chief Acevedo's Memorandum was his expression of frustration with interference with his job duties.

### iii.  **Chief Acevedo was a high-ranking employee with broad administrative duties**

As the Chief of Police, and the highest-ranking official in the MPD, Chief Acevedo had "broad administrative duties". *See* Comp. ¶¶ 2-3, 16-18, 20-21, 275; Mem. at 1, 8.

In *Moss* and *Williams*, respectively, the Eleventh Circuit determined that an Assistant Fire Chief of the City of Pembroke Pines, and a Major in the Atlanta Police Department, were high-ranking employees with broad administrative powers such that their speech was not protected speech. *Moss*, 782 F.3d at 620; *Williams*, 618 Fed. Appx. at 958.

The Eleventh Circuit in *Moss*, 782 F.3d at 620 (citing *D'Angelo*, 497 F.3d at 1210, involving a school principal's protected speech claim), determining an assistant fire chief's claim, stated, "we have held, in an analogous situation, that a high-ranking employee's broad administrative responsibilities rendered his speech unprotected."  Similarly, in *Williams*, 618 Fed. Appx. at 958-959 (citations omitted), determining a retaliation claim brought by a Major in the Atlanta Police Department, the Eleventh Circuit explained:

> The speech of a high-ranking employee with broad administrative responsibilities is not protected when the employee speaks out on a subject that impacts the day-to-day operations he is responsible for overseeing, even where the employee is specifically instructed not to speak out on the issue. Here, Williams's speech was not just about any general issue of public concern, but about the reorganization of his precinct, which he was in charge of planning and implementing. Williams was a high-ranking employee responsible for overseeing the implementation of the reorganization and thus, even though he argues that he was not required to criticize the department as part of his job description, his speech was nevertheless made in his role as an employee.

As in *Moss*, *Williams*, and *D'Angelo*, Chief Acevedo was a high-ranking employee with broad administrative duties over the MPD, and his speech concerns subjects that impact the day-to-day operations he was responsible for overseeing. Therefore, Chief Acevedo's speech is non-protected speech by a public employee made pursuant to his official duties.

### iv. **Chief Acevedo did not speak publicly but rather he made his speech as an employee to his superiors in his chain of command**

Another factor the courts consider is whether the employee made his or her speech as an employee to the appropriate persons in the chain of command, or publicly, to the public at large or the media, as a citizen. *See, e.g.*, *King*, 916 F.3d at 1345, 1350 ("King spoke pursuant to her official job duties, the purpose of her speech was work-related, and she never spoke publicly. … King's speech … was made privately and precisely to the appropriate persons in her chain of command."); *Batz*, 794 Fed. Appx. at 890-891 (11th Cir. 2019) (citing *King*, 916 F.3d at 1349) ("We further note that, like King, Batz never appears to have engaged in speech outside of his work. At the very least, he made no effort to communicate his safety concerns to the public or otherwise communicate with anyone outside other government officials.").

Similarly, Chief Acevedo did not communicate his concerns to the public. Chief Acevedo's Memorandum was solely up his chain of command to his superiors, the Mayor and City Manager.[6]

In fact, Chief Acevedo's Memorandum is solely addressed to his superiors up the chain of command in their official capacities ("Manager Arthur Noriega" and "Mayor Francis Suarez"). *See* Comp. ¶ 177; Mem. at 1 stating it is "to you [City Manager and Mayor] in your leadership capacities with the City of Miami"; transmittal addressed to "Mr. Mayor, Mr. Manager".

Further, Chief Acevedo's Memorandum is authored by "Chief Art Acevedo" in his official capacity and is signed by him as "Chief of Police Miami Police Department" in his official capacity. *See* Mem. at 1, 8; transmittal email. The Memorandum was sent by Chief Acevedo from his official City email address to his superiors at their official City email addresses during office hours (*see* transmittal email).

---

[6] Chief Acevedo reports to the Mayor and City Manager. *See* Mem. at 4, 6 (Chief Acevedo identifies Mayor Suarez and City Manager Noriega as "my superiors" three times).

Similarly, in *Reeves v. Miami-Dade County*, No. 11-21709-CV-WILLIAMS, 2012 U.S. Dist. LEXIS 190125, at *19 (S.D. Fla. July 27, 2012), *aff'd*, *Reeves v. Graham*, 551 Fed. Appx. 978 (11th Cir. 2014), among the factors showing the plaintiff was "acting as an employee at the time of the incident" were the fact that he "witnessed the incident and made the report from his place of employment, [and] never left his position".

