**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

CASE NO.:  22-20224-CV-KMW

HUBERT ARTURO ACEVEDO,

       Plaintiff,

v.

CITY OF MIAMI;
JOE CAROLLO, individually;
ALEX DIAZ DE LA PORTILLA, individually;
ARTHUR NORIEGA, individually; and
MANOLO REYES, individually,

       Defendants.

_____/

**PLAINTIFF HUBERT ARTURO ACEVEDO'S**
**<u>OPPOSITION TO CITY OF MIAMI'S MOTION TO DISMISS</u>**

Plaintiff Hubert Arturo Acevedo ("Chief Acevedo") respectfully submits this Opposition to the Motion to Dismiss filed by the City of Miami (the "City") and states the following in support.

## I. Introduction

Chief Acevedo wrote a Memorandum blowing the whistle on widespread corruption and abuse of power by City of Miami Commissioners and sent it to City officials, the FBI, and the State Attorney's office. Within one week of sending the Memorandum, the Commission held hearings publicly reprimanding and humiliating him. Within just over two weeks, the City Manager suspended him. And within three weeks, the Commission, including the individual Commissioner defendants, fired him. Throughout this entire time frame, the City Manager and Commissioners Carollo, Diaz de la Portilla, and Reyes revealed their obvious bias against Chief Acevedo, to the point where even a fellow Commissioner publicly chided them for "taking the bait to show your bias." Because of this retaliation, Chief Acevedo filed a complaint alleging two claims—First Amendment retaliation claim and violation of the Florida Whistle-blower statute. The City now moves to dismiss.

With respect to the whistle-blower claim, the City argues that Chief Acevedo failed to exhaust his administrative remedies. ECF No. 17 at p. 8. The Court should reject the argument for two alternative reasons.

***First***, there were no administrative remedies for Chief Acevedo to exhaust. By way of background, under Fla. Stat. § 112.3187(8), an employee is only required to exhaust administrative remedies if the "the appropriate local governmental authority" has "established by ordinance an administrative procedure" for handling complaints of adverse actions by a "local public employee." With respect to police ***chiefs***, the City has not established such a procedure. The City Charter—the Constitution of the City of Miami—sets forth the only procedure for suspending or

1

removing the chief of police.  Specifically, section 26 of the Charter grants the City of Miami Commission sole and "final" authority to render judgment on the removal of the Chief of Police. A fired police chief cannot "appeal" that judgment to any administrative body.

*Second*, and alternatively, even if an administrative procedure *had* been available to Chief Acevedo, he sufficiently pled that pursuing it would have been futile.  According to the City, if Chief Acevedo had filed a grievance, City Manager Noriega—one of the very persons Chief Acevedo accuses of retaliating against him—would have been the final decisionmaker on such a grievance.  If that were not enough to establish futility, and it should be, City Manager Noriega has already testified "that the City of Miami's suspension of Chief Acevedo—and the reasons for his ultimate termination—had nothing to do with Chief Acevedo sending the September 24, 2021 Memorandum."

With respect to the First Amendment retaliation claim, the City argues that Chief Acevedo has failed to sufficiently plead two elements of the claim:  (1) that he spoke as a "citizen" and (2) that he spoke on a "matter of public concern."  ECF No. 17 at p. 12. The City is wrong on both counts.

*First*, Chief Acevedo spoke as a citizen. In fact, he had no other choice.  Before he spoke, the Commission had passed a resolution that barred the MPD from both investigating City of Miami elected officials for criminal conduct and left it to the City Manager—not the Chief of Police—to report such misconduct to the authorities.  Handcuffed by the very Commissioners who were violating federal and state law, Chief Acevedo had no choice but to go outside of his official duties and report the Commissioner misconduct to City officials, the FBI, and the State Attorney's Office.

