**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

CASE NO.: 22-20224-CV-KMW

HUBERT ARTURO ACEVEDO,

    Plaintiff,

v.

CITY OF MIAMI;
JOE CAROLLO, individually;
ALEX DIAZ DE LA PORTILLA, individually;
ARTHUR NORIEGA, individually; and
MANOLO REYES, individually,

    Defendants.
_____/

**PLAINTIFF HUBERT ARTURO ACEVEDO'S
<u>OPPOSITION TO MANOLO REYES'S MOTION TO DISMISS</u>**

Plaintiff Hubert Arturo Acevedo ("Chief Acevedo") submits this Opposition to the Motion to Dismiss filed by Manolo Reyes ("Reyes") and states the following in support.

## I. Introduction

Chief Acevedo wrote a Memorandum blowing the whistle on widespread corruption and abuse of power by City of Miami Commissioners and sent it to City officials, the FBI, and the State Attorney's office. Within one week of sending the Memorandum, the Commission held hearings publicly reprimanding and humiliating him. Within just over two weeks, the City Manager suspended him. And within three weeks, the Commission, including the individual Commissioner defendants, fired him. Throughout this time, the City Manager and Commissioners Carollo, Diaz de la Portilla, and Reyes showed their obvious bias against Chief Acevedo, to the point where even a fellow Commissioner publicly chided his fellow Commissioners for "taking the bait to show your bias." Because of this retaliation, Chief Acevedo filed a complaint alleging two claims, including a First Amendment retaliation claim. Reyes now moves to dismiss the First Amendment claim. He makes three arguments. None are persuasive.

***First,*** Reyes argues that Chief Acevedo has not sufficiently pled a First Amendment retaliation claim. ECF No. 23 at p. 11. To establish a retaliation claim, an employee must show that he or she spoke as a private "citizen" on "a matter of public concern"; that "the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities"; and that "the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). Reyes argues that Chief Acevedo has failed to sufficiently plead four elements: (1) that he spoke as a citizen; (2) that he spoke on a matter of public concern; (3) that he identified adverse employment actions; and (4) causation (i.e., the "substantial part" component). ECF No. 23 at p. 9-11. Reyes is wrong on all four counts.

<u>One</u>, Chief Acevedo spoke as a citizen. In fact, he had no other choice. Before he spoke, the Commission had passed a resolution that barred the MPD from investigating City of Miami elected officials for criminal conduct and left it to the City Manager—not the Chief of Police—to report such misconduct to the authorities. Handcuffed by the very Commissioners who were violating federal and state law, Chief Acevedo had no choice but to go outside of his official duties and report the Commissioner misconduct to City officials, the FBI, and the State Attorney's Office.

1

<u>Two</u>, Chief Acevedo's speech touched on matters of significant public concern—the use of excessive force by police officers as well as government corruption and abuse of power. With respect to excessive force, Chief Acevedo's speech outlined the City's problems with excessive force and, critically, the Commissioners' attempts to block efforts to address those problems. With respect to government corruption and abuse of power, Chief Acevedo's speech addressed certain Commissioners' use of MPD resources to target businesses and persons based on their "whims," as well as the Commissioners' attempts to improperly influence confidential MPD investigations.

<u>Three</u>, Chief Acevedo alleged retaliatory actions that, under settled law, qualify as "adverse employment actions," including his suspension and ultimate termination.

And <u>four</u>, Chief Acevedo alleged causation, noting both the "temporal proximity" of the retaliatory acts to his speech and comments by the Commissioners that exposed their retaliatory animus.

***Second***, Reyes argues that he is entitled to qualified immunity. ECF No. 23 at p. 16. He is not. Not only did general rules laid down by the Supreme Court apply with "obvious clarity" to the facts confronted by Reyes, the Eleventh Circuit had published several "materially similar" cases that placed him on "fair warning" that his conduct was unlawful. Reyes ignored this "clearly established" law at his peril.

***Third***, Reyes argues that he is entitled to legislative immunity. *Id*. at 19. He is not. For legislative immunity to apply, the challenged act must be "legislative," not "administrative." Under the case law, the challenged acts here—acts directed at a specific employee and based on facts specific to that employee—are administrative in nature.

In short, Chief Acevedo has sufficiently pled his claims, and the Court should deny Reyes's Motion to Dismiss.

