UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 22-CV-20224-KMW

Hubert Arturo Acevedo
                        **Plaintiff**


        **vs.**

City of Miami, et al.

                   **Defendants**

---

ZOOM HEARING HELD 7-19-2024
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE PLAINTIFF:        MARCOS JIMENEZ, ESQ.
                          **CHRISTINA MORENO, ESQ.**

FOR DEFENDANTS:           STEPHANIE PANOFF, ESQ.
                          KEVIN JONES, ESQ.
                          BRYAN CAPDEVILA, ESQ.
                          MASON PERTNOY, ESQ.
                          JOSE QUINON, ESQ.
                          TUCKER RONZETTI, ESQ.
                          BEN KUEHNE, ESQ.


REPORTED BY:              PATRICIA SANDERS, RPR
                          United States Court Reporter
                           400 North Miami Avenue, Suite 11-3
                          Miami, FL  33128
                          T: 305.523.5528
                           patricia_sanders@flsd.uscourts.gov

1

2      THE COURT:  Good morning, everyone.  I didn't think

3  with this morning's news that we would all be here on Zoom, but

4  technology is fabulous.

5      The Court calls Case No. 22-20224; Acevedo versus City

6  of Miami, et al.

7      Counsel, please announce your appearances for the

8  record, starting with the Plaintiff.

9      MR. JIMENEZ:  Good morning, Your Honor, Marcos

10  Jimenez and Christina Moreno for Chief Acevedo.

11      THE COURT:  Good morning.

12      MS. PANOFF:  Good morning, Your Honor, Stephanie

13  Panoff for the City of Miami.  Also present is Kevin Jones and

14  Bryan Capdevila for the City.

15      THE COURT:  Good morning.

16      MR. PERTNOY:  Good morning, Your Honor, Mason Pertnoy

17  on behalf of the City Manager Arthur Noriega.

18      THE COURT:  Good morning, Mr. Pertnoy.

19      MR. QUINON:  Good morning, Your Honor, Jose Quinon

20  together with Jessica Fonseca on behalf of Commissioner Manolo

21  Reyes.

22      THE COURT:  Morning, Mr. Quinon.

23      MR. RONZETTI:  Good morning, Your Honor, Tucker

24  Ronzetti on behalf of defendant Alex Diaz de la Portilla.

25      THE COURT:  Good morning, Mr. Ronzetti.

1

2          MR. KUEHNE: Good morning, Your Honor, Ben Kuehne on

3    behalf of Commissioner Joe Carollo

4          THE COURT:  All right. It appears that we are all

5    present; which again, technology at its best.

6          Let me start by extending my condolences to Ms.

7    McNulty's colleagues at the City Attorney's Office; I was very

8    saddened to hear of it.

9          I wanted to get everyone together today because I think

10   it is time to lift the stay and move forward.  I have made my

11   decision on the motion to dismiss and so I will give you my

12   oral ruling here today.

13         And in light of CrowdStrike, and the issues that are

14   attendant, I am going to go old school and just give you a

15   broad overview of my decision, and you will have a written

16   order within the next 10 days.

17         I do not need to regale this group of lawyers with

18   the facts in the complaint and the Rule 12(b)(6) standard, and

19   so I am just going to summarize my findings.

20         First, as to Count I, the plaintiff Chief Acevedo

21   alleges that the City of Miami's suspension and termination

22   constituted an adverse personnel action that is prohibited by

23   the Florida Whistleblower Act.

24         The defendant, City of Miami, says, no, Chief Acevedo

25   failed to exhaust his administrative remedies.

1

2          And plaintiff rejoins, one, the City doesn't really

3    have an administrative procedure for terminating police chiefs;

4    City employees. But even if it were to be found applicable, his

5    engagement of the process would have been a futility.

6          I don't think I need to delve into the intricacies of

7    the City Charter and the City Code to determine whether there

8    is an administrative remedy available; although I will touch

9    upon that.

10          But my finding is that Chief Acevedo has made a clear

11    showing of futility and therefore may proceed.

12          Chief Acevedo alleges that City Manager Noriega

13    suspended him, and the City Commission voted to terminate him.

14    And he does set out factual predicates that take the complaint

15    outside what was considered in Igwe versus City of Miami.

16          Where the Court found that a mere allegation that

17    participation would be futile does not relieve an employee of

18    their obligation to exhaust.

19          Here, I think, Chief Acevedo has advanced the

20    appropriate predicate.

21          City Manager Noriega summoned the Chief to Taquerias --

22    which as everyone here is aware that establishment is owned by

23    Mr. Fuller -- where City Manager Noriega told Chief Acevedo;

24    you need to look into possible violations, and this was at the

25    direction of the Commissioners.

1

2       He was given a list of establishments for the police to

3 investigate; and as alleged none of them had any prior criminal

4 activity.

5       And the Manager did not take any action after Chief

6 Acevedo reported his concerns about the Commissioners' endeavor

7 to interfere with police investigations.

8       The Manager also told the Chief not to transfer a

9 particular officer or Commissioner Carollo would "blow up".

10       And there is the general allegation, of course, that

11 the City Manager and the Commissioners had weaponized their

12 roles in order to advance investigations that were tied to

13 their political views; kind of an enemies list more than

14 criminal activity.

15       So because I must look at this through the lens of

16 finding all the well pled allegations as true, I find that the

17 motion to dismiss as to Count I is denied.

18       As to Count II, Chief Acevedo alleges that all the

19 defendants retaliated against him for protected speech.

20       It's a First Amendment retaliation claim.

21       He must show he spoke as a private citizen on a matter

22 of public concern; his free speech interest outweighed the

23 employer's interest; and the speech played a substantial part

24 in the adverse employment action.

25

1           I find that Chief Acevedo has satisfied his burden as

2    to all three.   I think as to the private citizen issue, again,

3    the mere fact that a citizen's speech concerns information

4    acquired by public employment does not automatically transform

5    the speech into employee rather than citizen speech.

6           And that's Lane versus Franks, which everyone has

7    cited.   In Alves versus Board of Regents, the Eleventh Circuit

8    said that the phrase "owes its existence to" must be read

9    narrowly.

10            And it can't be about speech that concerns ordinary

11    responsibilities.   It has to encompass made in furtherance of.

12            And the crux of the plaintiff's argument revolves

13    around Resolution R20003, which precluded the Chief from

14    investigating and reporting malfeasance by City officials.

15            It set out a process where the FDLA and FBI would get

16    an MOU, I suppose, with the City.   And I believe that that is

17    the crux of what takes this speech out of employee speech;

18    although there are other component parts.

19            Contrary to the City of Miami's argument, the fact that

20    it wasn't published publicly, does not defeat his going

21    forward.   That is not necessary, as the Eleventh Circuit has

22    acknowledged, and so I am denying the City's motion.

23            As to the defendants, each filed separate motions to

24    dismiss; incorporating the City's arguments.

25

1          Defendant Reyes cites King versus Board of County

2    Commissioners. I didn't think that case was helpful to the

3    defendant's argument.

4          In that case it was clear and it was focused on the

5    fact that the plaintiff's speech was made in furtherance of her

6    ordinary responsibilities -- of her job -- whether the

7    firefighters were fit for duty.

8          Here Chief Acevedo's job duties did not include

9    investigating City Commissioners or blowing the whistle on

10   these public officials for either corruption or abuse of power.

11         And again, I must take all of the allegations in the

12   light most favorable.

13         Defendants de La Portilla and Noriega say that the

14   plaintiff did not speak as a private citizen because he was

15   complaining about interference with the operation of the Police

16   Department.

17         I guess in some respect reporting on alleged corrupt

18   actions would impact the Police Department.  But this is beyond

19   merely interference with ordinary job responsibilities.

20         Again, Chief Acevedo alleges that his memorandum

21   outlined the weaponization of City resources against a

22   perceived enemies list and impermissible dictate to the City of

23   Miami Police Department.

24

25

1          Carollo argued that Chief Acevedo did not speak as a

2    private citizen because he possessed information as a police

3    Chief unavailable to the regular citizen.

4          Again, Lane.

5          Just because he derives it from his job, does not turn

6    it into employee speech.

7          As to a matter of public concern, it must be determined

8    by the content and context.

9          Bryson versus City of Waycross.

10         Exposing Government misconduct is a matter of

11   considerable significance. And a core concern of the First

12   Amendment is protection of whistleblowers.

13         I think the plaintiff's factual outline demonstrates

14   that he has satisfied this is a matter of public concern.

15          The Eleventh Circuit has found that the question of

16   whether police officers are properly performing their duties,

17   as a public safety issue, must be considered an issue of

18   political and social concern.

19         Fikes vs. City of Daphne.

20         Then as to the context of the speech, Gomez versus City

21   of Doral, I think that's a fairly analogous case.  Where the

22   police officer provided a sworn statement to FDLE about the

23   activities of a local Police Chief and his command staff. The

24   Eleventh Circuit found that, that was a matter of public

25   concern.