As with Chief Acevedo's Memorandum, his alleged conversations (recounted in his Memorandum) occurred at, during, or after, and in furtherance of, meetings of the City of Miami, his employer; they were all with City officials up the chain of command; and they all occurred at his workplace (City Hall). *See* Comp. ¶¶ 124-125, 167-168.[7]  As in *Reeves*, 2012 U.S. Dist. LEXIS 190125, at *19 (citations omitted), the speech at issue was made in the employee's official capacity because the statements were made "at a forum to which he had access because of his position" and his speech "took advantage of a channel not available to citizens generally."

### v.   Chief Acevedo's speech is not protected regardless of Resolution R-20-0034

Chief Acevedo attempts to carve out investigating Commissioners from his official duties by relying on Resolution R-20-0034 which directs "all criminal investigations, excluding those relating to misdemeanors or traffic offenses, of City elected officials" to FDLE or the FBI. *See* Comp. ¶¶ 27-35, 175, 273-274, 277. Chief Acevedo's attempt to narrow his official duties fails.

First, Chief Acevedo's speech relates to interference with MPD operations, investigations, staffing, deployment, enforcement, activities, and resources, all of which pertains to interference with his official police duties. *See* Comp. ¶¶ 99, 124, 180, 238; Mem. at 1, 4, 6, 7. Therefore, Chief Acevedo's attempt to narrow the speech to investigating Commissioners is unavailing.

---

[7] Chief Acevedo vaguely refers to alleged protected speech made "in other forums". *See* Comp. ¶¶ 280, 292, 301. There is not a single fact set forth in support of this insufficient allegation.

Second, Chief Acevedo does not claim, nor could he, that *reporting* as opposed to *investigating* Commissioners' misconduct, is outside his duties, and his Memorandum concedes he is reporting misconduct. *See* Mem. at 1 ("This memorandum is to confirm my recent reports to you of misconduct of certain City Commissioners and to disclose additional misconduct to you in your leadership capacities with the City of Miami (City)."); p. 7 ("I feel compelled to memorialize and report their unlawful and retaliatory conduct."); p. 8 ("I have no choice but to memorialize and report the above series of improper acts, because the men and women of the MPD, and the wonderful community we serve, deserve leadership that is committed to the rule of law.").

Third, the Eleventh Circuit in *Moss*, 782 F.3d at 620, and this Court in *Reeves*, 2012 U.S. Dist. LEXIS 190125, at *27 (quoting *Abdur-Rahman*, 567 F.3d at 1284), have rejected "narrow, rigid descriptions of official duties urged upon us to support an inference that public employees spoke as private citizens."

### vi.   Chief Acevedo's speech does not implicate a matter of public concern

In order to satisfy the first threshold requirement under the Supreme Court analysis, the plaintiff's speech must *also* implicate a matter of public concern. *See Moss*, 782 F.3d at 617.

Chief Acevedo's speech does not implicate matters of public concern. Rather, it involves administrative job functions such as hiring, staffing, and conducting standard police business including investigations and code compliance, all of which are not matters of public concern, and thus do not satisfy the first threshold requirement. *See, e.g.,* Comp. ¶¶ 101-107, 172; Mem. at 4-7.

"Whether an employee's speech addresses a matter of public concern hinges on whether the employee's purpose for making the speech was to raise an issue to the public or to further his own private interest." *Moody v. Miami-Dade Cty.*, No. 19-CV-24638-GRAHAM, 2020 U.S. Dist. LEXIS 132541, *6 (S.D. Fla. July 24, 2020) (dismissing § 1983 retaliation claims). Here, as in *Moody*, Chief Acevedo's speech was made in response to alleged action (in this case, interference

with his job duties) that "he experienced personally in the course of employment, rather than for the benefit of a larger community." *Id.*

In *Williams*, 618 Fed. Appx. at 959, the Eleventh Circuit concluded that speech of a Major in the Atlanta Police Department was "made in his role as an employee", stating that his "speech was not just about any general issue of public concern, but about the reorganization of his precinct, which he was in charge of planning and implementing."

Here, Chief Acevedo's speech was about administering the MPD, including reorganization, which he was in charge of planning and implementing as the Chief of Police.

Further, Chief Acevedo's speech "was made in the course of fulfilling his job duties" and therefore it is not protected even if it relates to a matter of public concern, which it does not. *See Reeves*, 2012 U.S. Dist. LEXIS 190125, at *16-17 (quoting *Anderson v. Bd. of Regents of Univ. Sys. of Ga.*, 822 F.Supp. 2d 1342, 1348 (N.D. Ga. 2011) ("Applying *Garcetti*, plaintiff's speech is not protected by the First Amendment if it was made in the course of fulfilling his job duties . . . even if the speech relates to a topic of public concern."). Thus, regardless of whether Chief Acevedo's speech relates to a topic of public concern, which it does not, it is not protected speech.