**Second**, Chief Acevedo's speech touched on matters of significant public concern—the use of excessive force by police officers and government corruption and abuse of power.  With respect to excessive force, Chief Acevedo's speech outlined the City's problems with excessive force and, critically, the Commissioners' efforts to block efforts to address those problems.  With respect to government corruption and abuse of power, Chief Acevedo's speech addressed certain Commissioners' use of MPD resources to target businesses and persons based on their "whims," as well as the Commissioners' attempts to improperly influence confidential MPD investigations.

In short, Chief Acevedo has sufficiently pled his claims, and the Court should deny the City's Motion.

## II.  Argument

### A.  The Court should not dismiss Count I because the City's futility argument lacks merit.

The City of Miami moves to dismiss Count I—the Whistle-blower claim—based on Chief Acevedo's failure to exhaust administrative remedies.  ECF No. 17 at p. 8.  The Court should deny the City's motion for two alternative reasons.  First, there were no administrative remedies for Chief Acevedo to exhaust.  This is because the City of Miami has not established an administrative procedure for challenging the firing of police or fire chiefs.  Second, even if this Court were to hold that administrative remedies were available to Chief Acevedo, he has sufficiently pled futility.

1.  <u>The City has not established an administrative procedure for terminated police chiefs.</u>

As an initial matter, although Chief Acevedo conservatively alleged facts sufficient to establish futility, he did not **need** to do so.  That is because, under the City of Miami Charter, a fired chief of police may not file a grievance with the City of Miami's Civil Service Board to appeal or otherwise challenge his or her firing.

It makes sense to start with the plain text of the Whistle-blower statute.  Under Fla. Stat. § 112.3187(8), if "the appropriate local governmental authority" has "established by ordinance an administrative procedure" for handling complaints of adverse actions by a "local public employee," that employee must, subject to the futility exception, exhaust that administrative procedure before filing a lawsuit.  The Whistle-blower statute "gives very little guidance regarding the structure of the required administrative procedure," and "[t]his lack of explicit direction in the act suggests the legislature intended to leave the details of the procedure up to the individual government entities[.]" *Dinehart v. Town of Palm Beach*, 728 So. 2d 360, 361 (Fla. Dist. Ct. App. 1999).  But, as a minimum, the procedure must provide "for employee complaints to be heard by a panel of impartial persons and otherwise afford[] due process." *Id.* (internal quotations omitted) (citations omitted).  Whether a city or town's administrative procedure complies with the Whistle-blower statute is a question of law. *Id.*

Here, with respect to City of Miami police or fire chiefs, the City has not adopted a procedure that complies with Florida law.  The City Charter—the Constitution of the City of Miami—sets forth the only procedure for suspending or removing the chief of police or fire chief. *Bryan v. Landis*, 142 So. 650, 653 (Fla. 1932) ("[S]ection 26 provides the sole and exclusive means for suspending and removing the chief of police.").  The relevant section is Section 26, captioned, "Suspension and removal of chief of police and fire chief."  City of Miami Charter § 26. It sets forth the specific grounds for which the chief of police may be suspended, including "incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by property authority, or for any other just and reasonable cause." *Id.*  Most critically, section 26 grants the City of Miami Commission sole and "final" authority to render judgment on the removal of the Chief of Police.  It states:

> The city manager shall have the exclusive right to suspend the chief of police and fire chief for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just and reasonable cause. If either of such chiefs be so suspended the city manager shall forthwith certify the fact, together with the cause of suspension, to the commission who within five (5) days from the date of receipt of such notice, shall proceed to hear such charges and render judgment thereon, which judgment shall be final.

*Id.*  And, of course, Section 26 does not set out any administrative appeal process for fired police or fire chiefs.

In other words, if the City fires a police or fire chief, that chief may not then file an administrative complaint that is "to be heard panel of impartial persons."  *See Dinehart*, 728 So. 2d at 361.  It's the end of the road.