## II. Argument

**A.    Chief Acevedo sufficiently pled a First Amendment retaliation claim.**

To establish a First Amendment retaliation claim, an employee must show that he or she spoke as a private "citizen" on "a matter of public concern"; that "the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities"; and that "the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). "If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a

2

preponderance of the evidence that it would have made the same decision even in the absence of the protected speech." *Id.*

In his Motion to Dismiss, Reyes argues that Chief Acevedo failed to sufficiently plead that (1) he spoke as a private citizen; (2) he spoke on a matter of public concern; (3) that he suffered "cognizable retaliatory actions"[1]; and (4) his speech played a substantial part in any adverse employment action. ECF No. 23 at p. 9-11. Reyes is mistaken.

1. Chief Acevedo sufficiently pled that he spoke as a private citizen.

The Complaint pled facts sufficient to show that Chief Acevedo spoke as a private citizen, and not within the scope of his duties as Chief of Police. To decide whether a public employee speaks as a citizen, courts ask whether the employee's speech "owes its existence to [the] employee's professional responsibilities." *Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21CV184-MW/GRJ, 2022 WL 195612, at *21 (N.D. Fla. Jan. 21, 2022) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (1951)). In *Lane v. Franks*, 573 U.S. 228, 240 (2014), the Supreme Court explained that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Instead, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id.*

Here, Chief Acevedo's speech could not have possibly fallen within the scope of his duties because the Commission had passed a resolution that precluded him—as the Chief of Police—from investigating and reporting on malfeasance by City officials.

By way of background, on February 13, 2020, the Commission passed resolution No. R-20-0034. Compl. ¶ 28. This resolution directed the City Manager to develop a Memorandum of Understanding with the Florida Department of Law Enforcement ("FDLE") or the FBI to direct all criminal investigations, excluding those relating to misdemeanors or traffic offenses, of City of Miami elected officials and their present and former personnel to the FDLE and/or the FBI. *Id.* ¶ 29. The resolution further ordered that, until the Memorandum of Understanding was approved by the Commission, the City Manager was to forward any and all pending criminal investigations of City elected officials and their present and former personnel, excluding those relating to misdemeanors or traffic offenses, to the FDLE and/or the FBI." *Id.*

---

[1] Although it is not entirely clear, Reyes appears to be arguing that Chief Acevedo failed to sufficiently allege facts establishing adverse employment actions.

In short, Resolution No. R-20-0034 put Chief Acevedo in "no man's land."  On the one hand, because of the resolution, his duties did ***not*** include investigating or reporting on City of Miami elected officials (any "investigation" was to be done by the FDLE or the FBI and any "forward[ing]" by the City Manager).  On the other hand, neither the FDLE nor the FBI enter into "understandings" with city governments.  *Id.* ¶ 33 ("The FBI and the FDLE independently decide whom and what to investigate and do not rely on 'understandings' or investigating City of Miami elected officials from the MPD to either the FDLE or the FBI.").  As a practical matter, this put City elected officials beyond the jurisdiction of law enforcement.  Chief Acevedo, therefore, was left with only one choice: to speak out as a private citizen.  And so that is what he did.  Chief Acevedo sent the September 24, 2021 Memorandum to "City Manager Noriega, Mayor Suarez, the Miami-Dade State Attorney's Office, and the FBI."  *Id.* ¶ 177.  Indeed, City Manager Noriega effectively acknowledged that Chief Acevedo was acting as a private citizen when he spoke.  Specifically, after Chief Acevedo sent the Memorandum, Noriega called him and said, "So you've gone after them, and better be sure you have a kill shot because if you don't, you better not take it.  ***Maybe it's because you're an outsider it's easier for you***.  Trust me, I came from my last job where I had a hell of a lot more autonomy than I have here, but I realize and accept my limitations."  *Id.* ¶ 186 (emphasis added).

On this point, the Eleventh Circuit's recent decision in *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *6 (11th Cir. Jan. 3, 2022) is instructive.  The plaintiff in *Gomez* was a former detective.  She brought a First Amendment retaliation claim, alleging that City officials constructively terminated her and forced her to resign because she had provided a sworn statement to FDLE in connection with its investigation into criminal activity of the local police chief and his command staff.  *Id.* at *8.  The trial court dismissed her claim.  The Eleventh Circuit vacated the dismissal.  *Id*.  The Eleventh Circuit held that the plaintiff "wasn't simply performing . . . her job duties" when she provided a sworn statement to the FDLE.  *Id.* at *6.  In so holding, the court noted that the FDLE was "not her employer" but a "distinct law-enforcement agency of the State of Florida" and that "nothing from the face of the complaint suggests that Gomez's 'ordinary job responsibilities' as a detective were implicated by this outside investigation into a public corruption scandal."  *Id.*

Here, the facts even more strongly counsel toward denying a motion to dismiss.  Chief Acevedo's "ordinary job responsibilities" did not include investigating or reporting on

Commissioner misconduct. To the contrary, Resolution No. R-20-0034 precluded him from taking on such duties. And, of course, Chief Acevedo did not send the Memorandum to his "employer," the City of Miami. Instead, he sent it to the Miami-Dade State Attorney's Office, the FBI, City Manager Noriega, and Mayor Suarez. Compl. ¶ 177.