1          So, I think the plaintiff has carried his burden.

2          That brings us to the Pickering balance; the interest

3    of the individual and the interest of the City as the employer

4    in promoting efficiency.

5          I think that Chief Acevedo has sufficiently pled that

6    his interest outweighs the City's interest.

7          Again, the core protection of the First Amendment is

8    with whistleblowers.

9          It did not undermine the City's fulfillment of its

10   responsibilities.

11         It was a matter of days between the memo to the

12   entities and individuals noted and the Chief's termination; so

13   there is nothing I can see in the record to demonstrate that

14   there was a disruption.  It was published to a limited group of

15   people.

16         I do not believe the arguments that were advanced by

17   Defendant Noriega about the heightened need for order, loyalty

18   and harmony in a quasi-Military organization really change the

19   calculous here.

20         There is that language, but there is nothing that I

21   have seen that demonstrates that "this" interfered with that.

22         And of course within the structure of a police

23   organization there is also the investigation of criminal

24   activity, which is a core function. So I really don't see how

25   that applies.

1           Similarly, the defendant minimizes the whistle-blowing

2    nature and says it just challenged the authority of the

3    Commission.  I don't think it did merely that, and so I don't

4    think that, that argument prevails.

5           Then there's adverse action and causation.

6           Again, the timeline here I think is fairly important.

7           First, the Plaintiff's burden on causation is not a

8    heavy one.

9           Purvines versus City of Crestview.

10          A substantial part of this standard can be fulfilled by

11   close temporal proximity.

12          And in Akins ten months constituted close temporal

13   proximity.  Here it was 20 days.  So I think that puts Chief

14   Acevedo far into fulfilling the standard.

15          I was a little confused by defendant de la Portilla's

16   argument about the majority of the Board having to demonstrate

17   an illegal motive.  I believe that jumps ahead to a summary

18   judgment argument.

19          But in any event, I am denying the motion to dismiss on

20   that basis.

21           Now what remains is the qualified immunity and the

22   Legislative immunity advanced by the individual defendants.

23   Nobody disputes that they were all acting within their

24   discretionary authority.

25

1          The question becomes whether or not the defendants had

2     sufficient notice of a right that was clearly established at

3     the time.

4          I think that Carollo versus Boria sets that argument to

5     rest.  In that case, in extremely similar circumstances of

6     whistleblower activity, now defendant Carollo reported to local

7     and Federal agencies violations of law.

8          And in that case the Court found that this was a right

9     that was clearly established.

10          And they cited a robust consensus, which included Akins

11    versus Fulton, Walker versus Schwalbe -- several other cases --

12    and so I find in this instance the individual defendants are

13    not entitled to qualified immunity.

14          Defendants Reyes and Carollo argue they're entitled to

15    Legislative immunity.  But if the facts used in making the

16    decision are specific rather than general then the decision is

17    more likely administrative and not Legislative.

18          These decisions were all directed specifically at

19    plaintiff; and so I find that they do not enjoy Legislative

20    immunity at this juncture.

21          And let me say as to all of these decisions at this

22    juncture, at the motion to dismiss stage, Defendants Reyes and

23    Carollo are not entitled to Legislative immunity.

24          Defendant Noriega says he was not a final

25    decision-maker and cannot be held liable under 1983.

1          Section 26 of the Miami Charter States in relevant

2     part; City Manager shall have the exclusive right to suspend

3     the Chief of Police.

4          So based on the allegations and the facts, and in the

5     light most favorable -- assuming they are true -- I find that

6     the case may proceed individually against Manager Noriega.

7          So, in sum, the motions to dismiss are denied. And,

8     again, a written order is coming to you soon.

9          What I want to talk about now is the schedule, a trial

10     date, discovery and the like.  I assume you've all had some

11     conversation during the pendency of the stay.

12          I know that there have been other matters involving

13     some or all of you that went to trial -- different parties --

14     not all of the parties that are all assembled here.

15          I take it you all have had some discussion about what

16     would be needed and how long it take to get this case into a

17     trial related posture.

18          So, I will open it up to any and all of you to comment

19     on that.

20          MR. JIMENEZ:  Your Honor, I will go first.

21          THE COURT:  All right.

22          MR. JIMENEZ:  As the plaintiff I'm happy to take the

23     blame for not doing this.  I had not reached out to defense

24     counsel about the schedule -- we were waiting for the Court's

25     ruling -- and so I apologize for that.

1          We are happy to have that conversation with them as

2    early as today; so that we can move as expeditiously as the

3    Court would like us to in this matter.

4          THE COURT:  Thank you so much.  I will hear from the

5    defendants, of course, but it is my thought that 21 days should

6    be sufficient for a proposed joint scheduling report.

7          MR. RONZETTI:  Your Honor, this is Tucker Ronzetti;

8    and I am speaking solely on behalf of Mr. Diaz de La Portilla.

9    I suspect that -- there's a significant possibility there may

10   be an appeal from Your Honor's ruling today.

11         And so I certainly would need time to read the order

12   once it becomes available -- to go through it thoroughly -- and

13   then speak with my client.

14         With that being said, I'm not certain, Your Honor, in

15   terms of an appeal -- were an appeal to be taken -- I am not

16   sure how that might affect Your Honor's schedule in terms of

17   deadlines; particularly with respect to discovery being able to

18   go forward with some of the individual defendants.

19         So, that may become an issue.

20         THE COURT:  Well, I fully recognized that there was the

21   possibility of an appeal by the individuals; but not the City.

22   And most of the discovery for the City, I assume, would be

23   discovery that would be taken with regard to the individual

24   defendants in terms of their actions in this case.

25

1          And so if indeed that decision is made to take an

2     appeal, we still need to plot a path going forward.

3          THE COURT REPORTER:  Judge, counsel's line is garbled.

4     I was not able to understand what he just said.

5          THE COURT: Mr. Jones, if you would stop just a moment.

6     Neither I nor my court reporter can understand what it is you

7     are saying; your speech is quite garbled. I'm not sure what the

8     issue is -- perhaps there is something going on with your

9     connection.

10         But if you wish to be heard and have your remarks taken

11    down as a part of this record you are going to have to speak as

12    slowly and clearly as possible.

13         MR. JONES:  Is this better?  I feel like I'm yelling at

14    the Court.

15         THE COURT:  Well, I take no offense at your yelling.

16    We need to be able to understand what it is you are saying, so

17    that Ms. Sanders can make an accurate record.

18         So, if you would start from the very beginning.

19         MR. JONES:  So, Your Honor, we are in a bit of a

20    conundrum, right?  Because the City cannot appeal the Court's

21    ruling at this time.  But the evidence that we would need to

22    defend ourselves would come from the individual defendants.

23         (UNINTELLIGIBLE COMMENTS BY COUNSEL)

24         ... those defendants have made decisions regarding the

25    plaintiff's employment.

1       And so if they were to take an appeal that would

2    obviously put us in a position where we could not properly

3    mount a defense.

4       THE COURT:  Well, let me stop you a moment, Mr.

5    Jones.

6       MR. JONES:  Yes, Your Honor.

7       THE COURT:  Just because they've taken an appeal

8    doesn't mean they're not amenable to subpoena and deposition.

9    While the individual defendants wouldn't be amenable to

10   interrogatories and production and the like, they certainly

11   have to be available for deposition.

12      MR. JONES:  Well, Your Honor, I don't know the

13   position of the individual lawyers regarding their clients, who

14   are either current Commissioners or are former Commissioners in

15   terms of -- regarding interrogatories and depositions -- which

16   I believe would be the greatest amount of this case.

17      THE COURT:  Well, let's say Chief Acevedo had just

18   sued the City -- let's say that was it in terms of the case --

19   then certainly those individuals who were involved would be

20   deposed and give their testimony.

21      And it could be at a later date -- if they prevail on

22   an appeal -- then, you know, we may have to think about what

23   additional discovery perhaps might be needed.

24      Or if need be, I suppose, the City could be severed

25   from the individual defendants.

```
1              That's also something you may need to think about as

2    well.  But we are going to have to determine, as I said, a path

3    forward.

4              MR. JONES:  I'm open, Your Honor, to doing whatever

5    it is that the Court believes is necessary to get the case

6    moving.

7              If, for example -- as you just pointed out -- if the

8    City were the only party here and the individuals were not at

9    risk then I do not believe it would be an issue.

10             But the individuals are at risk, they have their own

11   counsel, and so I believe the qualified immunity challenge

12   would prevent suit from proceeding against them -- at least

13   until that has been decided.

14             And so an important part of the discovery in this

15   case would obviously be the depositions of the individual

16   defendants.

17             I assume the plaintiff would be asking them the types

18   of questions that may affect their individual claims, and so

19   they may not be in a position to answer -- which of course

20   would be up to their wise and learned counsel. And so the -- I

21   will leave it there, Your Honor.

22             THE COURT:  Thank you, Mr. Jones.

23             MR. RONZETTI:  Your Honor, if I might be permitted to

24   weigh in on a couple things.

25             THE COURT:  Yes, of course.
```

1          MR. RONZETTI:  First, Your Honor, as to the individual

2     defendants, their immunity is not only from liability, but from

3     the burdens of litigation as well.