Chief Acevedo cannot overcome the "first threshold requirement" because he made the speech at issue "pursuant to his official duties" and "the speech at issue is itself ordinarily within the scope of [his] duties." *Garcetti*, 547 U.S. at 421; *Lane*, 573 U.S. at 240; *Moss*, 782 F.3d at 618; *Bosarge v. Mobile Area Water & Sewer Serv.*, 2022 U.S. App. LEXIS 2046, *33, 2022 WL 203020 (11th Cir. Jan. 24, 2022) ("Speech made primarily in Plaintiff's role as an employee is not protected by the First Amendment and cannot give rise to a First Amendment retaliation claim.").

**b.  Chief Acevedo's speech does not outweigh the City's interest in promoting efficiency of providing public services and therefore it must be dismissed**

If Chief Acevedo engaged in protected speech implicating a public concern, which he did not, then the court weighs his First Amendment interests against the City's interest in regulating his speech to promote the efficiency of the public services the City performs through its employees. *Moss*, 782 F.3d at 618 (citing *Pickering*, 391 U.S. 563). "The *Pickering* test seeks to arrive at a balance between the employee's interest in commenting on matters of public concern and his employer's interest in efficiently providing public services." *Moss*, 782 F.3d at 621.

Chief Acevedo's speech involving such administrative job functions as hiring, staffing, and conducting standard police business such as investigations and code compliance, which does not implicate matters of public concern, must be weighed against the "heightened need for order, loyalty, and harmony in a quasi-military organization such as a police or fire department." *Moss*, 782 F.3d at 621 (citing *Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001) (*Anderson* involved a suit brought by Captain of County Emergency Management Agency and President of union of County fire fighters and rescue service employees)).

"[T]he *Pickering* balance is also affected--and its outcome made doubtful--by the special concerns of quasi-military organizations such as police departments. Order and morale are critical to successful police work: a police department is 'a paramilitary organization, with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers.'" *Hansen v. Soldenwagner*, 19 F.3d 573, 577 (11th Cir. 1994) (citation omitted).

Here, the City's need to promote efficiency in providing public services far outweighs Chief Acevedo's complaints about administrative issues in his Memorandum and his Complaint does not satisfy the *Pickering* test.

V.    <u>**City Manager Noriega is entitled to qualified immunity**</u>

City Manager Noriega is entitled to dismissal of the Complaint based on the doctrine of qualified immunity. "Qualified immunity allows government employees to carry out their discretionary duties without fear of litigation, 'protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005)).

As set forth in *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019), *cert. denied*, 139 S. Ct. 2678, 204 L. Ed. 2d 1070 (2019) (citations and internal quotations omitted):

> To obtain a dismissal based on qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. If he was, the burden then shifts to the plaintiff to overcome the official's qualified immunity. To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

Moreover, "decisions in the First Amendment context 'tilt strongly in favor of immunity' and only in the rarest of cases will it be found that a reasonable official should have known that he violated 'clearly established' law". *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (citations omitted).

Here, dismissal is warranted because City Manager Noriega was acting within the scope of his discretionary authority, and Chief Acevedo has failed to meet his burden to plead facts showing the City Manager violated a clearly established right.

   a.    <u>**City Manager Noriega acted within his discretionary authority**</u>

Based on the allegations of the Complaint, *see* Comp. ¶¶ 320-321, and Section 26 of the City Charter, it is clear that City Manager Noriega was acting within his discretionary authority.

Therefore, the burden shifts to Chief Acevedo to overcome City Manager Noriega's qualified immunity. *Patterson v. Orange Cnty. Fla.*, No. 19-CV-21960-WILLIAMS, 2020 U.S. Dist. LEXIS 261283, at *10 (S.D. Fla. May 19, 2020).

**b.** **The Complaint fails to adequately allege that City Manager Noriega violated a clearly established constitutional right**

There are no specific factual allegations that City Manager Noriega violated a clearly established constitutional right.  Instead, the Complaint contains one vague allegation that "each Defendant knew, or should have known" of myriad constitutional rights generally alleged (Comp. ¶¶ 258-264), and one conclusory allegation that City Manager Noriega's "suspension of Chief Acevedo constituted a violation of Chief Acevedo's clearly established rights protected by the First Amendment" (Comp. ¶ 288).

These broad, unsupported allegations are insufficient to overcome City Manager Noriega's qualified immunity and dismissal is warranted. As set forth in *Gaines*, 871 F.3d at 1207 (citation omitted), "[t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be 'particularized to the facts of the case." Plaintiff's Complaint fails to adhere to this principle.

As pleaded, City Manager Noriega did not have fair warning that his alleged actions would violate the First Amendment where he is not the final decisionmaker and Chief Acevedo's speech was made to his superiors pursuant to his official duties. *Gaines*, 871 F.3d at 1208 (citation omitted) ("When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right.").