For its part, the City argues that there ***was*** an administrative review procedure available to Chief Acevedo.  Specifically, the City cites to City Ordinance § 40-128, which is captioned "Grievances and abuses generally."  According to the City, under section 40-128, Chief Acevedo could have filed a grievance with the City of Miami's Civil Service Board (the "Board"), which would have then made its recommendation to the City Manager.  If the City Manager saw fit, the City hypothesizes, he could have—without Commission sign off—re-appointed Chief Acevedo to the position of police chief.  The City's argument does not work for two reasons.

***First***, by its plain terms, Section 40-128(b) does not apply to the suspension or removal of the City of Miami's Chief of Police.  Rather, it only applies when an employee is alleging a violation of Article III, "Civil Service Rules and Regulations," which is the article in which Section 40-128(b) appears.  Chief Acevedo was suspended and removed pursuant to the City Charter, ***not*** Article III.  Section 40-128(b) reads, in relevant part:

> Complaint by employee. Any employee who is aggrieved by reason of what he/she considers a violation of ***this article*** to his/her detriment, or who has a grievance concerning his/her employment ***under this article***, and who desires redress, shall

notify the executive secretary in writing, stating the nature of his/her grievance and
requesting a hearing by the board.

City of Miami Ordinance § 40-128(b) (emphasis added).  Nothing in Article III speaks to the
suspension and removal of the chief of police, the grounds therefor (which are, again, set out
separately in Section 26 of the Charter), or anything of the like.  Again, the City of Miami Charter
covers that.

     *Second*, and relatedly, it would make no sense if the Court held that a fired City of Miami
chief of police (or fire chief, for that matter) could avail himself or herself of Section 40-128(b).
The City's own argument illustrates the point.  The City of Miami argues that, after Chief Acevedo
was fired, he could have filed a grievance with the Board pursuant to City Ordinance § 40-128(b).
According to the City, once the Board made its recommendation to City Manager Noriega, Noriega
could have unilaterally decided to reinstate Chief Acevedo as Chief.    Noriega could have done
so, the City says, because under Section 20 of the City of Miami Charter, the City Manager "has
the sole authority to appoint department directors[.]" ECF No. 17 at p. 11.

     But such an action would run directly contrary to Section 26 of the Charter.  Section 26
grants the Commission, not the City Manager, the sole and "final" authority to render judgment
on the removal of the Chief of Police.  Indeed, if the Court were to agree with the City's
interpretation of the ordinances, that last line in Section 26—"which judgment shall be final"—
would actually mean "which judgment shall be final, unless the City Manager later decides to
reinstate him or her."  Such a reading is untenable, and the Court should reject it.

     In sum, the City of Miami has not established by ordinance an administrative procedure
for handling complaints of this nature.  Because Chief Acevedo had no administrative remedies to
exhaust, the Court should deny the City's motion to dismiss the Whistle-blower claim.

2. Even if an administrative procedure was available, pursuing it would have been futile.

Second, and alternatively, were this Court to reach the futility question, it should hold that Chief Acevedo has sufficiently pled futility.

"A trial court may excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate." *Igwe v. City of Miami*, 300 So. 3d 279, 282 (Fla. Dist. Ct. App. 2019) (internal quotations omitted) (citations omitted). "To substantiate a claim of futility as an excuse for not exhausting administrative remedies, a claimant must make a clear and positive showing of futility." *Id.* "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." *Curry v. Cont. Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990), abrogated on other grounds by *Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001).

Chief Acevedo can make such a clear and positive showing here. In his Whistle-blower claim, Chief Acevedo alleges that Chief Noriega suspended him—and the City Commission voted to terminate him—because he sent the September 24, 2021 Memorandum outlining abuses by the Commissioners. Compl. ¶ 241. According to the City, if Chief Acevedo had filed a grievance, City Manager Noriega—the very person Chief Acevedo accuses of retaliating against him—would have been the final decisionmaker on such a grievance. ECF No. 17 at p. 11. If that were not enough to establish futility, and respectfully it should be, City Manager Noriega has already testified "that the City of Miami's suspension of Chief Acevedo—and the reasons for his ultimate termination—had nothing to do with Chief Acevedo sending the September 24, 2021 Memorandum." Compl. ¶ 248(c). In other words, City Manager Noriega has already determined

that Chief Acevedo's claims lack merit.  It is hard to conceive of a more clear-cut case for futility than this one.