For his part, Reyes argues that Chief Acevedo spoke as a public employee, not a private citizen fail. He makes two arguments.

***First***, Reyes incorporates by reference the City of Miami's Motion to Dismiss arguments on this public employee v. private citizen issue. ECF No. 23 at p. 6. Chief Acevedo incorporates his response to the City's arguments here.

***Second***, Reyes argues that *King v. Bd. Of Cty. Commissioners*, 916 F.3d 1339, 1349 (11th Cir. 2019) warrants dismissal. *Id*. at 9. *King* is inapposite for two reasons, one procedural and one factual.

Procedurally, *King* was decided at the summary judgment stage, not the motion to dismiss stage. As many courts have recognized, when deciding whether an employee has spoken as an employee or a private citizen, courts should generally have the benefit of a developed summary judgment record so that they may fully understand the employee's particular job duties. *Carollo v. Boria*, 833 F.3d 1322, 1330 (11th Cir. 2016) (noting, in affirming district court's denial of motion to dismiss a First Amendment retaliation claim, that "[d]iscovery will illuminate exactly which laws Carollo had the responsibility to enforce or administer and, in fact, enforced or administered in the ordinary course of his job responsibilities"); *Teblum v. City of Cape Coral Charter Sch. Auth.*, No. 2:20-CV-547-JLB-MRM, 2021 WL 1172910, at *5 (M.D. Fla. Mar. 29, 2021) (denying motion to dismiss First Amendment retaliation claim because the court did not enjoy the "luxury" "of a developed summary-judgment record with specific job duties to assist" its analysis of whether the plaintiff spoke as a private citizen).

Factually, the *King* case is nothing like this one. In *King*, the Eleventh Circuit seized on the fact that the plaintiff had spoken "pursuant to her job duties" and "in accordance with or in furtherance of the ordinary responsibilities of her employment." 916 F.3d at 1346. Here, Chief Acevedo's job duties did not include writing a whistle-blowing memorandum calling out Commissioners for corruption, abusing power, and impeding reform. To the contrary, before Chief Acevedo spoke, the Commissioners had passed a resolution that explicitly removed such investigating and reporting duties from the role of Chief of Police. That resolution, Resolution

5

No. R-20-0034, purported to delegate such investigation to the FDLE /FBI and tasked the City Manager with reporting such matters to the FDLE/FBI.  Compl. ¶¶ 28-29.  Because of that, Chief Acevedo had no choice but to speak as a public citizen and directly report the misconduct to the FBI and State Attorney's Office.

Indeed, the fact pattern here is nearly identical to the fact pattern in *Carollo*.  There, the Eleventh Circuit affirmed the denial of a city official's motion to dismiss a First Amendment retaliation claim. *Carollo*, 833 F.3d at 1330.  In deciding whether the plaintiff/City Manager had spoken as an employee or a private citizen, the court noted that the question was whether "Carollo as City Manager ordinarily made reports to law enforcement and other agencies about violations of Florida's campaign finance laws." *Id.* at 1331.  The court answered that question in the negative. *Id.*  Here, the Complaint pleads specific facts that establish Chief Acevedo's "ordinary job duties" ***did not involve*** reporting Commissioner corruption to the FBI or State Attorney's Office.

2. Chief Acevedo sufficiently pled that he spoke on a matter of public concern.

"To fall within the realm of public concern, an employee's speech must relate to 'any matter of political, social, or other concern to the community." *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *6 (11th Cir. Jan. 3, 2022) (internal quotations omitted) (citations omitted); *Austin v. Univ. of Fla. Bd. of Trustees*, No. 1:21CV184-MW/GRJ, 2022 WL 195612, at *22 (N.D. Fla. Jan. 21, 2022) (noting that when deciding whether a plaintiff spoke on matter of public concern, courts ask whether their speech  "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public").  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). But the "most important factor" is the content of the speech. *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1284 (11th Cir. 2006).  As the Supreme Court has recognized, "exposing governmental . . . misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425.

Here, Chief Acevedo spoke on matters of public concern because his speech focused on excessive force by police officers and corruption in City government—both of which are the subject of and relate to "matter[s] of political, social, or other concern to the community." *Gomez*, 2022 WL 19201, at *6.