4          And there's case law that states that if discovery goes

5     forward on the issues for which they're concerned, and they're

6     not permitted to participate -- for instance because they are

7     up on appeal -- that is unfair and that prejudices them...

8          THE COURT: If you would slow down as well and try to

9     speak clearly.  I'm not so sure now about how "fabulous" the

10    technology is.  It appears there are some issues with the

11    quality of the connection.

12         So, I would ask everyone to make an effort to speak as

13    loudly, slowly and as clearly as you can for the benefit of Ms.

14    Sanders and the record.

15         MR. RONZETTI:  I've had the same issue come up very

16    recently in another case, Your Honor...

17         THE COURT:  You are breaking up a little.

18         Again, try to speak as loudly and clearly as you

19    possibly can.

20         MR. RONZETTI:  Your Honor, I think it would be a good

21    idea to be able to confer with counsel in terms of moving

22    forward -- obviously not knowing what Your Honor's ruling was

23    going to be -- and that way we perhaps can figure out a way of

24    having the case advance without prejudicing the rights of the

25    individual defendants.

```
 1
 2          THE COURT:  Thank you,  Mr. Ronzetti.
 3          MR. CAPDEVILA:  For the record, Bryan Capdevila on
 4     behalf of the City of Miami.
 5          I just did a very quick search on this issue.
 6          I would direct the Court to McBride versus Houston
 7     County Healthcare Authority.  It is a Middle District of
 8     Alabama case.
 9          I will of course do some more thorough research, but
10     this was just a very, very quick search.
11          THE COURT:  All right.
12          MR. CAPDEVILA: And in that case, Your Honor, the
13     District Court determined that a stay of discovery so that some
14     of the individual defendants could pursue a qualified immunity
15     appeal was appropriate even though the City was not covered by
16     the qualified immunity doctrine.
17           There the District Court explained that to allow a
18     stay of discovery for some and not all in this municipal
19     context, you know, sort of defeats the intent or purpose of
20     even having the stay...
21          (UNINTELLIGIBLE MUFFLED COMMENTS BY COUNSEL)
22          So, Your Honor, there is case law on that point that
23     the -- you know, because of the appellate issues that will in
24     some ways overlap.
25
```

```
 1            Thank you, Your Honor.

 2            THE COURT:  And I am aware of that as well, counsel.

 3   My purpose or intent was really just to try -- to determine

 4   what discovery could be done that would not affect or somehow

 5   undermine the appellate process for the individual defendants.

 6            And so I would ask that the parties have those

 7   discussions in an effort to move forward on those things that

 8   do not pose such an issue.

 9            MR. JIMENEZ:  Your Honor, if I might say something from

10   our perspective in terms of discovery.

11            THE COURT:  Of course.

12            MR. JIMENEZ:  First, Your Honor, we are happy to speak

13   with defense counsel in terms of some agreement as to those --

14   providing those things that would not as Your Honor just said

15   "undermine."

16            That said, Your Honor, we, in fact, made a public

17   records request for documents and we were told we'd have to pay

18   $2.3 million to obtain those records.

19            THE COURT:  I'm sorry, what?

20            Why would anything cost 2.3 million to produce?

21            MR. CAPDEVILA: Your Honor, if I might.

22            THE COURT:  Yes.

23            MR. CAPDEVILA: And I don't know if Mr. Jones wants to

24   speak to this since he is -- he may be more familiar with this

25   than I am.
```

1

2          But I assume it might be the nature of the request

3     requires something of an extensive nature -- I'm not really

4     sure so I won't speculate and just leave it at that.

5          THE COURT:  Do you know, Mr. Jones?

6          MR. JONES:  Your Honor, with regard to any public

7     records request, normally if you get a request -- and this

8     would have been at least three years -- if plaintiffs said give

9     us every document for the past 20 years with a certain word or

10    a certain document or a certain name -- which would then

11    require basically us to search our entire computer system going

12    back 10 years or so.

13         And so if that was the nature of the request -- and I

14    honestly don't remember -- this is just an example, Your Honor,

15    of a normal request for documents.

16         And say there was a certain type or group of e-mails,

17    then we would have to go through each e-mail to determine

18    whether or not there is any sort of privilege that would have

19    to be redacted...

20         THE COURT REPORTER:  Judge...

21         THE COURT: Mr. Jones, you really are going to have to

22    slow down and speak much louder.

23         MR. JONES: My apologies -- I'm told I tend to go too

24    quickly.

25

1          THE COURT:  All right. I am going to ask you to speak

2     with plaintiff's counsel to see what can be worked out -- at

3     the very least find out why it is they are being given this

4     astronomical figure to fulfill the public records request --

5     and then see where you go from there.

6          I recall back when I practiced -- a bygone era -- if

7     you issued a subpoena to a financial institution for records

8     and you were told, well, it will cost a half a million dollars

9     for those records, the Judge would set a hearing and tell you

10    to bring all your documents to that hearing for the Court to

11    review in terms of such a large figure.  Which would then, you

12    know, take care of that issue.

13         MR. RONZETTI:  Your Honor, if I might make a request.

14         THE COURT:  Yes.

15         MR. RONZETTI:  I would ask that we have 21 days from

16    the date the order is docketed to get back to the Court -- just

17    in terms of being able to sit down, thoroughly read and digest

18    it -- and also be able to confer with counsel.

19         THE COURT:  That's not an problem.

20         MR. RONZETTI:  Thank you, Your Honor.

21         THE COURT:  Let me turn to Mr. Kuehne -- and I don't

22    know that this presents a conflict -- but I wanted to address

23    it while we are all assembled.

24         MR. KUEHNE: Yes, Your Honor.

25

1          THE COURT:  I am aware some of the lawyers here are

2    representing some of the defendants in different contexts -- as

3    I said, I don't know that, that presents a conflict, but I just

4    wanted to make sure it was addressed.

5          Mr. Kuehne, as I understand it you were representing

6    Commissioner de La Portilla in another matter; and you are

7    representing Commissioner Carollo here.

8          I don't think the two have anything to do with each

9    other; I just want to make certain this is not something that

10   down the line might present a problem.

11          MR. KUEHNE:  Thank you for addressing that, Your

12   Honor.  I do represent Commissioner Carollo in this matter --

13   and that has been extensively discussed -- but I will discuss

14   it with him again.

15          Even though this is a civil matter, if we believe that

16   inquiry is necessary, I would of course inform Your Honor.

17          THE COURT:  I appreciate that.

18          MR. KUEHNE:  If I might ask Your Honor for a little bit

19   more time than the 21 days.  There are a number of decisions

20   that have to be made concerning the QI non-final appeal, which

21   would also include from Commissioner Carollo's side.

22          And once that decision is made, there would then have

23   to be some determination as to what the request for stay of

24   proceedings pending appeal is going to be.

25

1          Commissioner Carollo is likely to be -- will be

2    largely unavailable during much of August.  He has informed me

3    that since the Commission is normally quiet during August he

4    has scheduled a number of personal matters for that period.

5          And so a lot of these decisions will require some

6    personal discussions with Commissioner Carollo as to his

7    availability -- at least in terms of scheduling.

8          So my request would be that the Court allow us to

9    report 30 days after the Court enters its final order, which

10   would be within the timeframe for the parties to make their

11   decision on a non-final appeal, interlocutory appeal.

12         THE COURT:  I don't have any problem with the 30 days;

13   I think that is reasonable in light of some of these issue that

14   will have to be addressed.

15         MR. KUEHNE: Thank you, Your Honor.

16         MR. CAPDEVILA:  I just wanted to let Your Honor know

17   that I am -- I don't recall if Mr. Jones is as well -- but I am

18   counsel of record in the Ball and Chain matter.

19         However, I do not anticipate any conflict in that

20   matter since that matter is largely being handled by outside

21   counsel.

22         THE COURT:  I am aware of these other matters that

23   are somewhat case adjacent.  My comments were directed more to

24   the lawyers who represented more than one defendant here;

25   albeit in very different circumstances.

1          MR. CAPDEVILA:  Understood.

2          THE COURT:  But thank you for bringing that to my

3    attention.

4          All right. Is there any further on behalf of any of

5    the parties?

6          Hearing nothing; I will recess this matter at this

7    time.  And the parties can look for my written order in the

8    next week or so.

9                    HEARING CONCLUDED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2                         -   -   -

 3                C E R T I F I C A T E

 4                         -   -   -

 5          This proceeding occurred via Zoom; and is therefore

 6   subject to the technological limitations of reporting remotely.