Chief Acevedo's allegations fail to overcome City Manager Noriega's qualified immunity because Chief Acevedo fails to plead "facts" showing both (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Patterson*, 2020 U.S. Dist. LEXIS 261283, at *10-11 (quoting *Echols*, 913 F.3d at 1319). Rather, Chief Acevedo's allegations show that City Manager Noriega was not the final decisionmaker, and Chief Acevedo's speech is not protected by the First Amendment because it was made as an employee pursuant to his official duties not as a citizen on a matter of public concern. *See* §§ III and IV, *supra*. Therefore, City Manager Noriega is entitled to qualified immunity. *See, e.g.*, *Boyce*, 510 F.3d at 1346-1347 (reversing district court's denial of qualified immunity and remanding for grant of qualified immunity and dismissal of claims as to individual defendants; "Because Boyce and Robinson have not shown a First Amendment, retaliation cause of action concerning their supervisors for these employees' speech regarding their jobs, we reverse the denial of qualified immunity to Andrew, McMillan, and Herren.").

**VI.**  <u>**Conclusion**</u>

Chief Acevedo fails to state a cause of action against City Manager Noriega, because City Manager Noriega was not the final decisionmaker, the speech at issue was not protected speech, and City Manager Noriega's actions are protected by the doctrine of qualified immunity. Chief Acevedo's Complaint against City Manager Noriega must be dismissed with prejudice.[8]

WHEREFORE, Defendant, Arthur Noriega, respectfully requests that this Court dismiss the Complaint against him with prejudice, award Defendant his attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and grant such other relief as this Court deems just, equitable and proper.

---

[8] Defendant incorporates by reference all arguments and positions of other Defendants in their Motions to Dismiss, if applicable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left:40%">

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
    FELDMAN & HOTTE
Attorneys for Defendant
*ARTHUR NORIEGA*
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile:  (305) 854-0508
Primary email:  map@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com


By:_____*/s/ Mason A. Pertnoy*_____
    Mason A. Pertnoy, Esq.
    Florida Bar No. 18334

</div>

## SERVICE LIST

*Counsel for Plaintiff:*
Marcos Daniel Jimenez, Esq.
Marcos D. Jimenez, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel.: (305) 740-1975
Email: mdj@mdjlegal.com

*Counsel for Plaintiff:*
John R. Byrne, Esq.
Leon Cosgrove, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel.: (305) 740-1975
Email: jbyrne@leoncosgrove.com

*Counsel for Defendant, City of Miami:*
Victoria Mendez, City Attorney
Kevin R. Jones, Esq., Division Chief for Labor & Employment
Kerri L. McNulty, Esq.
Stephanie K. Panoff, Esq., Assistant City Attorney
444 S.W. 2nd Avenue, Suite 945
Miami, Florida 33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Email: vmendez@miamigov.com; krjones@miamigov.com; klmcnulty@miamigov.com;
skpanoff@miamigov.com; Slstubbs@miamigov.com; Yillescas@miamigov.com

*Counsel for Defendant, Commissioner Joe Carollo:*
Benedict P. Kuehne, Esq.
Kuehne Davis Law, P.A.
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131
Tel.: (305) 789-5989
Email: Ben.Kuehne@KuehneLaw.com; CMelo@KuehneLaw.com;
Efiling@KuehneLaw.com

*Counsel for Defendant, Commissioner Alex Diaz de la Portilla*
Michael R. Lorigas, Esq.
Javier A. Lopez, Esq.
Kozyak Tropin & Throckmorton LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel.: (305) 372-1800
Email: mlorigas@kttlaw.com; ga@kttlaw.com; jal@kttlaw.com; ya@kttlaw.com

*Counsel for Defendant, Commissioner Alex Diaz de la Portilla*
Thomas A. Tucker Ronzetti, Esq.
Tucker Ronzetti, P.A.
5760 S.W. 46th Terrace
Miami, FL 33155-6015
Tel.: (305) 546-4638
Email: tr@tuckrlaw.com

*Counsel for Defendant, Commissioner Alex Diaz de la Portilla*
Robert W. Rodriguez, Esq.
Robert W. Rodriguez, P.A.
4909 S.W. 74 Court, 1st Floor
Miami, FL 33155
Tel.: (305) 444-1446
Email: robertwrodriguez@gmail.com

*Counsel for Defendant, Commissioner Manolo Reyes:*
Frank Quintero, Jr., Esq.
Quintero Broche, P.A.
75 Valencia Avenue, Suite 800
Coral Gables, FL 33134
Tel.: (305) 446-0303
Fax: (305) 446-4503
Email: eservice@quinterolaw.net; fquintero@quinterolaw.net;
jpbroche@quinterolaw.net

*Counsel for Defendant, Commissioner Manolo Reyes:*
Jose M. Quinon, Esq.
2333 Brickell Avenue, Suite A1
Miami, FL 33129-2497
Tel.: (305) 858-5700
Email: jquinon@quinonlaw.com