The City's various arguments on futility are not persuasive.  **First**, quoting *S. Fla. Blood Bank, Inc. v. Futch*, 764 So. 2d 724, 726 (Fla. Dist. Ct. App. 2000), the City argues that the "futility exception is limited to those situations where resort to administrative remedies would be clearly useless."  ECF No. 17 at p. 10 (internal quotations omitted) (citations omitted).  That is certainly the case here.  In fact, a case cited by the *Futch* court—*Stephenson v. Provident Life & Accident Ins. Co.*, 1 F.Supp.2d 1326, 1331 (M.D. Ala. 1998)—helps illustrate the point.  There, a district court granted a motion for summary judgment against a plaintiff because the plaintiff failed to exhaust administrative remedies.  In so ruling, the court observed that there was "no evidence in the record" to support the plaintiff's "contention" that the insurance company defendant had "already made up its corporate mind" when it came to the plaintiff's claim.  *Id.*  Here, of course, Chief Acevedo alleged facts that, if true, would clearly and positively establish that the City **had** made up its mind about Chief Acevedo's Whistle-blower claim.  In fact, as noted above, the City argues that City Manager Noriega would have been the ultimate decisionmaker on Chief Acevedo's grievance.  Noriega has already expressed his state of mind on the record, testifying that Chief Acevedo was not suspended for sending his Memorandum.

**Second**, the City likens Chief Acevedo's futility argument to cases where plaintiffs have unsuccessfully argued that their resort to administrative remedies would have been futile because any administrative review would be conducted by persons who were "aligned" or "share[d] common interests or affiliations" with persons whose actions are under review.  ECF No. 17 at p. 10. But Chief Acevedo has not alleged that the hypothetical City of Miami administrative review board would have shared common interests or affiliations with City Manager Noriega or the

Commissioners.  Chief Acevedo has alleged that, had he filed a grievance with the City, the ultimate decisionmakers would have been the same people whose acts are under review.  Compl. ¶ 248.  And he alleged that these same people are demonstrably biased against him.  *Id.*

In sum, if the Court holds that Chief Acevedo could have availed himself of an administrative procedure, it should further hold he has sufficiently pled that resort to such procedures would have been futile here.

**B.  The Chief sufficiently pled that he spoke as a private citizen on an issue of public concern.**

To establish a First Amendment retaliation claim, an employee must show that he or she spoke as a private "citizen" on "a matter of public concern"; that "the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities"; and that "the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).  "If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech."  *Id.*

The City's Motion to Dismiss focuses only on whether the Chief pled facts that, if true, prove he spoke as a (1) "private citizen" on (2) "matter of public concern."  ECF No. 17 at p. 12.  He has.

1.  Chief Acevedo sufficiently pled that he spoke as a private citizen.

The Complaint pled facts sufficient to show that Chief Acevedo spoke as a private citizen, and not within the scope of his duties as Chief of Police.  To decide whether a public employee speaks as a citizen, courts ask whether the employee's speech "owes its existence to [the] employee's professional responsibilities." *Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21CV184-

MW/GRJ, 2022 WL 195612, at *21 (N.D. Fla. Jan. 21, 2022) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (1951)).  In *Lane v. Franks*, 573 U.S. 228, 240 (2014), the Supreme Court explained that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Instead, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties."  *Id.*

Here, Chief Acevedo's speech could not have possibly fallen within the scope of his duties because the Commission had passed a resolution that precluded him—as the Chief of Police— from investigating and reporting on malfeasance by City officials.