6

*a. The content of the speech shows the Chief spoke on a matter of public concern.*

i. <u>The Chief spoke about excessive force by police officers</u>

Chief Acevedo's speech addressed a matter of obvious public concern: excessive force by police officers, and the Commissioners' efforts to impede relevant reform. Specifically, in the September 24, 2021 Memorandum, Chief Acevedo wrote: (1) that the City had hired him to reform and change the culture of the MPD; (2) that since his arrival at the MPD, he had "uncovered a pattern of unlawful use of force by officers, and in some instances the chain of command has covered up the unlawful use of force by some officers"; and critically, (3) that the Defendant Commissioners had impeded reform at the MPD, including by eliminating funding for two positions designed to address the MPD's excessive force problems. ECF No. 17, Ex. C at p. 4-6.

Other federal courts have recognized that a police department's use of excessive force is a matter of public concern. The Second Circuit's decision in *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) illustrates the point. There, the Second Circuit reversed a trial court's dismissal of a plaintiff's First Amendment retaliation claim. The plaintiff was a police officer. He alleged he was terminated because he witnessed another officer commit excessive force and refused to alter or falsify his report documenting that excessive force. The Second Circuit held that "police malfeasance consisting of the use of excessive force is plainly a matter of public concern." *Id.* at 237. It was so, the Court explained, "for several reasons, including public safety and welfare—as well as preservation of the public fisc," as the "New York City Police Department in the past decade paid '[m]ore than $23 million ... to compensate for police bullets or brutality" and . . . 'Taxpayers foot the bill . . . .'" *Id.* at 236; *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern.").

In fact, this case presents an even stronger First Amendment retaliation claim than *Jackler* did. Unlike *Jackler*, which involved a police officer who was punished for ***refusing*** to speak, Chief Acevedo affirmatively spoke out against both excessive force and City Commissioners' attempts to impede his reform efforts. And he did so during a time in which public interest in excessive force and police reform was at an all-time high. *Akeem Fuller, v. Warren Cty. Educ. Serv. Ctr.*, No. 1:21CV451, 2022 WL 445815, at *5 (S.D. Ohio Feb. 14, 2022) ("[T]he Court notes that there is little doubt that the issues raised as part of the 'Black Lives Matter' movement or the widespread protests of the killing of George Floyd are matters of significant public concern.").

7

> ii. The Chief spoke about corruption in City government.

Chief Acevedo's speech also related to another matter of public concern: corruption in City government. "[A] core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson v. City of Waycross*, 888 F.2d 1562, 1566 (11th Cir. 1989); *Lane*, 573 U.S. at 241 (noting that "corruption in a public program and misuse of state funds . . . obviously involves a matter of significant public concern").

Here, Chief Acevedo's Memorandum exposed multiple instances of public corruption and abuse of power by the Defendant Commissioners. Specifically, it "outlined how the Defendant Commissioners had attempted to weaponize the MPD, [and] interfered with MPD internal and external investigations[.]" Compl. ¶ 180. The Memorandum itself is replete with specific instances of corruption by the Defendant Commissioners. A few examples are illustrative:

- "In fact, [Commissioner Carollo] and Commissioner Diaz de la Portilla have provided the MPD with a target list of establishments they insist are engaged in criminal activity and have pointed the finger at establishments in each other's districts, causing the MPD to investigate business establishments based on the whims of Commissioners Carollo and Diaz de la Portilla."
- "The MPD SIS/Vice Division has wasted untold hours investigating business establishments due to the improper political influence of, and intimidation by, these two commissioners."
- "[Commissioners Carollo, Diaz de la Portilla, and Reyes have] questioned me about the ongoing [confidential Internal Affairs] investigation in their offices, have falsely accused me in private of carrying out a vendetta against [Luis] Camacho, and have demanded that I bring Camacho back to work and reappoint him to the [Sergeant-at-Arms Detail]."

ECF No. 17, Ex. C at p. 3, 8. The Commissioners' actions violated federal and state law as well as the City of Miami Charter. Compl. ¶ 35.

Again, the Eleventh Circuit's recent decision in *Gomez is* instructive. There, the court held that the former detective/plaintiff's speech addressed a public concern where it provided information in connection with an "investigation into the impropriety and criminal activity of a local police chief[.]" 2022 WL 19201, at *6. The court explained that "[t]here can be no doubt that corruption in a police department is an issue of public concern" and that the "point of the speech in question was to help bring [this] wrongdoing to light." *Id.*

8

So too here. Public corruption in City government is an issue of public concern, and the allegations in the Complaint clearly show that Chief Acevedo spoke to expose this corruption. In fact, Chief Acevedo noted he would be "providing this information to the proper authorities." ECF No. 17, Ex. C at p. 8.

      b. *The speech's context/form show the Chief spoke on a matter of public concern.*