 7

 8                                    /S/PATRICIA SANDERS

 9   _____              _____

10   DATE FILED               PATRICIA SANDERS, RPR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**/**

**/S/PATRICIA** [1] - 25:8

**1**

**10** [2] - 3:16, 20:12
**11-3** [1] - 1:20
**12(b)(6** [1] - 3:18
**1983** [1] - 11:25

**2**

**2.3** [2] - 19:18, 19:20
**20** [2] - 10:13, 20:9
**21** [3] - 13:5, 21:15, 22:19
**22-20224** [1] - 2:5
**22-CV-20224-KMW** [1] - 1:3
**26** [1] - 12:1

**3**

**30** [2] - 23:9, 23:12
**305.523.5528** [1] - 1:21
**33128** [1] - 1:21

**4**

**400** [1] - 1:20

**7**

**7-19-2024** [1] - 1:9

**A**

**able** [6] - 13:17, 14:4, 14:16, 17:21, 21:17, 21:18
**abuse** [1] - 7:10
**accurate** [1] - 14:17
**Acevedo** [17] - 1:4, 2:5, 2:10, 3:20, 3:24, 4:10, 4:12, 4:19, 4:23, 5:6, 5:18, 6:1, 7:20, 8:1, 9:5, 10:14, 15:17
**Acevedo's** [1] - 7:8
**acknowledged** [1] - 6:22
**acquired** [1] - 6:4
**Act** [1] - 3:23
**acting** [1] - 10:23
**action** [4] - 3:22, 5:5, 5:24, 10:5
**actions** [2] - 7:18, 13:24

**activities** [1] - 8:23
**activity** [4] - 5:4, 5:14, 9:24, 11:6
**additional** [1] - 15:23
**address** [1] - 21:22
**addressed** [2] - 22:4, 23:14
**addressing** [1] - 22:11
**adjacent** [1] - 23:23
**administrative** [4] - 3:25, 4:3, 4:8, 11:17
**advance** [2] - 5:12, 17:24
**advanced** [3] - 4:19, 9:16, 10:22
**adverse** [3] - 3:22, 5:24, 10:5
**affect** [3] - 13:16, 16:18, 19:4
**agencies** [1] - 11:7
**agreement** [1] - 19:13
**ahead** [1] - 10:17
**Akins** [2] - 10:12, 11:10
**al** [2] - 1:7, 2:6
**Alabama** [1] - 18:8
**albeit** [1] - 23:25
**Alex** [1] - 2:24
**allegation** [2] - 4:16, 5:10
**allegations** [3] - 5:16, 7:11, 12:4
**alleged** [2] - 5:3, 7:17
**alleges** [4] - 3:21, 4:12, 5:18, 7:20
**allow** [2] - 18:17, 23:8
**Alves** [1] - 6:7
**amenable** [2] - 15:8, 15:9
**Amendment** [3] - 5:20, 8:12, 9:7
**amount** [1] - 15:16
**analogous** [1] - 8:21
**announce** [1] - 2:7
**answer** [1] - 16:19
**anticipate** [1] - 23:19
**apologies** [1] - 20:23
**apologize** [1] - 12:25
**appeal** [15] - 13:10, 13:15, 13:21, 14:2, 14:20, 15:1, 15:7, 15:22, 17:7, 18:15, 22:20, 22:24, 23:11
**appearances** [2] - 1:12, 2:7
**appellate** [2] - 18:23, 19:5
**applicable** [1] - 4:4
**applies** [1] - 9:25

**appreciate** [1] - 22:17
**appropriate** [2] - 4:20, 18:15
**argue** [1] - 11:14
**argued** [1] - 8:1
**argument** [7] - 6:12, 6:19, 7:3, 10:4, 10:16, 10:18, 11:4
**arguments** [2] - 6:24, 9:16
**Arthur** [1] - 2:17
**Arturo** [1] - 1:4
**assembled** [2] - 12:14, 21:23
**assume** [4] - 12:10, 13:22, 16:17, 20:2
**assuming** [1] - 12:5
**astronomical** [1] - 21:4
**attendant** [1] - 3:14
**attention** [1] - 24:3
**Attorney's** [1] - 3:7
**August** [2] - 23:2, 23:3
**authority** [2] - 10:2, 10:24
**Authority** [1] - 18:7
**automatically** [1] - 6:4
**availability** [1] - 23:7
**available** [3] - 4:8, 13:12, 15:11
**Avenue** [1] - 1:20
**aware** [4] - 4:22, 19:2, 22:1, 23:22

**B**

**balance** [1] - 9:2
**Ball** [1] - 23:18
**based** [1] - 12:4
**basis** [1] - 10:20
**become** [1] - 13:19
**becomes** [2] - 11:1, 13:12
**beginning** [1] - 14:18
**behalf** [7] - 2:17, 2:20, 2:24, 3:3, 13:8, 18:4, 24:4
**believes** [1] - 16:5
**BEN** [1] - 1:18
**Ben** [1] - 3:2
**benefit** [1] - 17:13
**best** [1] - 3:5
**better** [1] - 14:13
**between** [1] - 9:11
**beyond** [1] - 7:18
**bit** [2] - 14:19, 22:18
**blame** [1] - 12:23
**blow** [1] - 5:9
**blowing** [2] - 7:9, 10:1

**Board** [3] - 6:7, 7:1, 10:16
**Boria** [1] - 11:4
**breaking** [1] - 17:17
**bring** [1] - 21:10
**bringing** [1] - 24:2
**brings** [1] - 9:2
**broad** [1] - 3:15
**Bryan** [2] - 2:14, 18:3
**BRYAN** [1] - 1:16
**Bryson** [1] - 8:9
**burden** [3] - 6:1, 9:1, 10:7
**burdens** [1] - 17:3
**BY** [3] - 1:19, 14:23, 18:21
**bygone** [1] - 21:6

**C**

**calculous** [1] - 9:19
**cannot** [2] - 11:25, 14:20
**Capdevila** [2] - 2:14, 18:3
**CAPDEVILA** [7] - 1:16, 18:3, 18:12, 19:21, 19:23, 23:16, 24:1
**care** [1] - 21:12
**Carollo** [11] - 3:3, 5:9, 8:1, 11:4, 11:6, 11:14, 11:23, 22:7, 22:12, 23:1, 23:6
**Carollo's** [1] - 22:21
**carried** [1] - 9:1
**case** [20] - 1:3, 7:2, 7:4, 8:21, 11:5, 11:8, 12:6, 12:16, 13:24, 15:16, 15:18, 16:5, 16:15, 17:4, 17:16, 17:24, 18:8, 18:12, 18:22, 23:23
**Case** [1] - 2:5
**cases** [1] - 11:11
**causation** [2] - 10:5, 10:7
**certain** [6] - 13:14, 20:9, 20:10, 20:16, 22:9
**certainly** [3] - 13:11, 15:10, 15:19
**Chain** [1] - 23:18
**challenge** [1] - 16:11
**challenged** [1] - 10:2
**change** [1] - 3:18
**Charter** [2] - 4:7, 12:1
**Chief** [22] - 2:10, 3:20, 3:24, 4:10, 4:12, 4:19, 4:21, 4:23, 5:5,

5:8, 5:18, 6:1, 6:13, 7:8, 7:20, 8:1, 8:3, 8:23, 9:5, 10:13, 12:3, 15:17
**Chief's** [1] - 9:12
**chiefs** [1] - 4:3
**Christina** [1] - 2:10
**CHRISTINA** [1] - 1:14
**Circuit** [4] - 6:7, 6:21, 8:15, 8:24
**circumstances** [2] - 11:5, 23:25
**cited** [2] - 6:7, 11:10
**cites** [1] - 7:1
**citizen** [6] - 5:21, 6:2, 6:5, 7:14, 8:2, 8:3
**citizen's** [1] - 6:3
**City** [38] - 1:7, 2:5, 2:13, 2:14, 2:17, 3:7, 3:21, 3:24, 4:2, 4:4, 4:7, 4:12, 4:13, 4:15, 4:21, 4:23, 5:11, 6:14, 6:16, 6:19, 7:9, 7:21, 7:22, 8:9, 8:19, 8:20, 9:3, 10:9, 12:2, 13:21, 13:22, 14:20, 15:18, 15:24, 16:8, 18:4, 18:15
**City's** [4] - 6:22, 6:24, 9:6, 9:9
**civil** [1] - 22:15
**claim** [1] - 5:20
**claims** [1] - 16:18
**clear** [2] - 4:10, 7:4
**clearly** [6] - 11:2, 11:9, 14:12, 17:9, 17:13, 17:18
**client** [1] - 13:13
**clients** [1] - 15:13
**close** [2] - 10:11, 10:12
**Code** [1] - 4:7
**colleagues** [1] - 3:7
**coming** [1] - 12:8
**command** [1] - 8:23
**comment** [1] - 12:18
**comments** [1] - 23:23
**COMMENTS** [2] - 14:23, 18:21
**Commission** [3] - 4:13, 10:3, 23:3
**Commissioner** [9] - 2:20, 3:3, 5:9, 22:6, 22:7, 22:12, 22:21, 23:1, 23:6
**Commissioners** [6] - 4:25, 5:11, 7:2, 7:9, 15:14
**Commissioners'** [1] - 5:6