By way of background, on February 13, 2020, the Commission passed resolution No. R-20-0034.  Compl. ¶ 28.  This resolution directed the City Manager to develop a Memorandum of Understanding with the Florida Department of Law Enforcement ("FDLE") or the FBI to direct all criminal investigations, excluding those relating to misdemeanors or traffic offenses, of City of Miami elected officials and their present and former personnel to the FDLE and/or the FBI.  *Id.* ¶ 29.  The resolution further ordered that, until the Memorandum of Understanding was approved by the Commission, the City Manager was to forward any and all pending criminal investigations of City elected officials and their present and former personnel, excluding those relating to misdemeanors or traffic offenses, to the FDLE and/or the FBI."  *Id.*

In short, Resolution No. R-20-0034 put Chief Acevedo in "no man's land."  On the one hand, because of the resolution, his duties did ***not*** include investigating or reporting on City of Miami elected officials (any "investigation" was to be done by the FDLE or the FBI and any "forward[ing]" by the City Manager).  On the other hand, neither the FDLE nor the FBI enter into "understandings" with city governments.  *Id.* ¶ 33 ("The FBI and the FDLE independently decide

whom and what to investigate and do not rely on 'understandings' or investigating City of Miami elected officials from the MPD to either the FDLE or the FBI.").  As a practical matter, this put City elected officials beyond the jurisdiction of law enforcement.  Chief Acevedo, therefore, was left with only one choice: to speak out as a private citizen.  And so that is what he did.  Chief Acevedo sent the September 24, 2021 Memorandum to "City Manager Noriega, Mayor Suarez, the Miami-Dade State Attorney's Office, and the FBI."  *Id.* ¶ 177.  Indeed, City Manager Noriega effectively acknowledged that Chief Acevedo was acting as a private citizen when he spoke. Specifically, after Chief Acevedo sent the Memorandum, Noriega called him and said, "So you've gone after them, and better be sure you have a kill shot because if you don't, you better not take it. ***Maybe it's because you're an outsider it's easier for you***. Trust me, I came from my last job where I had a hell of a lot more autonomy than I have here, but I realize and accept my limitations." *Id.* ¶ 186 (emphasis added).

On this point, the Eleventh Circuit's recent decision in *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *6 (11th Cir. Jan. 3, 2022) is instructive.  The plaintiff in *Gomez* was a former detective.  She brought a First Amendment retaliation claim, alleging that City officials constructively terminated her and forced her to resign because she had provided a sworn statement to FDLE in connection with its investigation into criminal activity of the local police chief and his command staff.  *Id.* at *8.  The trial court dismissed her claim.  The Eleventh Circuit vacated the dismissal.  *Id.*  The Eleventh Circuit held that the plaintiff "wasn't simply performing . . . her job duties" when she provided a sworn statement to the FDLE.  *Id.* at *6.  In so holding, the court noted that the FDLE was "not her employer" but a "distinct law-enforcement agency of the State of Florida" and that "nothing from the face of the complaint suggests that Gomez's 'ordinary job

responsibilities' as a detective were implicated by this outside investigation into a public corruption scandal." *Id.*

Here, the facts even more strongly counsel toward denying a motion to dismiss. Chief Acevedo's "ordinary job responsibilities" did not include investigating or reporting on Commissioner misconduct. To the contrary, Resolution No. R-20-0034 precluded him from taking on such duties. And, of course, Chief Acevedo did not send the Memorandum to his "employer," the City of Miami. Instead, he sent it to the Miami-Dade State Attorney's Office, the FBI, City Manager Noriega, and Mayor Suarez. Compl. ¶ 177.

For its part, the City argues that Chief Acevedo spoke as a public employee, not a private citizen. They effectively present two arguments.

**First**, the City argues that Chief Acevedo "wrote a private memorandum as Chief of Police to his immediate boss, the City of Miami." ECF No. 17 at p. 14. This is factually untrue. Chief Acevedo addressed the Memorandum to both the Mayor and the City Manager and, as he previewed in the Memorandum itself, circulated it the FBI and the Miami-Dade State Attorney's Office. Compl. ¶ 177.