The context and form of Chief Acevedo's speech also show that he spoke on a matter of public concern. Again, the Court need look no further than the Eleventh Circuit's recent guidance in *Gomez*. There, the court held that the "form and context of [the plaintiff's] speech" served to "fortify [the court's] conclusion that [the plaintiff] has plausibly alleged that she was speaking on a matter of public concern." *Gomez*, 2022 WL 19201, at *6. In *Gomez*, that "form and context" was a police officer's "sworn statement to the FDLE that could help produce criminal charges." *Id.* Here, Chief Acevedo provided his detailed allegations of Commission corruption and abuse of power to multiple law enforcement agencies—the FBI and the State Attorney's Office. That "form and context" underscores that Chief Acevedo was speaking on a matter of public concern.

For his part, Reyes argues that Chief Acevedo did not speak on a matter of public concern. ECF No. 23 at p. 11. But he simply incorporates by reference the City of Miami's arguments on this point. The City's arguments lack merit, and Chief Acevedo incorporates by reference his responses to those arguments.

    3. <u>Chief Acevedo has sufficiently pled an adverse employment action</u>.

"To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment." *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005) (internal quotations omitted) (citations omitted). "[A]s a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands." *Id. Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005).

Here, Chief Acevedo alleged multiple adverse employment actions, including being publicly humiliated in Commission hearings, suspended, and terminated. Compl. ¶¶ 285-290 (suspension); ¶¶ 291-299 (public humiliation); and ¶¶ 300-309 (termination). All qualify as adverse employment actions.

For his part, Reyes argues that Chief Acevedo has failed to "[a]llege cognizable retaliatory actions." ECF No. 23 at p. 11. Although it is not clear, it appears that Reyes is arguing that the

Chief has failed to identify actions that, if they occurred, would qualify as "adverse employment actions." But, in so arguing, Reyes does not identify the actions that the Chief has identified as adverse employment actions. Instead, he identifies other actions taken by Reyes, including Reyes's comments at a June 24, 2021 Commission meeting and his vote to eliminate MPD positions at an October 1, 2021 meeting. To be sure, Reyes's actions at these meetings help prove that his motives in connection with the adverse employment actions were retaliatory in nature. But they are not the adverse employment actions that Chief Acevedo has alleged here. In short, Reyes's argument is a straw man argument, and the Court should give it short shrift.

    4. <u>Chief Acevedo has sufficiently pled causation</u>.

Chief Acevedo has sufficiently pled that "the speech played a substantial part in the adverse employment action." *Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).

A "plaintiff's burden in this regard is not a heavy one." *Purvines v. City of Crestview*, No. 3:15-CV-326/MCR/EMT, 2016 WL 5844868, at *4 (N.D. Fla. Sept. 30, 2016) (internal quotations omitted) (citations omitted). "[T]he 'substantial part' standard can be satisfied by close temporal proximity between the protected speech and the adverse employment action." *Speak v. Whidden*, No. 2:18-CV-826-JLB-NPM, 2021 WL 765467, at *14 (M.D. Fla. Feb. 26, 2021) (citing *Akins*, 420 F.3d at 1305). The Eleventh Circuit has held that a proximity of "ten months" qualifies as "close temporal proximity." *Akins*, 420 F.3d at 1305 ("[A]ll three Plaintiffs resigned or transferred out of their department within ten months of the meeting. This close temporal proximity between the meeting and Gates's actions suggest a causal relationship."); *Kopp v. City of Greensboro*, No. 3:15-CV-17 (CAR), 2016 WL 4435085, at *5 (M.D. Ga. Aug. 18, 2016) (holding plaintiff had established close temporal proximity where an adverse employment action occurred "approximately six weeks" after a complaint); *Prieto v. Collier Cty.*, No. 2:13-CV-489-FTM-38CM, 2014 WL 4784330, at *5 (M.D. Fla. Sept. 24, 2014) (holding plaintiff had established close temporal proximity where "[l]ess than two months lapsed between Plaintiff's speech (August 14, 2012) and her discharge (October 4, 2012)"). Ultimately, "close temporal proximity between the protected speech and adverse employment action constitutes circumstantial evidence of causation." *Willingham v. City of Valparaiso, Fla.*, 97 F. Supp. 3d 1345, 1358 (N.D. Fla. 2015), aff'd, 638 F. App'x 903 (11th Cir. 2016).