**complaining** [1] - 7:15
**complaint** [2] - 3:18, 4:14
**component** [1] - 6:18
**computer** [1] - 20:11
**concern** [6] - 5:22, 8:7, 8:11, 8:14, 8:18, 8:25
**concerned** [1] - 17:5
**concerning** [1] - 22:20
**concerns** [3] - 5:6, 6:3, 6:10
**CONCLUDED** [1] - 24:9
**condolences** [1] - 3:6
**confer** [2] - 17:21, 21:18
**conflict** [3] - 21:22, 22:3, 23:19
**confused** [1] - 10:15
**connection** [2] - 14:9, 17:11
**consensus** [1] - 11:10
**considerable** [1] - 8:11
**considered** [2] - 4:15, 8:17
**constituted** [2] - 3:22, 10:12
**content** [1] - 8:8
**context** [3] - 8:8, 8:20, 18:19
**contexts** [1] - 22:2
**contrary** [1] - 6:19
**conundrum** [1] - 14:20
**conversation** [2] - 12:11, 13:1
**core** [3] - 8:11, 9:7, 9:24
**corrupt** [1] - 7:17
**corruption** [1] - 7:10
**cost** [2] - 19:20, 21:8
**COUNSEL** [2] - 14:23, 18:21
**Counsel** [1] - 2:7
**counsel** [10] - 12:24, 16:11, 16:20, 17:21, 19:2, 19:13, 21:2, 21:18, 23:18, 23:21
**counsel's** [1] - 14:3
**Count** [3] - 3:20, 5:17, 5:18
**County** [2] - 7:1, 18:7
**couple** [1] - 16:24
**course** [8] - 5:10, 9:22, 13:5, 16:19, 16:25, 18:9, 19:11, 22:16
**court** [1] - 14:6

**COURT** [40] - 1:1, 1:10, 2:2, 2:11, 2:15, 2:18, 2:22, 2:25, 3:4, 12:21, 13:4, 13:20, 14:3, 14:5, 14:15, 15:4, 15:7, 15:17, 16:22, 16:25, 17:8, 17:17, 18:2, 18:11, 19:2, 19:11, 19:19, 19:22, 20:5, 20:20, 20:21, 21:1, 21:14, 21:19, 21:21, 22:1, 22:17, 23:12, 23:22, 24:2
**Court** [14] - 1:20, 2:5, 4:16, 11:8, 13:3, 14:14, 16:5, 18:6, 18:13, 18:17, 21:10, 21:16, 23:8, 23:9
**Court's** [2] - 12:24, 14:20
**covered** [1] - 18:15
**Crestview** [1] - 10:9
**criminal** [3] - 5:3, 5:14, 9:23
**CrowdStrike** [1] - 3:13
**crux** [2] - 6:12, 6:17
**current** [1] - 15:14

**D**

**Daphne** [1] - 8:19
**date** [3] - 12:10, 15:21, 21:16
**DATE** [1] - 25:10
**days** [8] - 3:16, 9:11, 10:13, 13:5, 21:15, 22:19, 23:9, 23:12
**de** [5] - 2:24, 7:13, 10:15, 13:8, 22:6
**deadlines** [1] - 13:17
**decided** [1] - 16:13
**decision** [8] - 3:11, 3:15, 11:16, 11:25, 14:1, 22:22, 23:11
**decision-maker** [1] - 11:25
**decisions** [5] - 11:18, 11:21, 14:24, 22:19, 23:5
**defeat** [1] - 6:20
**defeats** [1] - 18:19
**defend** [1] - 14:22
**defendant** [6] - 2:24, 3:24, 10:1, 10:15, 11:6, 23:24
**Defendant** [3] - 7:1, 9:17, 11:24
**defendant's** [1] - 7:3
**defendants** [19] -

5:19, 6:23, 7:13, 10:22, 11:1, 11:12, 13:5, 13:18, 13:24, 14:22, 14:24, 15:9, 15:25, 16:16, 17:2, 17:25, 18:14, 19:5, 22:2
**Defendants** [3] - 1:8, 11:14, 11:22
**DEFENDANTS** [1] - 1:15
**defense** [3] - 12:23, 15:3, 19:13
**delve** [1] - 4:6
**demonstrate** [2] - 9:13, 10:16
**demonstrates** [2] - 8:13, 9:21
**denied** [2] - 5:17, 12:7
**denying** [2] - 6:22, 10:19
**Department** [3] - 7:16, 7:18, 7:23
**deposed** [1] - 15:20
**deposition** [2] - 15:8, 15:11
**depositions** [2] - 15:15, 16:15
**derives** [1] - 8:5
**determination** [1] - 22:23
**determine** [4] - 4:7, 16:2, 19:3, 20:17
**determined** [2] - 8:7, 18:13
**Diaz** [2] - 2:24, 13:8
**dictate** [1] - 7:22
**different** [4] - 12:13, 22:2, 23:25
**digest** [1] - 21:17
**direct** [1] - 18:6
**directed** [2] - 11:18, 23:23
**direction** [1] - 4:25
**discovery** [11] - 12:10, 13:17, 13:22, 13:23, 15:23, 16:14, 17:4, 18:13, 18:18, 19:4, 19:10
**discretionary** [1] - 10:24
**discuss** [1] - 22:13
**discussed** [1] - 22:13
**discussion** [1] - 12:15
**discussions** [2] - 19:7, 23:6
**dismiss** [6] - 3:11, 5:17, 6:24, 10:19, 11:22, 12:7
**disputes** [1] - 10:23

**disruption** [1] - 9:14
**DISTRICT** [3] - 1:1, 1:2, 1:10
**District** [3] - 18:7, 18:13, 18:17
**DIVISION** [1] - 1:2
**docketed** [1] - 21:16
**doctrine** [1] - 18:16
**document** [2] - 20:9, 20:10
**documents** [3] - 19:17, 20:15, 21:10
**dollars** [1] - 21:8
**done** [1] - 19:4
**Doral** [1] - 8:21
**down** [5] - 14:11, 17:8, 20:22, 21:17, 22:10
**during** [3] - 12:11, 23:2, 23:3
**duties** [2] - 7:8, 8:16
**duty** [1] - 7:7

**E**

**e-mail** [1] - 20:17
**e-mails** [1] - 20:16
**early** [1] - 13:2
**efficiency** [1] - 9:4
**effort** [2] - 17:12, 19:7
**either** [2] - 7:10, 15:14
**Eleventh** [4] - 6:7, 6:21, 8:15, 8:24
**employee** [4] - 4:17, 6:5, 6:17, 8:6
**employees** [1] - 4:4
**employer** [1] - 9:3
**employer's** [1] - 5:23
**employment** [3] - 5:24, 6:4, 14:25
**encompass** [1] - 6:11
**endeavor** [1] - 5:6
**enemies** [2] - 5:13, 7:22
**engagement** [1] - 4:5
**enjoy** [1] - 11:19
**enters** [1] - 23:9
**entire** [1] - 20:11
**entities** [1] - 9:12
**entitled** [3] - 11:13, 11:14, 11:23
**era** [1] - 21:6
**ESQ** [9] - 1:13, 1:14, 1:15, 1:15, 1:16, 1:16, 1:17, 1:17, 1:18
**established** [2] - 11:2, 11:9
**establishment** [1] - 4:22
**establishments** [1] -

5:2
**et** [2] - 1:7, 2:6
**event** [1] - 10:19
**evidence** [1] - 14:21
**example** [2] - 16:7, 20:14
**exclusive** [1] - 12:2
**exhaust** [2] - 3:25, 4:18
**existence** [1] - 6:8
**expeditiously** [1] - 13:2
**explained** [1] - 18:17
**Exposing** [1] - 8:10
**extending** [1] - 3:6
**extensive** [1] - 20:3
**extensively** [1] - 22:13
**extremely** [1] - 11:5

**F**

**fabulous** [2] - 2:4, 17:9
**fact** [4] - 6:3, 6:19, 7:5, 19:16
**facts** [3] - 3:18, 11:15, 12:4
**factual** [2] - 4:14, 8:13
**failed** [1] - 3:25
**fairly** [2] - 8:21, 10:6
**familiar** [1] - 19:24
**far** [1] - 10:14
**favorable** [2] - 7:12, 12:5
**FBI** [1] - 6:15
**FDLA** [1] - 6:15
**FDLE** [1] - 8:22
**Federal** [1] - 11:7
**figure** [3] - 17:23, 21:4, 21:11
**Fikes** [1] - 8:19
**FILED** [1] - 25:10
**filed** [1] - 6:23
**final** [4] - 11:24, 22:20, 23:9, 23:11
**financial** [1] - 21:7
**findings** [1] - 3:19
**firefighters** [1] - 7:7
**first** [4] - 10:7, 12:20, 17:1, 19:12
**First** [4] - 3:20, 5:20, 8:11, 9:7
**fit** [1] - 7:7
**FL** [1] - 1:21
**FLORIDA** [1] - 1:2
**Florida** [1] - 3:23
**focused** [1] - 7:4
**Fonseca** [1] - 2:20
**FOR** [2] - 1:13, 1:15