**Second**, the City argues that Chief Acevedo spoke about concerns/issues "directly related to the Police Chief's job duties." ECF No. 17 at p. 14. Specifically, it asserts that (i) it was his "job to manage the day-to-day operations of the Police Department"; (ii) the Charter tasked him "with responsibilities for the prevention, control and suppression of crime in the city"; and (iii) the Commission had directed him to "report all criminal investigations of City officials to the FDLE and/or the FBI." *Id*. at 14-15.

There are a number of problems with this argument. For one thing, it contains factual inaccuracies. Resolution No. R-20-0034 did not direct Chief Acevedo to report criminal

investigations of City officials to the FDLE and/or the FBI.  *See* Compl.  ¶¶ 28-33.  To the contrary, it directed the City Manager to do so.  *Id.* ¶ 30.  In fact, it was because that resolution tied Chief Acevedo's hands in terms of ***both*** investigating and reporting Commissioner misconduct that he was forced to speak as a private citizen, reporting that misconduct to multiple law enforcement agencies.  For another thing, *Franks* requires that the "speech" at issue must be "ordinarily within the scope of an employee's duties."  573 U.S. at 240.  Again, that cannot possibly be the case here. Chief Acevedo's speech—his Memorandum—outlined Commissioner corruption and violations of law.  Putting aside that the City has pointed to no pled facts (or even judicially noticeable facts) that establish such whistle-blowing speech was one of the Chief's duties, the Chief has pled facts that affirmatively establish that it was ***not*** part of his duties.  The resolution assigned the City Manager that task.  And, of course, the City of Miami Charter "does not give the Police Chief the duty or powers to discipline the City of Miami Commissioners."  Compl. ¶ 22.

In short, the Court should hold that Chief Acevedo has pled facts sufficient to establish he spoke as a private citizen.

2.  Chief Acevedo sufficiently pled that he spoke on a matter of public concern.

"To fall within the realm of public concern, an employee's speech must relate to 'any matter of political, social, or other concern to the community." *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *6 (11th Cir. Jan. 3, 2022) (internal quotations omitted) (citations omitted).  *Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21CV184-MW/GRJ, 2022 WL 195612, at *22 (N.D. Fla. Jan. 21, 2022) (noting that when deciding whether a plaintiff spoke on matter of public concern, courts ask whether their speech  "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public").  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context

of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). But the "most important factor" is the content of the speech. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1284 (11th Cir. 2006). As the Supreme Court has recognized, "exposing governmental . . . misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425.

Here, Chief Acevedo spoke on matters of public concern because his speech focused on excessive force by police officers and corruption in City government—both of which are the subject of and relate to "matter[s] of political, social, or other concern to the community." *Gomez*, 2022 WL 19201, at *6.

> *a. The content of the speech shows the Chief spoke on a matter of public concern.*

> i. <u>The Chief spoke about excessive force by police officers</u>

Chief Acevedo's speech addressed a matter of obvious public concern: excessive force by police officers, and the Commissioners' efforts to impede relevant reform. Specifically, in the September 24, 2021 Memorandum, Chief Acevedo wrote: (1) that the City had hired him to reform and change the culture of the MPD; (2) that since his arrival at the MPD, he had "uncovered a pattern of unlawful use of force by officers, and in some instances the chain of command has covered up the unlawful use of force by some officers"; and critically, (3) that the Defendant Commissioners had impeded reform at the MPD, including by eliminating funding for two positions designed to address the MPD's excessive force problems. ECF No. 17, Ex. C at p. 4-6.

Other federal courts have recognized that a police department's use of excessive force is a matter of public concern. The Second Circuit's decision in *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) illustrates the point. There, the Second Circuit reversed a trial court's dismissal of a plaintiff's First Amendment retaliation claim. The plaintiff was a police officer. He alleged he was terminated because he witnessed another officer commit excessive force and refused to alter

or falsify his report documenting that excessive force.  The Second Circuit held that "police malfeasance consisting of the use of excessive force is plainly a matter of public concern." *Id.* at 237.  It was so, the Court explained, "for several reasons, including public safety and welfare—as well as preservation of the public fisc," as the "New York City Police Department in the past decade paid '[m]ore than $23 million ... to compensate for police bullets or brutality" and . . . 'Taxpayers foot the bill . . . . '" *Id.* at 236; *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern.").