Chief Acevedo has alleged facts sufficient to establish that his speech played a substantial part in the adverse employment action. Three points are worth making. <u>One</u>, close temporal

proximity exists here, providing circumstantial evidence of causation. Chief Acevedo submitted his Memorandum on September 24, 2021. Compl. ¶ 187. After he sent the Memorandum, (a) the defendant Commissioners, including Reyes, held meetings on September 27, 2021 and October 1, 2021 in which they publicly reprimanded and humiliated him (3 and 7 days after his speech, respectively); (b) City Manager Noriega suspended him (17 days after speech); and (c) the Commission terminated him (20 days after speech). Two, the individual defendants, including Diaz de la Portilla, were clearly aware of the Chief Acevedo's speech, as, during the September 27, 2021 meeting, they passed a resolution to investigate *themselves* regarding the allegations in the Memorandum. And three, the Chief has pled many other facts that prove causation here, including that, during Chief Acevedo's termination hearing, Commissioner Russell noted that Diaz de la Portilla and the other commissioners showed their "bias" during the hearing. Compl. ¶ 224.

For his part, Reyes argues that Chief Acevedo has failed to plead facts that, if true, would be sufficient to establish a causal connection between the speech and the alleged retaliatory actions. ECF No. 23 at p. 15-16. In support of this argument, he flatly states that Chief Acevedo's allegations are "conclusory allegations" and "legal conclusions" and that neither suffice to state a claim. *Id*. at 15-16.

Although Reyes correctly states the legal principle, he is wrong that it applies here. Chief Acevedo's complaint contains quite detailed factual allegations establishing a causal nexus, including the Commissioners' awareness of his protected speech, the close temporal proximity between his speech and the retaliation, and the demonstrative bias the Commissioners exhibited toward the Chief during his termination hearing.

**B.     Reyes is not entitled to qualified immunity.**

Qualified immunity shields government officials sued in their individual capacities so long as their conduct does not violate a clearly established constitutional right. *Lozman v. City of North Bay Village*, No. 07-23357-CIV, 2009 WL 10699944, at *5 (S.D. Fla. 2009).

The qualified immunity analysis has steps. First, the defendant must establish that he or she was acting within the scope of his discretionary authority. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Lumley v. City of Dade City, Fla*., 327 F.3d 1186, 1194 (11th Cir. 2003)). If the defendant is unable to show he was acting within his discretionary authority, he is ineligible for the benefit of qualified immunity. *Lozman*, 2009 WL 10699944, at *5 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Second, and provided the

defendant meets the first step, the plaintiff must show that qualified immunity is not appropriate under the circumstances. *Gray*, 458 F.3d at 1303. At the motion to dismiss stage, this means that the plaintiff must have plead facts showing (1) the defendants "violated a statutory or constitutional right," and (2) "that the right was clearly established at the time of the challenged conduct." *Garcia v. Riley*, No. 21-10439, 2021 WL 4127070, at *2 (11th Cir. Sept. 10, 2021) (internal quotations omitted).

Here, Chief Acevedo has pled facts showing that qualified immunity is not appropriate.

1. <u>Chief Acevedo has pled facts establishing the violation of a constitutional right</u>.

Chief Acevedo has pled facts establishing the violation of his First Amendment rights. He incorporates by reference Part A of this brief.

2. <u>Chief Acevedo has pled facts showing that the right was clearly established</u>.

Reyes was on clear notice that his actions violated the First Amendment. "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is 'apparent.'" *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts." *Id.* (citation omitted); *Garcia*, 2021 WL 4127070 at *3 (recognizing that plaintiff may meet his or her burden without showing that "the very action in question has previously been held unlawful"). "Rather, the state of the law at the time of the unconstitutional act must be established sufficiently to give 'fair warning' to the official that his conduct is unlawful." *Id.* (citing *Hope*, 536 U.S. at 736). In terms of what the "state of the law" is, "Plaintiffs might point to either" (a) "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the circumstances, establishing clearly the unlawfulness of Defendants' conduct" or (b) "earlier case law from the Supreme Court, this Court, or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (internal quotations omitted) (citations omitted).

Here, the state of the law clearly put Reyes on notice that his conduct in retaliating against Chief Acevedo for his speech was unlawful.

      *a. General rules of law applied with "obvious clarity" here.*

First, "general rules of law" from "earlier case law" applied with obvious clarity to these circumstances. The Supreme Court's decisions *Pickering* and *Garcetti* are the cases.

In *Pickering*, the Court held that the First Amendment protects public employees who learn of matters of public concern through their jobs and then speak out as citizens on those matters. 391 U.S. at 572 ("Teachers are ... the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."). In *Garcetti*, the Supreme Court instructed that "[t]he proper inquiry is a practical one" that should focus on "whether the employee's speech at issue owes its existence to the employee's professional responsibilities." 547 U.S. at 420 (internal quotations omitted) (citations omitted).