**former** [1] - 15:14
**forward** [8] - 3:10, 6:21, 13:18, 14:2, 16:3, 17:5, 17:22, 19:7
**Franks** [1] - 6:6
**free** [1] - 5:22
**fulfill** [1] - 21:4
**fulfilled** [1] - 10:10
**fulfilling** [1] - 10:14
**fulfillment** [1] - 9:9
**Fuller** [1] - 4:23
**fully** [1] - 13:20
**Fulton** [1] - 11:11
**function** [1] - 9:24
**furtherance** [2] - 6:11, 7:5
**futile** [1] - 4:17
**futility** [2] - 4:5, 4:11

### G

**garbled** [2] - 14:3, 14:7
**general** [2] - 5:10, 11:16
**given** [2] - 5:2, 21:3
**Gomez** [1] - 8:20
**Government** [1] - 8:10
**greatest** [1] - 15:16
**group** [3] - 3:17, 9:14, 20:16
**guess** [1] - 7:17

### H

**half** [1] - 21:8
**handled** [1] - 23:20
**happy** [3] - 12:22, 13:1, 19:12
**harmony** [1] - 9:18
**Healthcare** [1] - 18:7
**hear** [2] - 3:8, 13:4
**heard** [1] - 14:10
**HEARING** [2] - 1:9, 24:9
**hearing** [3] - 21:9, 21:10, 24:6
**heavy** [1] - 10:8
**heightened** [1] - 9:17
**HELD** [1] - 1:9
**held** [1] - 11:25
**helpful** [1] - 7:2
**honestly** [1] - 20:14
**Honor** [35] - 2:9, 2:12, 2:16, 2:19, 2:23, 3:2, 12:20, 13:7, 13:14, 14:19, 15:6, 15:12, 16:4, 16:21, 16:23, 17:1, 17:20, 18:12,

18:22, 19:1, 19:9, 19:12, 19:14, 19:16, 19:21, 20:6, 20:14, 21:13, 21:20, 21:24, 22:12, 22:16, 22:18, 23:15, 23:16
**Honor's** [3] - 13:10, 13:16, 17:22
**Honor..** [1] - 17:16
**HONORABLE** [1] - 1:10
**Houston** [1] - 18:6
**Hubert** [1] - 1:4

### I

**idea** [1] - 17:21
**Igwe** [1] - 4:15
**II** [1] - 5:18
**illegal** [1] - 10:17
**immunity** [10] - 10:21, 10:22, 11:13, 11:15, 11:20, 11:23, 16:11, 17:2, 18:14, 18:16
**impact** [1] - 7:18
**impermissible** [1] - 7:22
**important** [2] - 10:6, 16:14
**include** [2] - 7:8, 22:21
**included** [1] - 11:10
**incorporating** [1] - 6:24
**indeed** [1] - 14:1
**individual** [15] - 9:3, 10:22, 11:12, 13:18, 13:23, 14:22, 15:9, 15:13, 15:25, 16:15, 16:18, 17:1, 17:25, 18:14, 19:5
**individually** [1] - 12:6
**individuals** [5] - 9:12, 13:21, 15:19, 16:8, 16:10
**inform** [1] - 22:16
**information** [2] - 6:3, 8:2
**informed** [1] - 23:2
**inquiry** [1] - 22:16
**instance** [2] - 11:12, 17:6
**institution** [1] - 21:7
**intent** [2] - 18:19, 19:3
**interest** [6] - 5:22, 5:23, 9:2, 9:3, 9:6
**interfere** [1] - 5:7
**interfered** [1] - 9:21
**interference** [2] - 7:15, 7:19

**interlocutory** [1] - 23:11
**interrogatories** [2] - 15:10, 15:15
**intricacies** [1] - 4:6
**investigate** [1] - 5:3
**investigating** [2] - 6:14, 7:9
**investigation** [1] - 9:23
**investigations** [2] - 5:7, 5:12
**involved** [1] - 15:19
**involving** [1] - 12:12
**issue** [11] - 6:2, 8:17, 13:19, 14:8, 16:9, 17:15, 18:5, 19:8, 21:12, 23:13
**issued** [1] - 21:7
**issues** [4] - 3:13, 17:5, 17:10, 18:23

### J

**Jessica** [1] - 2:20
**JIMENEZ** [6] - 1:13, 2:9, 12:20, 12:22, 19:9, 19:12
**Jimenez** [1] - 2:10
**job** [4] - 7:6, 7:8, 7:19, 8:5
**Joe** [1] - 3:3
**joint** [1] - 13:6
**jones** [4] - 14:5, 15:5, 16:22, 20:21
**JONES** [8] - 1:15, 14:13, 14:19, 15:6, 15:12, 16:4, 20:6, 20:23
**Jones** [4] - 2:13, 19:23, 20:5, 23:17
**JOSE** [1] - 1:17
**Jose** [1] - 2:19
**Judge** [2] - 14:3, 21:9
**JUDGE** [1] - 1:10
**Judge..** [1] - 20:20
**judgment** [1] - 10:18
**jumps** [1] - 10:17
**juncture** [2] - 11:20, 11:22

### K

**KATHLEEN** [1] - 1:10
**Kevin** [1] - 2:13
**KEVIN** [1] - 1:15
**kind** [1] - 5:13
**King** [1] - 7:1
**knowing** [1] - 17:22
**kuehne** [1] - 21:21

**KUEHNE** [6] - 1:18, 3:2, 21:24, 22:11, 22:18, 23:15
**Kuehne** [2] - 3:2, 22:5

### L

**Lane** [2] - 6:6, 8:4
**language** [1] - 9:20
**large** [1] - 21:11
**largely** [2] - 23:2, 23:20
**law** [3] - 11:7, 17:4, 18:22
**lawyers** [4] - 3:17, 15:13, 22:1, 23:24
**learned** [1] - 16:20
**least** [4] - 16:12, 20:8, 21:3, 23:7
**leave** [2] - 16:21, 20:4
**Legislative** [5] - 10:22, 11:15, 11:17, 11:19, 11:23
**lens** [1] - 5:15
**liability** [1] - 17:2
**life** [1] - 11:25
**lift** [1] - 3:10
**light** [4] - 3:13, 7:12, 12:5, 23:13
**likely** [2] - 11:17, 23:1
**limitations** [1] - 25:6
**limited** [1] - 9:14
**line** [2] - 14:3, 22:10
**list** [3] - 5:2, 5:13, 7:22
**litigation** [1] - 17:3
**local** [2] - 8:23, 11:6
**look** [3] - 4:24, 5:15, 24:7
**louder** [1] - 20:22
**loudly** [2] - 17:13, 17:18
**loyalty** [1] - 9:17

### M

**mail** [1] - 20:17
**mails** [1] - 20:16
**majority** [1] - 10:16
**maker** [1] - 11:25
**malfeasance** [1] - 6:14
**Manager** [9] - 2:17, 4:12, 4:21, 4:23, 5:5, 5:8, 5:11, 12:2, 12:6
**Manolo** [1] - 2:20
**MARCOS** [1] - 1:13
**Marcos** [1] - 2:9
**MASON** [1] - 1:16
**Mason** [1] - 2:16
**matter** [14] - 5:21, 8:7, 8:10, 8:14, 8:24,

9:11, 13:3, 22:6, 22:12, 22:15, 23:18, 23:20, 24:6
**matters** [3] - 12:12, 23:4, 23:22
**McBride** [1] - 18:6
**McNulty's** [1] - 3:7
**mean** [1] - 15:8
**memo** [1] - 9:11
**memorandum** [1] - 7:20
**mere** [2] - 4:16, 6:3
**merely** [2] - 7:19, 10:3
**mIAMI** [1] - 1:2
**Miami** [10] - 1:7, 1:20, 1:21, 2:6, 2:13, 3:24, 4:15, 7:23, 12:1, 18:4
**Miami's** [2] - 3:21, 6:19
**Middle** [1] - 18:7
**might** [9] - 13:16, 15:23, 16:23, 19:9, 19:21, 20:2, 21:13, 22:10, 22:18
**Military** [1] - 9:18
**million** [3] - 19:18, 19:20, 21:8
**minimizes** [1] - 10:1
**misconduct** [1] - 8:10
**moment** [2] - 14:5, 15:4
**months** [1] - 10:12
**Moreno** [1] - 2:10
**MORENO** [1] - 1:14
**morning** [11] - 2:2, 2:9, 2:11, 2:12, 2:15, 2:16, 2:18, 2:19, 2:23, 2:25, 3:2
**Morning** [1] - 2:22
**morning's** [1] - 2:3
**most** [3] - 7:12, 12:5, 13:22
**motion** [5] - 3:11, 5:17, 6:22, 10:19, 11:22
**motions** [2] - 6:23, 12:7
**motive** [1] - 10:17
**MOU** [1] - 6:16
**mount** [1] - 15:3
**move** [3] - 3:10, 13:2, 19:7
**moving** [2] - 16:6, 17:21
**MR** [34] - 2:9, 2:16, 2:19, 2:23, 3:2, 12:20, 12:22, 13:7, 14:13, 14:19, 15:6, 15:12, 16:4, 16:23,