In fact, this case presents an even stronger First Amendment retaliation claim than *Jackler* did.  Unlike *Jackler*, which involved a police officer who was punished for ***refusing*** to speak, Chief Acevedo affirmatively spoke out against both excessive force and City Commissioners' efforts to impede his reform efforts.  And he did so during a time in which public interest in excessive force and police reform was at an all-time high.  *Akeem Fuller, v. Warren Cty. Educ. Serv. Ctr.*, No. 1:21CV451, 2022 WL 445815, at *5 (S.D. Ohio Feb. 14, 2022) ("[T]he Court notes that there is little doubt that the issues raised as part of the 'Black Lives Matter' movement or the widespread protests of the killing of George Floyd are matters of significant public concern.").

### ii. The Chief spoke about corruption in City government.

Chief Acevedo's speech also related to another matter of public concern:  corruption in City government.  "[A] core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson v. City of Waycross*, 888 F.2d 1562, 1566 (11th Cir. 1989); *Lane*, 573 U.S. at 241 (noting that "corruption in a public program and misuse of state funds . . . obviously involves a matter of significant public concern").

15

Here, Chief Acevedo's Memorandum exposed multiple instances of public corruption and abuse of power by the Defendant Commissioners.  Specifically, it "outlined how the Defendant Commissioners had attempted to weaponize the MPD, [and] interfered with MPD internal and external investigations[.]" Compl. ¶ 180.  The Memorandum itself is replete with specific instances of corruption by the Defendant Commissioners.  A few examples are illustrative:

- "In fact, [Commissioner Carollo] and Commissioner Diaz de la Portilla have provided the MPD with a target list of establishments they insist are engaged in criminal activity and have pointed the finger at establishments in each other's districts, causing the MPD to investigate business establishments based on the whims of Commissioners Carollo and Diaz de la Portilla."

- "The MPD SIS/Vice Division has wasted untold hours investigating business establishments due to the improper political influence of, and intimidation by, these two commissioners."

- "[Commissioners Carollo, Diaz de la Portilla, and Reyes have] questioned me about the ongoing [confidential Internal Affairs] investigation in their offices, have falsely accused me in private of carrying out a vendetta against [Luis] Camacho, and have demanded that I bring Camacho back to work and reappoint him to the [Sergeant-at-Arms Detail]."

ECF No. 17, Ex. C at p. 3, 8.  The Commissioners' actions violated federal and state law as well as the City of Miami Charter.  Compl. ¶ 35.

Again, the Eleventh Circuit's recent decision in *Gomez* is instructive on this point.  There, the court held that the former detective/plaintiff's speech addressed a public concern where it provided information in connection with an "investigation into the impropriety and criminal activity of a local police chief[.]" 2022 WL 19201, at *6.  The court explained that "[t]here can be

no doubt that corruption in a police department is an issue of public concern" and that the "point of the speech in question was to help bring [this] wrongdoing to light." *Id.*

So too here. Public corruption in City government is an issue of public concern, and the allegations in the Complaint clearly show that Chief Acevedo spoke to expose this corruption. In fact, Chief Acevedo noted he would be "providing this information to the proper authorities." ECF No. 17, Ex. C at p. 8.

> b. *The speech's context/form show the Chief spoke on a matter of public concern.*

The context and form of Chief Acevedo's speech also show that he spoke on a matter of public concern. Again, the Court need look no further than the Eleventh Circuit's recent guidance in *Gomez*. There, the court held that the "form and context of [the plaintiff's] speech" served to "fortify [the court's] conclusion that [the plaintiff] has plausibly alleged that she was speaking on a matter of public concern." *Gomez*, 2022 WL 19201, at *6. In *Gomez*, that "form and context" was a police officer's "sworn statement to the FDLE that could help produce criminal charges." *Id.* Here, Chief Acevedo provided his detailed allegations of Commission corruption and abuse of power to multiple law enforcement agencies—the FBI and the State Attorney's Office. That "form and context" underscores that Chief Acevedo was speaking on a matter of public concern.