Notably, the Eleventh Circuit and other district courts agree that terminating a public employee for whistle-blowing runs afoul of Supreme Court case law. *See Carollo v. Boria*, 833 F.3d 1322, 1334 (11th Cir. 2016) (affirming denial of qualified immunity at motion to dismiss stage in a public employee whistle-blower case because "[a] robust consensus of our precedent confirms that the district court was correct to rely upon *Pickering* and *Garcetti* as a basis for fair warning to appellants."); *Speak v. Whidden*, No. 2:18-CV-826-JLB-NPM, 2021 WL 765467, at *17 (M.D. Fla. Feb. 26, 2021) (denying motion for summary judgment in a public employee whistle-blower case because "Supreme Court's case law clearly specifies that retaliation against someone for speech protected by the First Amendment is improper"); *Skolweck v. Mayor & Councilmembers of Garden City, Ga.*, No. 4:12-CV-227, 2012 WL 5183201, at *5 (S.D. Ga. Oct. 18, 2012) (holding that "*Pickering*" and "*Garcetti*," among other cases, "constitute clearly established law indicating that an adverse employment action taken in response to a public employee's reporting of abuse and waste of public resources is a violation of the First Amendment actionable under § 1983").

b. *Materially similar case law provided clear notice of the violation.*

Second, with respect to "materially similar" case law, there is no shortage of it. The Eleventh Circuit has held time and again that where a public employee specifically blows the whistle on government corruption—something Chief Acevedo did in his Memorandum—the law prohibits retaliating against such an employee. Three cases are worth discussing.

In *Carollo v. Boria*, one of Reyes's fellow commissioners, Carollo, received the benefit of First Amendment whistle-blower protection under strikingly similar facts. 833 F.3d at 1335. At the time, Carollo was City Manager of Doral. "During his tenure as City Manager, Carollo

13

'reported to local and federal agencies violations of state and [f]ederal law' by the appellants 'that were personally communicated to him,' and 'made public disclosures' at City Council meetings about those violations." *Id.* at 1326. The City Council voted to terminate Carollo, with the individual defendants voting to terminate him. *Id.* Like Chief Acevedo here, Carollo asserted First Amendment retaliation and violation of Florida's Whistle-blower's Act, among other claims. *Id.* at 1327. The individual defendants moved to dismiss Carollo's complaint on qualified immunity grounds. *Id.* The district court denied the motion, and the Eleventh Circuit affirmed. *Id*. In holding that the law had provided "fair warning" regarding their conduct, the court wrote that "[a] robust consensus of our precedent confirms that the district court was correct to rely upon *Pickering* and *Garcetti* as a basis for fair warning to appellants." *Id*. at 1334.

Here, that "robust consensus" now includes the *Carollo* case as well. Like Carollo, Chief Acevedo reported "'to local and federal agencies violations of state and [f]ederal law,'" including the targeting of City of Miami residents and businesses for exercising their constitutional rights. And, like Carollo, Acevedo was punished for his whistle-blowing with termination. The case is practically on all fours and certainly "materially similar."

The Eleventh Circuit's decisions in *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293 (11th Cir. 2005) and *Walker v. Schwalbe*, 112 F.3d 1127 (11th Cir. 1997) are also instructive.

In *Akins*, the Eleventh Circuit reversed a district court order granting summary judgment to the defendant based on qualified immunity. *Id.* at 1297. There, the plaintiffs were public employees, specifically, former employees of the purchasing department of a county in Georgia. The plaintiffs/employees noticed "'irregularities' in the purchasing department's process for bidding and contracting" and were granted a meeting with a commissioner. *Id.* at 1298. As to qualified immunity, the Eleventh Circuit held that a defendant had "fair warning. . .that speech whose main thrust is to report bidding irregularities to a public official in a meeting requested for that purpose is protected by the First Amendment." *Akins*, 420 F.3d at 1308 (2005) (internal quotations omitted).

In *Walker*, the Eleventh Circuit, on interlocutory appeal, affirmed a district court's denial of qualified immunity. *Id*. There, the plaintiff was an employee of a state-funded social service provider. He met with state representatives and senators about "possible improprieties" at his job. He suffered adverse employment actions. On the qualified immunity front, the court wrote that "[a]t the time the defendants acted in 1991, clearly established law informed reasonable

14

government officials that [the plaintiff] could not be punished for his First Amendment speech." *Walker*, 112 F.3d at 1133.

For his part, Reyes argues that he is entitled to qualified immunity. ECF No. 23 at p. 16. As an initial matter, Reyes's qualified immunity analysis rests on an incomplete premise. Specifically, he argues that a court must find cases "based on materially similar facts" to find that a government official had "fair warning." ECF No. 23 at p. 18. That is not accurate. As noted above, a plaintiff can point to either "materially similar" case law *or* "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of Defendants' conduct." *Long*, 508 F.3d at 584.