17:1, 17:15, 17:20, 18:3, 18:12, 19:9, 19:12, 19:21, 19:23, 20:6, 20:23, 21:13, 21:15, 21:20, 21:24, 22:11, 22:18, 23:15, 23:16, 24:1
**MS** [1] - 2:12
**MUFFLED** [1] - 18:21
**municipal** [1] - 18:18
**must** [6] - 5:15, 5:21, 6:8, 7:11, 8:7, 8:17

## N

**name** [1] - 20:10
**narrowly** [1] - 6:9
**nature** [4] - 10:2, 20:2, 20:3, 20:13
**necessary** [3] - 6:21, 16:5, 22:16
**need** [10] - 3:17, 4:6, 4:24, 9:17, 13:11, 14:2, 14:16, 14:21, 15:24, 16:1
**needed** [2] - 12:16, 15:23
**news** [1] - 2:3
**next** [2] - 3:16, 24:8
**Nobody** [1] - 10:23
**non** [2] - 22:20, 23:11
**non-final** [2] - 22:20, 23:11
**none** [1] - 5:3
**Noriega** [8] - 2:17, 4:12, 4:21, 4:23, 7:13, 9:17, 11:24, 12:6
**normal** [1] - 20:15
**normally** [2] - 20:7, 23:3
**North** [1] - 1:20
**noted** [1] - 9:12
**nothing** [3] - 9:13, 9:20, 24:6
**notice** [1] - 11:2
**Number** [1] - 1:3
**number** [2] - 22:19, 23:4

## O

**obligation** [1] - 4:18
**obtain** [1] - 19:18
**obviously** [3] - 15:2, 16:15, 17:22
**occurred** [1] - 25:5
**OF** [1] - 1:2
**offense** [1] - 14:15
**Office** [1] - 3:7

**officer** [2] - 5:9, 8:22
**officers** [1] - 8:16
**officials** [2] - 6:14, 7:10
**old** [1] - 3:14
**once** [2] - 13:12, 22:22
**one** [3] - 4:2, 10:8, 23:24
**open** [2] - 12:18, 16:4
**operation** [1] - 7:15
**oral** [1] - 3:12
**order** [8] - 3:16, 5:12, 9:17, 12:8, 13:11, 21:16, 23:9, 24:7
**ordinary** [3] - 6:10, 7:6, 7:19
**organization** [2] - 9:18, 9:23
**ourselves** [1] - 14:22
**outline** [1] - 8:13
**outlined** [1] - 7:14
**outside** [2] - 4:15, 23:20
**outweighed** [1] - 5:22
**outweighs** [1] - 9:6
**overlap** [1] - 18:24
**overview** [1] - 3:15
**owes** [1] - 6:8
**own** [1] - 16:10
**owned** [1] - 4:22

## P

**Panoff** [1] - 2:13
**PANOFF** [2] - 1:15, 2:12
**part** [5] - 5:23, 10:10, 12:2, 14:11, 16:14
**participate** [1] - 17:6
**participation** [1] - 4:17
**particular** [1] - 5:9
**particularly** [1] - 13:17
**parties** [6] - 12:13, 12:14, 19:6, 23:10, 24:5, 24:7
**parts** [1] - 6:18
**party** [1] - 16:8
**past** [1] - 20:9
**path** [2] - 14:2, 16:2
**PATRICIA** [1] - 1:19, 25:10
patricia_sanders@
flsd.uscourts.gov
[1] - 1:22
**pay** [1] - 19:17
**pendency** [1] - 12:11
**pending** [1] - 22:24
**people** [1] - 9:15
**perceived** [1] - 7:22

**performing** [1] - 8:16
**perhaps** [3] - 14:8, 15:23, 17:23
**period** [1] - 23:4
**permitted** [2] - 16:23, 17:6
**personal** [2] - 23:4, 23:6
**personnel** [1] - 3:22
**perspective** [1] - 19:10
**Pertnoy** [2] - 2:16, 2:18
**PERTNOY** [2] - 1:16, 2:16
**phrase** [1] - 6:8
**Pickering** [1] - 9:2
**plaintiff** [7] - 3:20, 4:2, 7:14, 9:1, 11:19, 12:22, 16:17
**Plaintiff** [2] - 1:4, 2:8
**PLAINTIFF** [1] - 1:13
**plaintiff's** [5] - 6:12, 7:5, 8:13, 14:25, 21:2
**Plaintiff's** [1] - 10:7
**plaintiffs** [1] - 20:8
**played** [1] - 5:23
**pled** [2] - 5:16, 9:5
**plot** [1] - 14:2
**point** [1] - 18:22
**pointed** [1] - 16:7
**police** [7] - 4:3, 5:2, 5:7, 8:2, 8:16, 8:22, 9:22
**Police** [5] - 7:15, 7:18, 7:23, 8:23, 12:3
**political** [2] - 5:13, 8:18
**Portilla** [4] - 2:24, 7:13, 13:8, 22:6
**Portilla's** [1] - 10:15
**pose** [1] - 19:8
**position** [3] - 15:2, 15:13, 16:19
**possessed** [1] - 8:2
**possibility** [2] - 13:9, 13:21
**possible** [2] - 4:24, 14:12
**possibly** [1] - 17:19
**posture** [1] - 12:17
**power** [1] - 7:10
**practiced** [1] - 21:6
**precluded** [1] - 6:13
**predicate** [1] - 4:20
**predicates** [1] - 4:14
**prejudices** [1] - 17:7
**prejudicing** [1] - 17:24

**present** [3] - 2:13, 3:5, 22:10
**presents** [2] - 21:22, 22:3
**prevail** [1] - 15:21
**prevails** [1] - 10:4
**prevent** [1] - 16:12
**private** [4] - 5:21, 6:2, 7:14, 8:2
**privilege** [1] - 20:18
**problem** [3] - 21:19, 22:10, 23:12
**procedure** [1] - 4:3
**proceed** [2] - 4:11, 12:6
**proceeding** [2] - 16:12, 25:5
**proceedings** [1] - 22:24
**process** [3] - 4:5, 6:15, 19:5
**produce** [1] - 19:20
**production** [1] - 15:10
**prohibited** [1] - 3:22
**promoting** [1] - 9:4
**properly** [2] - 8:16, 15:2
**proposed** [1] - 13:6
**protected** [1] - 5:19
**protection** [2] - 8:12, 9:7
**provided** [1] - 8:22
**providing** [1] - 19:14
**proximity** [2] - 10:11, 10:13
**public** [10] - 5:22, 6:4, 7:10, 8:7, 8:14, 8:17, 8:24, 19:16, 20:6, 21:4
**publicly** [1] - 6:20
**published** [2] - 6:20, 9:14
**purpose** [2] - 18:19, 19:3
**pursue** [1] - 18:14
**Purvines** [1] - 10:9
**put** [1] - 15:2
**puts** [1] - 10:13

## Q

**QI** [1] - 22:20
**qualified** [5] - 10:21, 11:13, 16:11, 18:14, 18:16
**quality** [1] - 17:11
**quasi** [1] - 9:18
**quasi-Military** [1] - 9:18
**questions** [1] - 16:18

**quick** [2] - 18:5, 18:10
**quickly** [1] - 20:24
**quiet** [1] - 23:3
**Quinon** [2] - 2:19, 2:22
**QUINON** [1] - 1:17, 2:19
**quite** [1] - 14:7

## R

**R20003** [1] - 6:13
**rather** [2] - 6:5, 11:16
**reached** [1] - 12:23
**read** [3] - 6:8, 13:11, 21:17
**really** [6] - 4:2, 9:18, 9:24, 19:3, 20:3, 20:21
**reasonable** [1] - 23:13
**recently** [1] - 17:16
**recess** [1] - 24:6
**recognized** [1] - 13:20
**record** [7] - 2:8, 9:13, 14:11, 14:17, 17:14, 18:3, 23:18
**records** [6] - 19:17, 19:18, 20:7, 21:4, 21:7, 21:9
**redacted..** [1] - 20:19
**regale** [1] - 3:17
**regard** [2] - 13:23, 20:6
**regarding** [3] - 14:24, 15:13, 15:15
**Regents** [1] - 6:7
**regular** [1] - 8:3
**rejoins** [1] - 4:2
**related** [1] - 12:17
**relevant** [1] - 12:1
**relieve** [1] - 4:17
**remains** [1] - 10:21
**remarks** [1] - 14:10
**remedies** [1] - 3:25
**remedy** [1] - 4:8
**remember** [1] - 20:14
**remotely** [1] - 25:6
**report** [2] - 13:6, 23:9
**reported** [2] - 5:6, 11:6
**REPORTED** [1] - 1:19
**REPORTER** [2] - 14:3, 20:20
**Reporter** [1] - 1:20
**reporter** [1] - 14:6
**reporting** [2] - 6:14, 7:17, 25:6
**represent** [1] - 22:12
**represented** [1] - 23:24