For its part, the City argues that Chief Acevedo's speech did not address a matter of public concern. Its approach is two-fold.

**First**, it seizes on the fact that Chief Acevedo did not publicly disseminate his speech, instead sending it to City officials and various law enforcement bodies. ECF No. 17 at p. 17. But a person does not need to speak ***publicly*** for speech to be on a matter of public concern. "Public dissemination is not, however, necessary for speech to be on a matter of public concern." *Rodin v. City of Coral Springs*, 229 F. App'x 849, 856-57 (11th Cir. 2007). Courts have only found lack

of public dissemination "significant" where that lack of public dissemination "confirmed the speaker's purely private motivation." *Id.* Again, *Gomez* illustrates the point.   There, the fired detective had provided a sworn statement to a ***single*** law enforcement agency, not the public at large.  Yet the Eleventh still held that she had spoken on a matter of public concern.  In so holding, the Eleventh Circuit differentiated between (a) the detective's personal grievances with the police chief ("problems she had with the chief that were 'administrative in nature'"), which the Court held did not address matters of public concern, and (b) the detective's sharing of information to facilitate a criminal investigation ("information about alleged criminal activity involving the Chief of Police and certain members of his command staff"), which the Court held did address matters of public concern. *Gomez,* 2022 WL 19201, at *6.

Here, the argument that Chief Acevedo spoke out of "purely private motivation" does not pass the laugh test.  He ended his Memorandum by literally saying that he felt compelled to speak about the Commissioners' corruption and abuse of power because "the men and women of the MPD, and the wonderful community we serve, deserve leadership that is committed to the rule of law" and because he was working for the "wellbeing of the men and women of the MPD, the lawful independence of the MPD, and the people of the City of Miami."  ECF No. 17, Ex. C at p. 8.  In other words, Chief Acevedo was speaking out of concern for the people of Miami, including its police officers.

**Second**, the City equates the Chief's speech with the speech in various cases where courts held that the speech did not involve a matter of public concern. ECF No. 17 at p. 18.  Factually, this case is well far afield of those cases.  Again, in the public concern analysis, content is king. *See Mitchell*, 468 F.3d at 1284.  Chief Acevedo spoke about the Commissioners' attempts to impede police reform on excessive force, their weaponizing of the police force to target perceived

enemies in the community, and their meddling in police affairs, including confidential investigations.  One cannot credibly equate that with (1) an employee's speech addressing "personal grievances and frustrations with their jobs as case managers," *Boyce v. Andrew*, 510 F.3d 1333, 1345 (11th Cir. 2007), (2) an employee's complaint about sexual harassment to a supervisor, *Morgan v. Ford*, 6 F.3d 750, 754-55 (11th Cir. 2007), (3) an employee's complaint about a fellow teacher abusing the employee's son, *Wilbourne v. Forsyth County School District*, 306 Fed. Appx. 473, 477 (11th Cir. 2009), and (4) a group of university psychologists complaining about a new supervisor's "incompetence" and operation of a mental health center, *Alves v. Board of Regents of the University System of Georgia*, 804 F.3d 1149, 1163 (11th Cir. 2015).

### III.  Conclusion

For the foregoing reasons, the Court should deny the City's Motion to Dismiss.

Dated: April 13, 2022

Respectfully submitted,

**Marcos Daniel Jiménez**

Marcos Daniel Jiménez
 Florida Bar No. 441503
MARCOS D. JIMÉNEZ, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 570-3249
Email: mdj@mdjlegal.com

**John R. Byrne**

John R. Byrne
 Florida Bar No. 126294
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Email: jbyrne@leoncosgrove.com

*Counsel for Hubert Arturo Acevedo*