With respect to Reyes's two substantive arguments, they are also unpersuasive. **First**, he argues that Chief Acevedo's "speech was the product of his job duties as Chief of Police." ECF No. 23 at p. 19. Reyes's assertion is incorrect for the reasons stated above, most importantly, that Chief Acevedo has pled facts that, if true, establish that Chief Acevedo was acting as a private citizen when he published the Memorandum. **Second**, Reyes argues that he has not found any cases that would have put a reasonable official on notice. *Id*. Again, this argument lacks merit. The case law relevant to the claims here, as Chief Acevedo established above, is clear and settled.

In sum, there was no gray area here. The individual defendants, including Reyes, were clearly aware that they could not terminate Chief Acevedo for blowing the whistle on public corruption.

**C.      Reyes is not entitled to legislative immunity.**

Finally, Reyes is not entitled to legislative immunity because his retaliatory acts against Chief Acevedo were administrative in nature, not legislative.

"[S]tate and regional legislators are entitled to absolute immunity from liability under [section] 1983 for their legislative activities." *Oakes Farms Food & Distribution Servs., LLC v. Sch. Dist. of Lee Cty., Fla.*, 541 F. Supp. 3d 1334, 1348 (M.D. Fla. 2021) (internal quotations omitted) (citations omitted). When deciding whether an official is protected by absolute legislative immunity, courts focus on the challenged act, not the actor. *See Fuller v. Carollo*, No. 21-11746, 2022 WL 333234, at *3 (11th Cir. Feb. 4, 2022) ("It is the official function that determines the degree of immunity required, not the status of the acting officer."). For legislative immunity to apply, the challenged act must be "legislative," not "administrative." *Oakes Farms Food &*

*Distribution Servs., LLC, Fla.*, 541 F. Supp. 3d at 1348 ("In determining which actions of . . . legislators are protected by the doctrine of absolute legislative immunity, [the Eleventh Circuit] has drawn the line between legislative actions and administrative actions: Absolute legislative immunity extends only to actions taken within the sphere of legitimate legislative activity.").

Broadly speaking, a "legislative act," involves "policy-making" rather than the "mere administrative application of existing policies." *Fuller*, 2022 WL 333234, at *3. To help determine whether an act is legislative or administrative, courts may consider various factors. For example, if the facts used in "making a decision are specific, rather than general, in nature, then the decision is more likely administrative." *Crymes v. DeKalb Cty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991). And "[i]f the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature." *Id.* Given this guidance, it should come as no surprise that "[e]mployment decisions generally are administrative except when they are accomplished through traditional legislative functions such as policymaking and budgetary restructuring that strike at the heart of the legislative process." *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Acevedo–Garcia v. Vera–Monroig*, 204 F.3d 1, 8 (1st Cir. 2000)); *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) ("Smith contends that employment and personnel decisions are administrative in nature and do not involve the deliberative legislative processes encouraged and protected by the legislative immunity doctrine. We find that Smith's interpretation of the law governing legislative immunity is correct and, moreover, is supported by Eleventh Circuit precedent.").

Here, the retaliatory acts that Chief Acevedo is suing for—his suspension, termination, and hearings directed specifically at him—are administrative acts, not legislative acts. The acts were directed at a specific person, impacted a specific person, and were based on facts specific to that person. Reyes cannot take advantage of legislative immunity.

In arguing that he is entitled to legislative immunity, Reyes again focuses on the wrong acts, claiming that Acevedo is suing him for eliminating certain MPD positions and making general comments at Commission meetings. ECF No. 23 at p. 20. Again, though Reyes's words and actions at Commission meetings help reveal his retaliatory animus, Chief Acevedo is suing for different actions, namely, being publicly humiliated in Commission hearings, suspended, and terminated. Compl. ¶¶ 285-290 (suspension); ¶¶ 291-299 (public humiliation); and ¶¶ 300-309 (termination).

### III.  Conclusion

For the foregoing reasons, the Court should deny Reyes's Motion to Dismiss.

Dated: April 13, 2022

Respectfully submitted,

**Marcos Daniel Jiménez**
Marcos Daniel Jiménez
 Florida Bar No. 441503
MARCOS D. JIMÉNEZ, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 570-3249
Email: mdj@mdjlegal.com

**John R. Byrne**
John R. Byrne
 Florida Bar No. 126294
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Email: jbyrne@leoncosgrove.com

*Counsel for Hubert Arturo Acevedo*