**representing** [3] - 22:2, 22:5, 22:7
**request** [10] - 19:17, 20:2, 20:7, 20:13, 20:15, 21:4, 21:13, 22:23, 23:8
**require** [2] - 20:11, 23:5
**requires** [1] - 20:3
**research** [1] - 18:9
**Resolution** [1] - 6:13
**resources** [1] - 7:21
**respect** [2] - 7:17, 13:17
**responsibilities** [4] - 6:11, 7:6, 7:19, 9:10
**rest** [1] - 11:5
**retaliated** [1] - 5:19
**retaliation** [1] - 5:20
**review** [1] - 21:11
**revolves** [1] - 6:12
**Reyes** [4] - 2:21, 7:1, 11:14, 11:22
**rights** [1] - 17:24
**risk** [2] - 16:9, 16:10
**robust** [1] - 11:10
**roles** [1] - 5:12
**Ronzetti** [3] - 2:24, 2:25, 13:7
**RONZETTI** [10] - 1:17, 2:23, 13:7, 16:23, 17:1, 17:15, 17:20, 21:13, 21:15, 21:20
**ronzetti** [1] - 18:2
**RPR** [2] - 1:19, 25:10
**Rule** [1] - 3:18
**ruling** [5] - 3:12, 12:25, 13:10, 14:21, 17:22

## S

**saddened** [1] - 3:8
**safety** [1] - 8:17
**sanders** [2] - 14:17, 17:14
**SANDERS** [3] - 1:19, 25:8, 25:10
**satisfied** [2] - 6:1, 8:14
**schedule** [3] - 12:9, 12:24, 13:16
**scheduled** [1] - 23:4
**scheduling** [2] - 13:6, 23:7
**school** [1] - 3:14
**Schwalbe** [1] - 11:11
**search** [3] - 18:5, 18:10, 20:11
**Section** [1] - 12:1

**see** [4] - 9:13, 9:24, 21:2, 21:5
**separate** [1] - 6:23
**set** [3] - 4:14, 6:15, 21:9
**sets** [1] - 11:4
**several** [1] - 11:11
**severed** [1] - 15:24
**shall** [1] - 12:2
**show** [1] - 5:21
**showing** [1] - 4:11
**side** [1] - 22:21
**significance** [1] - 8:11
**significant** [1] - 13:9
**similar** [1] - 11:5
**similarly** [1] - 10:1
**sit** [1] - 21:17
**slow** [2] - 17:8, 20:22
**slowly** [2] - 14:12, 17:13
**social** [1] - 8:18
**solely** [1] - 13:8
**somewhat** [1] - 23:23
**soon** [1] - 12:8
**sorry** [1] - 19:19
**sort** [2] - 18:19, 20:18
**SOUTHERN** [1] - 1:2
**speaking** [1] - 13:8
**specific** [1] - 11:16
**specifically** [1] - 11:18
**speculate** [1] - 20:4
**speech** [13] - 5:19, 5:22, 5:23, 6:3, 6:5, 6:10, 6:17, 7:5, 8:6, 8:20, 14:7
**staff** [1] - 8:23
**stage** [1] - 11:22
**standard** [3] - 3:18, 10:10, 10:14
**start** [2] - 3:6, 14:18
**starting** [1] - 2:8
**statement** [1] - 8:22
**states** [1] - 17:4
**STATES** [2] - 1:1, 1:10
**States** [1] - 1:20, 12:1
**stay** [5] - 3:10, 12:11, 18:13, 18:18, 22:23
**stay..** [1] - 18:20
**Stephanie** [1] - 2:12
**STEPHANIE** [1] - 1:15
**still** [1] - 14:2
**stop** [2] - 14:5, 15:4
**structure** [1] - 9:22
**subject** [1] - 25:6
**subpoena** [2] - 15:8, 21:7
**substantial** [2] - 5:23, 10:10
**sued** [1] - 15:18

**sufficient** [2] - 11:2, 13:6
**sufficiently** [1] - 9:5
**suit** [1] - 16:12
**Suite** [1] - 1:20
**sum** [1] - 12:7
**summarize** [1] - 3:19
**summary** [1] - 10:17
**summoned** [1] - 4:21
**suppose** [2] - 6:16, 15:24
**suspect** [1] - 13:9
**suspend** [1] - 12:2
**suspended** [1] - 4:13
**suspension** [1] - 3:21
**sworn** [1] - 8:22
**system** [1] - 20:11

## T

**Taquerias** [1] - 4:21
**technological** [1] - 25:6
**technology** [3] - 2:4, 3:5, 17:10
**temporal** [2] - 10:11, 10:12
**ten** [1] - 10:12
**tend** [1] - 20:23
**terminate** [1] - 4:13
**terminating** [1] - 4:3
**termination** [2] - 3:21, 9:12
**terms** [11] - 13:15, 13:16, 13:24, 15:15, 15:18, 17:21, 19:10, 19:13, 21:11, 21:17, 23:7
**testimony** [1] - 15:20
**THE** [40] - 1:10, 1:13, 2:2, 2:11, 2:15, 2:18, 2:22, 2:25, 3:4, 12:21, 13:4, 13:20, 14:3, 14:5, 14:15, 15:4, 15:7, 15:17, 16:22, 16:25, 17:8, 17:17, 18:2, 18:11, 19:2, 19:11, 19:19, 19:22, 20:5, 20:20, 20:21, 21:1, 21:14, 21:19, 21:21, 22:1, 22:17, 23:12, 23:22, 24:2
**them..** [1] - 17:7
**therefore** [2] - 4:11, 25:5
**they've** [1] - 15:7
**thorough** [1] - 18:9
**thoroughly** [2] - 13:12, 21:17

**three** [2] - 6:2, 20:8
**tied** [1] - 5:12
**timeframe** [1] - 23:10
**timeline** [1] - 10:6
**today** [4] - 3:9, 3:12, 13:2, 13:10
**together** [2] - 2:20, 3:9
**touch** [1] - 4:8
**transfer** [1] - 5:8
**transform** [1] - 6:4
**trial** [3] - 12:9, 12:13, 12:17
**true** [2] - 5:16, 12:5
**try** [3] - 17:8, 17:18, 19:3
**TUCKER** [1] - 1:17
**Tucker** [2] - 2:23, 13:7
**turn** [2] - 8:5, 21:21
**two** [1] - 22:8
**type** [1] - 20:16
**types** [1] - 16:17

## U

**unavailable** [2] - 8:3, 23:2
**under** [1] - 11:25
**undermine** [2] - 9:9, 19:5, 19:15
**Understood** [1] - 24:1
**unfair** [1] - 17:7
**UNINTELLIGIBLE** [2] - 14:23, 18:21
**UNITED** [1] - 1:1
**uNITED** [1] - 1:10
**United** [1] - 1:20
**up** [5] - 12:18, 16:20, 17:7, 17:15, 17:17
**up"** [1] - 5:9

## V

**versus** [1] - 2:5, 4:15, 6:6, 6:7, 7:1, 8:9, 8:20, 10:9, 11:4, 11:10, 11:16, 18:6
**via** [1] - 25:5
**views** [1] - 5:13
**violations** [2] - 4:24, 11:7
**voted** [1] - 4:13
**vs** [2] - 1:6, 8:19

## W

**waiting** [1] - 12:24
**Walker** [1] - 11:11
**wants** [1] - 19:23
**Waycross** [1] - 8:9
**ways** [1] - 18:24

**weaponization** [1] - 7:21
**weaponized** [1] - 5:11
**week** [1] - 24:8
**weigh** [1] - 16:24
**whistle** [2] - 7:9, 10:1
**whistle-blowing** [1] - 10:1
**whistleblower** [1] - 11:6
**Whistleblower** [1] - 3:23
**whistleblowers** [2] - 8:12, 9:8
**WILLIAMS** [1] - 1:10
**wise** [1] - 16:20
**wish** [1] - 14:10
**word** [1] - 20:9
**written** [3] - 3:15, 12:8, 24:7

## Y

**years** [3] - 20:8, 20:9, 20:12
**yelling** [2] - 14:13, 14:15

## Z

**Zoom** [2] - 2:3, 25:5
**ZOOM** [1] - 1:9